Attachment D

LICENSE NO. J-0739

| | |
|---|---|
| IN THE MATTER OF | BEFORE THE |
| THE LICENSE OF | |
| JORGE C. ZAMORA-QUEZADA, M.D. | TEXAS MEDICAL BOARD |

## AGREED ORDER

On the 6th day of November, 2009, came on to be heard before the Texas Medical Board (the "Board"), duly in session, the matter of the license of Jorge C. Zamora-Quezada, M.D. ("Respondent").

On May 9, 2008, Respondent appeared in person, with counsel Jon Porter, at an Informal Show Compliance Proceeding and Settlement Conference ("ISC") in response to a letter of invitation from the staff of the Board. The Board's representatives were Timothy Webb, J.D., a member of the Board, and Janet Tornelli-Mitchell, M.D., a member of a District Review Committee. Lee Bukstein represented Board staff.

On May 19, 2008, Respondent appeared in person, with counsel Jon Porter, at an ISC in response to a letter of invitation from the staff of the Board. The Board's representatives were Melinda McMichael, M.D. and Annette P. Raggette, members of the Board. Lee Bukstein represented Board staff.

On October 16, 2008, Respondent appeared in person, with counsel Jon Porter, at an ISC in response to a letter of invitation from the staff of the Board. The Board's representatives were Allan Shulkin, M.D. and Annette Ragette, members of the Board. Lee Bukstein represented Board staff.

A public complaint was filed at the State Office of Administrative Hearings in regard to the allegations related to the ISC's held on May 9, 2008, and May 19, 2008.

Upon the recommendation of the Board's representatives and with the consent of Respondent, the Board makes the following Findings of Fact and Conclusions of Law and enters this Agreed Order.

## FINDINGS OF FACT

The Board finds that:

1. Respondent received all notice required by law. All jurisdictional requirements have been satisfied. Respondent waives any defect in notice and any further right to notice or hearing under the Medical Practice Act, Title 3, Subtitle B, Texas Occupations Code (the "Act") or the Rules of the Board.

2. Respondent currently holds Texas Medical License No. J-0739. Respondent was originally issued this license to practice medicine in Texas on December 4, 1991. Respondent is also licensed to practice in Arizona and Massachusetts.

3. Respondent is primarily engaged in the practice of rheumatology. Respondent is board certified in internal medicine and rheumatology by the American Board of Internal Medicine, a member of the American Board of Medical Specialties.

4. Respondent is 53 years of age.

5. Respondent has not received a prior disciplinary order from the Board.

6. Respondent first evaluated Patient A on September 15, 2006, for evaluation of pain in both feet, with pain in the right foot greater than the left, after a referral from his primary physician to see a rheumatology specialist.

7. Respondent ordered an extensive evaluation, including numerous laboratory tests, to evaluate Patient A's complaints and any other medical conditions that Patient A might be exhibiting. Many of these tests were not justified by the presentation and complaint of Patient A.

8. Respondent failed to document that he had made his efforts to obtain Patient A's prior medical records. Respondent failed to review much of the patient's prior medical records.

9. Respondent failed to adequately document the extensive neurological examination that he performed.

10. Respondent diagnosed Patient A with "IPA" (inflammatory polyarthritis). Respondent prescribed sulfasalazine for the patient, despite a documented allergy to sulfa drugs. After the family reminded Respondent, he realized that he and his staff had failed to follow his own instructions about the patient's allergies. Respondent has established an office protocol and an electronic medical records system in place to spot potential drug conflicts and allergies and prevent the prescribing of drugs in circumstances that might present such problems.

11. Respondent exceeded the scope of the referral from the primary care physician without reasonably informing the patient.

12. Respondent evaluated 11 patients initially for specific and generalized pain during the time period 1999 through 2006. Respondent evaluated another 28 patients initially for specific and generalized pain during the time period 2005 through 2007.

13. With regard for each patient identified above, Respondent ordered multiple laboratory tests and radiographic imaging.

14. For most of the above-identified patients, Respondent initiated and continued treatment with Plaquenil and Methotrexate without documenting diagnostic tests results that consistently confirmed RA.

15. With regard to most of the above-identified patients, Respondent documented some general symptoms of pain and restriction of movement, but he failed to document the underlying symptoms of inflammatory arthritis, such as the presence or absence of joint swelling, in most of the patients.

16. With regard to most of the patients, Respondent ordered extensive radiographic imaging. Respondent reviewed these images himself, but he failed to adequately document the basis for his interpretations of those images.

17. Respondent treated some of the patients for osteoarthritis ("OA") and RA when they only demonstrated indications of osteopenia. Respondent treated some of the patients for inflammatory arthritis or osteoporosis when they only demonstrated indications of OA. Respondent treated some of the patients for RA when they only demonstrated indications of OA.

18. Respondent neither admits nor denies any of the foregoing findings of fact or conclusions of law within this Order.

19. Respondent has cooperated in the investigation of the allegations related to this Agreed Order. Respondent's cooperation, through consent to this Agreed Order, pursuant to the provisions of Section 164.002 the Act, will save money and resources for the State of Texas. To avoid further investigation, hearings, and the expense and inconvenience of litigation, Respondent agrees to the entry of this Agreed Order and to comply with its terms and conditions.

## CONCLUSIONS OF LAW

Based on the above Findings of Fact, the Board concludes that:

1. The Board has jurisdiction over the subject matter and Respondent pursuant to the Act.

2. Section 164.051(a)(3) of the Act authorizes the Board to take disciplinary action against Respondent based on Respondent's violation of a Board Rule, specifically 22 Texas Administrative Code, §165.1 that requires Respondent to maintain adequate medical records.

3. Section 164.051(a)(6) of the Act authorizes the Board to take disciplinary action against Respondent based on Respondent's failure to practice medicine in an acceptable professional manner consistent with public health and welfare, as further defined by: 22 Texas Administrative Code, §190.8(1)(C) failure to exercise diligence.

4. Section 164.001 of the Act authorizes the Board to impose a range of disciplinary actions against a person for violation of the Act or a Board rule. Such sanctions include: revocation, suspension, probation, public reprimand, limitation or restriction on practice, counseling or treatment, required educational or counseling programs, monitored practice, public service, and an administrative penalty.

5. Section 164.002(a) of the Act authorizes the Board to resolve and make a disposition of this matter through an Agreed Order.

6. Section 164.002(d) of the Act provides that this Agreed Order is a settlement agreement under the Texas Rules of Evidence for purposes of civil litigation.

## ORDER

Based on the above Findings of Fact and Conclusions of Law, the Board ORDERS that Respondent shall be subject to the following terms and conditions:

1. This Agreed Order shall constitute a PUBLIC REPRIMAND of Respondent, and Respondent is hereby reprimanded.

2. While under the terms of this Order for a period of two years after the date of the entry of this Order, Respondent's practice shall be monitored by a physician ("monitor"), in accordance with §164.001(b)(7) of the Act. The Compliance Division of the Board shall designate the monitor and may change the monitor at any time for any reason. The monitor shall have expertise in a similar specialty area as Respondent. The Compliance Division shall provide a

copy of this Order to the monitor, together with other information necessary to assist the monitor.

  a. As requested by the Compliance Division, Respondent shall prepare and provide complete legible copies of selected patient medical and billing records ("selected records"). The monitor shall review a random selection of patient medical records with particular attention to those patients treated for arthritis. The physician monitor shall be board certified in rheumatology by the American Board of Internal Medicine, a member of the American Board of Medical Specialties, the same specialty area as Respondent's practice. The Compliance Division shall select records for at least 30 patients seen by Respondent during each three-month period following the last day of the month of entry of this Order ("reporting period"). The Compliance Division may select records for more than 30 patients, up to ten percent of the patients seen during a reporting period. If Respondent fails to see at least 30 patients during any three-month period, the term of this Order shall be extended until Respondent can submit a sufficient number of records for a monitor to review.

  b. The monitor shall perform the following duties:

    1) Personally review the selected records;

    2) Prepare written reports documenting any perceived deficiencies and any recommendations to improve Respondent's practice of medicine or assist in the ongoing monitoring process. Reports shall be submitted as requested by the Compliance Division; and

    3) Perform any other duty that the Compliance Division determines will assist the effective monitoring of Respondent's practice.

  c. The Compliance Division shall provide to Respondent a copy of any deficiencies or recommendations submitted by the monitor. Respondent shall implement the recommendations as directed by the Compliance Division.

  d. The monitor shall be the agent of the Board, but shall be compensated by the Respondent through the Board. Such compensation and any costs incurred by the monitor shall be paid by Respondent to the Board and remitted by the Board to the monitor. Respondent shall not charge the compensation and costs paid to the monitor to any patients.

3.  Within 90 days after the entry of this Order, Respondent shall have the Texas Medical Association billing and collections assessment consultant or other independent auditor with

expertise in medical billing codes come to Respondent's practice and perform an evaluation of Respondent's business office operations. The audit shall include Respondent's billing procedures for all medical services, including laboratory and diagnostic testing. This audit shall cover the 12-month period immediately preceding the date of the entry of this Order and shall be specifically designed to determine that appropriate procedures are in effect for the accurate billing for medical services. Respondent will provide to his Compliance Officer the consultant's/auditor's initial written report within 30 days of receipt along with a written plan of action to implement the consultant's/auditor's recommendations. Within 90 days of receipt of the consultant's/auditor's initial written report Respondent shall implement those recommendations or provide the Board's Compliance department with a written explanation why any of the recommendations are not being followed. Respondent will also provide the Board's Compliance department with adequate reports to ensure that the consultant's recommendations are followed by Respondent. Within 30 days after the Respondent has submitted this written report to the Board's Compliance department regarding implementation of the recommendations of the consultant's/auditor's initial report, the consultant/auditor shall submit a final report to Respondent and directly to the Board's Compliance department assessing Respondent's implementation of the recommendations. Respondent shall provide the consultant/auditor with requested documents and access needed in order to complete this final report.

4. Within one year from the date of the entry of this Order, Respondent shall enroll in and successfully complete; at least 10 hours of continuing medical education (CME) approved for Category I credits by the American Medical Association on the topic of ethics; at least 10 hours of CME approved for Category I credits by the American Medical Association on the topic of medical recordkeeping; and at least 10 hours of CME approved for Category I credits by the American Medical Association on the topic of appropriate billing and coding, approved in writing in advance by the Compliance Division of the Board. To obtain approval for the courses, Respondent shall submit in writing to the Compliance Division of the Board information on the courses, to include at least a reasonably detailed description of the course content and faculty, as well as the course location and dates of instruction. Respondent shall submit documentation of attendance and successful completion of this requirement to the Compliance Division of the Board on or before the expiration of the time limit set forth for completion of the course. The

CME requirements set forth in this paragraph shall be in addition to all other CME required for licensure maintenance.

5. Respondent shall pay an administrative penalty in the amount of $30,000 within one year of the entry of this Order. The administrative penalty shall be paid in a single payment by cashier's check or money order payable to the Texas Medical Board and shall be submitted to the Director of Enforcement for the Board for routing so as to be remitted to the Comptroller of Texas for deposit in the general revenue fund. Respondent's failure to pay the administrative penalty as ordered shall constitute grounds for further disciplinary action by the Board, and may result in a referral by the Executive Director of the Board for collection by the Office of the Attorney General.

6. Respondent shall comply with all the provisions of the Act and other statutes regulating the Respondent's practice.

7. Respondent shall fully cooperate with the Board and the Board staff, including Board attorneys, investigators, compliance officers, consultants, and other employees or agents of the Board in any way involved in investigation, review, or monitoring associated with Respondent's compliance with this Order. Failure to fully cooperate shall constitute a violation of this order and a basis for disciplinary action against Respondent pursuant to the Act.

8. Respondent shall inform the Board in writing of any change of Respondent's mailing or practice address within 10 days of the address change. This information shall be submitted to the Permits Department and the Director of Enforcement for the Board. Failure to provide such information in a timely manner shall constitute a basis for disciplinary action by the Board against Respondent pursuant to the Act.

9. Any violation of the terms, conditions, or requirements of this Order by Respondent shall constitute unprofessional conduct likely to deceive or defraud the public, or to injure the public, and shall constitute a basis for disciplinary action by the Board against Respondent pursuant to the Act. Respondent agrees that 10 days notice of a Probationer Show Compliance Proceeding to address any allegation of non-compliance of this Agreed Order is adequate and reasonable notice prior to the initiation of formal disciplinary action. Respondent waives the 30-day notice requirement provided by §164.003(b)(2) of the Medical Practice Act and agrees to 10 days notice, as provided in 22 Texas Administrative Code §187.44(4).

10. Respondent shall be permitted to supervise and delegate prescriptive authority to physician assistants and advanced practice nurses and to supervise surgical assistants.

11. The time period of this Order shall be extended for any period of time that (a) Respondent subsequently resides or practices outside the State of Texas, (b) Respondent's license is subsequently canceled for nonpayment of licensure fees, or (c) this Order is stayed or enjoined by Court Order. If Respondent leaves Texas to live or practice elsewhere, Respondent shall immediately notify the Board in writing of the dates of Respondent's departure from and subsequent return to Texas. When the period of extension ends, Respondent shall be required to comply with the terms of this Order for the period of time remaining on the extended Order. Respondent shall pay all fees for reinstatement or renewal of a license covering the period of extension.

12. This Order shall automatically terminate upon Respondent's submission of sufficient evidence to the Compliance Division of the Board that Respondent successfully completed the requirements ordered in Ordering Paragraph Nos. 2, 3, 4, and 5 above.

RESPONDENT WAIVES ANY FURTHER HEARINGS OR APPEALS TO THE BOARD OR TO ANY COURT IN REGARD TO ALL TERMS AND CONDITIONS OF THIS AGREED ORDER. RESPONDENT AGREES THAT THIS IS A FINAL ORDER.

THIS ORDER IS A PUBLIC RECORD.

I, JORGE C. ZAMORA-QUEZADA, M.D., HAVE READ AND UNDERSTAND THE FOREGOING AGREED ORDER. I UNDERSTAND THAT BY SIGNING, I WAIVE CERTAIN RIGHTS. I SIGN IT VOLUNTARILY. I UNDERSTAND THIS AGREED ORDER CONTAINS THE ENTIRE AGREEMENT AND THERE IS NO OTHER AGREEMENT OF ANY KIND, VERBAL, WRITTEN OR OTHERWISE.

DATED: November, 04, 2009  11, 4 , 2009.

_____
JORGE C. ZAMORA-QUEZADA, M.D.
Respondent

STATE OF Texas §
§
COUNTY OF Hidalgo §

SWORN TO AND ACKNOWLEDGED BEFORE ME, the undersigned Notary Public, on this 4 day of November, 2009.

IDALIA ORTEGA
Notary Public
STATE OF TEXAS
My Comm. Exp. May. 27, 2012
(Notary Seal)

_____
Signature of Notary Public

SIGNED AND ENTERED by the presiding officer of the Texas Medical Board on this 6th day of November, 2009.

_____
Irvin E. Zeitler, Jr., D.O., President
Texas Medical Board