IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 18-CR-0855 |
| JORGE ZAMORA-QUEZADA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OMNIBUS RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS**

The United States of America, by and through undersigned counsel, hereby submits this omnibus response to the following pre-trial motions filed by the defendant: Motion for Bill of Particulars (ECF No. 49), Motion to Dismiss for Insufficient Notice, Allegations, Vagueness, and Evidence (ECF No. 50), Motion to Dismiss for Limitations and/or Delay (ECF No. 51), Motion to Release Seized Funds (ECF No. 52), Motion to Suppress (ECF No. 53), and Motion to Strike Surplusage (ECF No. 68) (together, the "Motions").[1]

For the reasons stated in more detail below, each of the Motions should be denied.

**I.  Motion for Bill of Particulars**

1.  "The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable a double jeopardy defense in case of a later prosecution." *United States v. Castro-Flores*, 2013 WL 6858523, at *2 (S.D. Tex. Dec. 30, 2013). Defendants cannot "use a bill of particulars to obtain a detailed disclosure of the government's evidence prior to trial." *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1977). In cases where the government has provided the

---
[1] The government has filed a separate reply to the defendant's Objection to Testimony of Government Witnesses Not in Compliance with Fed. R. Crim. P. 16(a)(1)(G) (ECF No. 69).

defendant "the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary." *Castro-Flores*, 2013 WL 6858523 at *2; *see also United States v. Carrillo-Morones*, 564 F.Supp.2d 703, 706-07 (W.D. Tex. 2008) (facts in the indictment "together with the discovery provided by the Government, adequately informs the Defendant"). A conspiracy indictment is sufficiently specific if it "goes beyond the generic terms of [the conspiracy statute] and the statutes violated by the conspiracy to allege specific details about the scheme." *United States v. Hajecate*, 683 F.2d 894, 897 (5th Cir. 1982).

2. Because the Indictment is sufficiently specific and adequately notifies the defendant of the charges against him, a bill of particulars is not necessary. For example, in Count 1, the Indictment outlines the details of the health care fraud conspiracy: "Dr. Zamora-Quezada and his co-conspirators would falsely diagnose vulnerable patients, including the young, elderly, and disabled, from the Rio Grande Valley, San Antonio, and elsewhere, with various degenerative diseases, to include, but not limited to rheumatoid arthritis," then would "conduct a battery of fraudulent, repetitive, and excessive medical procedures on patients," and ultimately "would administer infusions and/or injections containing chemotherapy and other toxic medications to patients, including patients who had been falsely diagnosed with other various degenerative diseases, including, but not limited to, rheumatoid arthritis." *See* Indictment at ¶ 17c, d, e, f. The Indictment describes how the defendant profited handsomely from this scheme and how he and others concealed the scheme to enable it to continue. *Id.* at ¶ 17q. And, the Indictment identifies sixteen specific patients who were victims of these crimes in the conspiracy allegations, and five more in the substantive health care fraud allegations in Counts Two through Six. *Id.* at ¶ 17c. These specific factual allegations go well beyond the generic terms of the statute.

3. The same is true for the money laundering conspiracy—Count Seven of the Indictment provides details about specific properties purchased through shell entities with fraudulent proceeds generated from the health care fraud conspiracy. *See e.g.*, Indictment at ¶ 23.

4. Each of the defendant's specific requests for more detail goes beyond what the rules or law requires, and so should be denied. First, the defendant asks the government to identify "which acts during the time frame alleged form the basis of the charge." *Id.* Defendants "are not entitled to discover all the overt acts that might be proved at trial [through a bill of particulars]." *United States v. Kilrain*, 556 F.2d 979, 985 (5th Cir. 1978); *see also United States v. Djuga*, 2015 WL 1412100, at *2 (E.D. La. Mar. 25, 2015) (rejecting defendant's request for "the dates, times, and places at which the Defendant is alleged to have combined, conspired, confederated, and agreed with [other individuals] to commit" the violations alleged in the indictment). Plus, here, the government has produced interview reports describing the defendant's specific conduct which describe the acts which form the basis of the offense.

5. Second, the defendant seeks a bill of particulars for information unnecessary to inform the defendant of the charges against him. For example, the defendant seeks the "total benefits received from the participation in the venture." Motion at 4. "Total benefits received" is not an element of proof for charging; it is an issue for sentencing, forfeiture, and restitution. In any event, the government has provided the defendant this information in discovery as claims data showing the amounts paid.

6. Third, the defendant asks for "the characteristics of the facts, including acts and dates" supporting the substantive health care fraud charges. These facts are sufficiently described in the numerous interview reports produced in discovery which describe how, when and in what ways the defendant's health care fraud was committed. Beyond that, the Indictment provides the

3

dates of the claim submissions. The Indictment is not required to describe each action which led to a claim.

7. Nor is the defendant entitled to obtain more information about the "specific dates when services were provided or when the reimbursement claims or claim forms were created, submitted approved, or paid." Motion at 2. The Indictment already points to specific dates for each of the substantive health care fraud counts in Counts 2-6. The government also provided defendant with *all* dates of service in claims data produced in discovery which all relate to the conspiracy. In a conspiracy, like the one charged here, a "range of dates" is "sufficiently particular" to establish the dates of a conspiracy. *See United States v. Ellender*, 947 F.2d 748, 755-56 (5th Cir. 1991) ( "The precise dates on which the [defendant] committed the alleged acts are not necessary," a range of dates is sufficient); *see also United States v. Obad*, 2008 WL 4755598, at *1 (N.D. Miss. Oct. 27, 2008) (a range of dates is sufficient).

8. Further, the defendant is not entitled to know the names of all potential co-conspirators in advance of trial. *Djunga*, 2015 WL 1412100 at *3. In *Djunga*, the court only required the government to provide the names of co-conspirators who would be testifying, and only a day or two before they testified. Here, defendant has the interview reports of the defendant's former employees and associates including those where individuals acknowledge their involvement and role in the schemes. In addition, as noted in the government's Motion to Strike, to Continue, and to Certify Case as Complex, the government believes that a superseding indictment is "likely" and the government anticipates that it will identify more particularly certain of the defendant's co-conspirators.

9. In short, "[g]iven the indictment[] and discovery provided," the defendant cannot legitimately claim he will be surprised at trial or cannot prepare. *Castro-Flores*, 2013 WL 6858523 at *2, and the Motion for a Bill of Particulars should be denied.[2]

**II. Motion to Dismiss for Insufficient Notice, Allegations, Vagueness, and Evidence**

10. Though this motion has a different title, its substance is the same as the Motion for a Bill of Particulars. This motion seeks dismissal of the conspiracy charges because the Indictment does not list co-conspirators, does not "provide facts sufficient to constitute the offense charged," and does not "allege facts evidencing a single agreement or co-conspirator." Motion at 2. Dismissal is not the proper remedy for allegations of ambiguity or lack of specificity in the indictment. *Hajecate*, 683 F.2d at 897-98 (where the defendant complains of "ambiguity," the "appropriate remedy is to request a bill of particulars, not dismiss the indictment.") As set forth above, the Indictment concretely and specifically describes the charges against the defendant, providing him with adequate notice. *See McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994) ("The 'plain and sensible meaning of the language used' may give the defendant notice sufficient to meet the requirements of the sixth amendment").

11. For this, and the reasons stated in Section I *supra*, the relief sought in the Motion to Dismiss for Insufficient Notice, Allegations, Vagueness, and Evidence should be denied.

**III. Motion to Dismiss for Limitation and/or Delay**

12. This motion moves to dismiss the Indictment because "the events referenced occurred five years or more prior to" the date of the Indictment. For Counts 2-6, this is just wrong, as they are substantive counts dated in 2013 and 2014. For Counts 1 and 7, the defendant is also

---

[2] An additional basis to deny the Motion for a Bill of Particulars is that it is time barred. Fed. R. Crim. P. 7(f) states "[t]he defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." In this case, the defendant filed his request for a bill of particulars 31 days after the arraignment, well beyond the deadline for doing so.

5

wrong because both are charged conspiracies, which are "continuing crime[s]" which are "not complete at the time the agreement was entered." *United States v. Todd*, 735 F.2d 146, 150 (5th Cir. 1984). Where a crime like a conspiracy is continuing, the statute of limitations does not begin to run "until the last act in furtherance of the crime ends." *United States v. Jones*, 676 F.Supp.2d 500, 518 (W.D. Tex. 2009). "As a matter of law, a conspiracy continues until the evidence affirmatively shows that the conspirators terminate the alleged conspiracy, or with respect to conspirators individually, until the conspirators withdraw." *United States v. Romans*, 823 F.3d 299, 309 (5th Cir. 2016).

13. There is no question that the health care fraud in Count 1 was alleged to have been continuing. The Indictment alleges that from 2000 up until the time of the defendant's arrest, the defendant continually submitted false and fraudulent claims to federal health care benefit programs, concealed the falsity of these claims, and diverted the proceeds to himself and his co-conspirators. The statute of limitations for Count 1 began to run on the date of the last claim submitted.[3]

14. The alleged money laundering conspiracy is similarly ongoing. Count 7 alleges that "[f]rom in or about 2000 through the filing of this Indictment" the defendant and his co-conspirators engaged in financial transactions to conceal and disguise that the source of the defendant's funds was a massive health care fraud. *See* Indictment at ¶ 22. This conduct is alleged to have involved repeated transactions which occurred until the defendant's arrest. Unlike a bank

---

[3] Defendants cite *United States v. Awad*, 551 F.3d 930, 938 (9th Cir. 2009) for the proposition that "[e]ach submission of a fraudulent claim to a health care benefit program, rather than being simply an act in furtherance of a larger scheme to defraud, is a separate execution of the scheme itself." The *Awad* defendant argued that his indictment was multiplicitous for charging separate executions of a single larger scheme, but it did not involve a conspiracy. *Awad* does not speak to a statute of limitations at all.

robbery which is completed when the offender hops in the getaway car, the defendant's theft here occurred each day that the false claims were submitted to federal health care benefit programs.

15. Defendant alternatively argues that the Indictment should be dismissed due to "pre-indictment delay." Motion at 2-3. When evaluating possible delay, courts distinguish between permissible investigative delay and improper tactical delay. In the case of delays as a result of lengthy investigation, "[r]ather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *United States v. Seale*, 600 F.3d 473, 479-80 (5th Cir. 2010) (citing *United States v. Lovasco*, 431 U.S. 783 (1977)). Regardless of the type of alleged delay, it is the defendant's burden to show the "actual prejudice" suffered as a result of pre-indictment delay. *United States v. Willis*, 583 F.2d 203, 208 (5th Cir. 1978) (rejecting defendant's claims of pre-indictment prejudice where, among other things, defendant himself had copies of the evidence in the government's possession). It is only "actual prejudice and not merely the real possibility of prejudice inherent in any extended delay" in indictment which is required "before the restraints of the due process clause will be applied to bar a prosecution because of a delay." *Id.* at 208.

16. Here, any delay was a result of an admittedly lengthy but nevertheless ongoing investigation of the defendant. The government invested significant time and resources in its investigation[4] into the defendant's lengthy conspiracies and acted within its discretion about when to bring charges against the defendant. These efforts created no tactical benefit for the government. The Fifth Circuit has held that "[t]he mere passage of time is insufficient to support a due process claim, even if the time lapse prejudiced the defense." *Seale*, 600 F.3d at 479-80 (40 year delay not

---

[4] As was noted in the Government's Motion to Strike and to Continue, the government continues to receive and investigate information about the defendant's conduct.

cause to dismiss indictment where defendant did not show "actual substantial prejudice to his defense" or that the delay was tactical). Most importantly, the defendant has not identified any prejudice, much less substantial prejudice, resulting from his indictment in May 2018. *United States v. Crouch*, 84 F.3d 1497, 1508-09 (5th Cir. 1996) (a demonstration of "substantial prejudice" is a necessary element of a claim of preindictment delay). Defendant's bare assertion is not enough.

## IV.  Motion to Release Seized Funds[5]

17.  In this case, the government obtained seizure warrants upon a finding of probable cause by a magistrate judge and currently has custody of seized funds from seven different bank accounts, in the total amount of $476,866.52. The government seized funds; it did not freeze or restrain accounts.

18.  Where, as here, there is a finding of probable cause that assets would be subject to forfeiture upon a defendant's conviction, the law allows asset seizure prior to trial. *United States v. Monsanto*, 491 U.S. 600, 615 (1989) (approving constitutionality of asset restraint so long as it is "based on a finding of probable cause to believe that the property will ultimately be proved forfeitable"); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989) ("It is our view that there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use [those assets] to pay for their defense.").[6]

---

[5] On July 16, 2018 (ECF No. 77), the government filed a Motion to Strike the defendant's motion for release of funds. As the Court has not yet ruled on that motion, the government submits this reply, but it re-states the arguments presented in the Motion to Strike.

[6] This is not a case in which the United States obtained a civil restraining order and seized an "equivalent amount" of fraud proceeds pursuant to the civil "[]injunctions against fraud" statute, 18 U.S.C. § 1345. In such a case, untainted funds may be seized and held but are available as needed to pay attorney's fees. In this case, there were seizure warrants for tainted, forfeitable property only—not untainted property. The Defendant's citations to Section 1345 cases, and to the *Luis* case that dealt with what all parties agreed were wholly "untainted" assets, are therefore irrelevant to the case at hand. *See* Motion at 10, 11.

19. In order to challenge the pre-trial seizures, the defendant must first make a threshold showing of financial need. *United States v. Fisch*, 851 F.3d 402, 409 (5th Cir. 2017), cert. denied, 138 S. Ct. 378, 199 L. Ed. 2d 277 (2017) ("We have favorably cited Jones, which requires '[a]s a preliminary matter [that] a defendant ... demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family.'"). A bare allegation that the defendant needs the seized funds is wholly inadequate; the case law demands a thorough financial accounting from the defendant. *See Fisch*, 851 F.3d at 409 ("Once Fisch did submit information, it was only 'a very brief statement with no supporting documents.' The district court found the submission 'scant, conclusory, and insufficient' to show that Fisch lacked alternate, available assets."). Where the defendant fails to make a showing of financial need, there is no basis for a hearing to release seized funds. *Id.*

20. In this case, the defendant contends, without offering any support, that "access to the seized funds is essential to the Defendant's ability to fund his defense as significant resources are necessary to defend the instant prosecution …." Motion at 9. However, the defendant fails to submit a financial affidavit or present any other evidence that he has no other assets with which to retain private counsel.

21. To the contrary, there is substantial evidence that the defendant has ample means to hire private counsel without the seized funds. The Indictment alleges that Zamora obtained approximately $50 million during the conspiracy period and that he laundered fraud proceeds through *casas de cambio* to various financial accounts in Mexico, none of which were seized. In addition, the defendant also continues to receive rental income in the approximate amount of $55,000 monthly ($663,000 annually) from substantial real estate holdings. Defendant is hardly

without resources. As a result, the defendant's motion to release seized funds should be denied for failure to meet the required threshold showing of financial need.

22. Moreover, even if the defendant were able to make the threshold showing of financial need, he would also be required to make a *prima facie* case that an error occurred in the probable cause determination that the seized funds would be subject to forfeiture upon his conviction, and that some or all of the seized funds are not traceable to the fraud. *United States v. Fisch*, 2013 WL 5774876, at *6 (S.D. Tex. 2013) (noting that "[m]ost courts" require defendants to meet the two elements of the Jones-Farmer test to justify re-opening the probable cause finding, though the "Fifth Circuit has declined to elaborate the precise details of the circumstances and showings necessary"). Defendant's motion claims that the government "has seized in excess of $2 million in separate assets" of the Defendant's wife and "cannot establish probable cause to believe that the assets in dispute are traceable" to the crimes charged. Motion at 8, 9. First, the government seized less than $500,000 from all bank accounts, and it seized those funds with warrants upon probable cause. Second, with respect to the unsupported allegation that the Defendant's wife contributed "some" of her separate property in 2001 and in 2011, there is no evidence or even likelihood that funds traceable to her contribution would still be on deposit in the bank accounts from which funds were seized in 2018.

23. In this case, the government obtained the seizure warrants at issue based upon a finding of probable cause from a magistrate judge. The defendant does not credibly contest that finding, acknowledging that there were sufficient facts alleged "to establish probable cause to search the records of the clinic." Motion at 4. Moreover, as the Supreme Court noted in *Kaley v. United States*, "[p]robable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." 571 U.S. 320, 338 (5th Cir.

2014) (internal quotations omitted). Defendant's Motion fails to establish a *prima facie* case that the magistrate made an error in the probable cause determination.

24. In the motion to release seized funds, the defendant complains about the seizure warrant affidavit and seems to challenge that there was any fraud after the year 2015 (not mentioning the overwhelming evidence of a pattern of health care fraud, and ignoring the statement that "Zamora-Quezada is ranked #1 among rheumatologists in the entire country for cost to the Medicare program; and also for the number of 'extreme usage patients' being administered MRIs."). Because the defendant has been indicted for a health care fraud conspiracy from 2000 through May 2018, he is barred from arguing that there is no probable cause to believe that his crimes continued after 2015. *Kaley*, 571 U.S. at 333 (defendant seeking to recover restrained assets to hire an attorney was not entitled to re-litigate the grand jury's probable cause determination that a crime was committed).

25. In summary, the defendant is not entitled to a hearing to contest the seized funds because he does not (and cannot) meet the threshold showing of financial need; and even if he did make that threshold showing, he fails to make a *prima facie* case of an error in the magistrate's finding of probable cause with regard to the seizure warrants. Defendant's motion to release the seized funds should be denied.

### V. Motion to Suppress

26. Defendant's Motion to Suppress does not specify which warrant/s he seeks to attack, or what evidence he seeks to suppress. Instead, the Motion to Suppress appears to simply repackage defendant's Motion to Release Seized Funds by giving the motion a different name.

27. Defendant cannot use a motion to suppress to attack the seizure of funds from defendant's bank accounts. First, the seizure warrants resulted in the seizure of money that the government will seek to forfeit after a conviction, not the seizure of evidence that will be used at

trial. As a result, there is simply no evidence to suppress. Second, the defendant cannot avoid the threshold requirement of demonstrating financial need by renaming his Motion to Release Seized Funds as a Motion to Suppress. *Fisch*, 851 F.3d at 409 (5th Cir. 2017) (without a showing of financial need, there is no basis to revisit probable cause).

28. Moreover, the defendant cannot credibly attack the April 25, 2017 search warrant related to the search of defendant's medical clinic, because defendant repeatedly acknowledged that there was probable cause to search the clinic in his Motion to Release Seized Funds. ECF No. 52 at 4 ("the statements by CW-1 may be sufficient to establish probable cause to search the records of the clinic); *Id*. (the statements of CW-2 "may be sufficient to obtain a warrant to review the records"); *Id.* at 6 ("[t]he affidavits may be sufficient to search records"). *Coolidge v. New Hampshire*, 403 U.S. 443, 498 (1971) ("Evidence properly seized under the Fourth Amendment, of course, is admissible at trial") (Black, J, concurring and dissenting).

29. Even if the defendant sought to suppress evidence related to the search of his clinic, he fails to articulate any defect in the finding of probable cause by U.S. Magistrate Judge Peter Ormsby. "A probable cause determination for the issuance of a search warrant is a 'practical common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones v. United States*, 14 F.Supp.3d 811, 818 (W.D. Tex. 2014); *see also United States v. Huerra*, 884 F.3d 511, 516 (5th Cir. 2018) (probable cause can exist where there is a "fair probability that contraband or evidence of a crime will be found in a particular place.").

30. The two arguments advanced by the defendant, staleness and lack of particularity, lack merit. Staleness is evaluated based on "the particular facts of the case, including the nature of the criminal activity and the type of evidence sought." *United States v. Allen*, 625 F.3d 830,

842 (5th Cir. 2010) (evaluating based on whether the magistrate judge "could have reasonably concluded that" the evidence was on the premises covered by the search warrant). A court properly allows a search based on older information where "(1) . . . the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity; and (2) . . . the type of evidence sought is the sort that can reasonably be expected to be kept for long periods of time in the place to be searched[.]" *United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 2006); *United States v. Barnes*, 126 F.Supp.3d 735 (E.D. La. 2015) (relying on the factors set forth in *Rojas Alvarez* and *Pena-Rodriguez,* the court held that older allegations of health care fraud were not stale where the scheme spanned six years and the affidavit included facts about patients receiving treatment for three and four years at a time).

31. Here, like in *Barnes*, the search warrant sought medical records, billing invoices, doctor notes, correspondence, and information held on computers, all of which are "clearly of the type [of records] that a medical office would maintain for long periods of time." *Barnes*, 126 F.Supp.3d at 744. The search affidavit in this case described a long-standing and ongoing pattern of criminal activity, evidence of which was likely to be on the premises, even after a longer period of time. *See* Affidavit at 12 ("[w]itnesses have provided statements to law enforcement agencies that since in or around 2006 Zamora-Quezada has been engaged in an elaborate and sophisticated health care fraud scheme through the submission of false and fraudulent billings."). And, in fact, such records were found as anticipated as part of the search of defendant's offices. Therefore, under the *Barnes* rationale, the affidavit was not stale.

32. The search affidavit also was sufficiently particular. The Fifth Circuit "require[s] enough detail in the warrant to allow a reasonable agent to know what items she is permitted to

take." *United States v. Sanjar*, 876 F.3d 725, 735 (5th Cir. 2017). "Generic language may satisfy this 'particularity' requirement if describing a more specific item is not possible." *Id.* For example, in *Sanjar*, a health care fraud case, language was sufficiently particular to the Fifth Circuit when it "authorize[d] seizure of 'documents constituting…patient files' as well as those relating to Medicare claims, the PHP program, and Spectrum's finances" because "even if somewhat generic, [the list] provided sufficient notice of what agents could take." *Id.* at 736.

33. Moreover, in this case Judge Ormsby made a specific finding that the circumstances of this case justified the listing of categories of items to be seized, rather than identifying each specific patient file or record. Judge Ormsby included an Addendum B to Attachment B of the warrant, which states *inter alia*:

> I find that the search of broad categories of documents and records is justified and consistent with the Fourth Amendment in this instance because, based on the evidence submitted to establish probable cause, the nature and scope of the alleged health care fraud and related violation of federal law require the examination of such records. The evidence reflects a health care fraud conspiracy involving an extensive and complex web of claims and transactions that justifies (in light of the evidence presented) a broad search of medical and financial records in order to unravel the health care fraud and other violations of federal law arising out of this alleged conspiracy (including wire fraud and money laundering).

34. Given the nature of the affidavit's allegations, Fifth Circuit law generally, and the magistrate's finding specifically, the affidavit was legally sufficient for the search and seizure, and materials collected pursuant to the warrant may be used as evidence at trial.

### VI. Motion to Strike Surplusage

35. A motion to strike surplusage should be granted "only if it is clear that the allegations are (1) irrelevant to the offenses charged; (2) prejudicial, and (3) inflammatory." *United States v. Markham*, 2013 WL 705113, at *6 (N.D. Tex. Feb. 27, 2013); *see also United States v. Graves*, 5 F.3d 1546, 1550 (5th Cir. 1993) ("To be stricken, surplusage must be 'irrelevant, inflammatory, and prejudicial.'"). Because this is "a strict standard, surplusage is

rarely stricken." *United States v. Vogel*, 2010 WL 2465359, at *1 (E.D. Tex. May 21, 2010) citing *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). The "mere fact that information in an indictment does not constitute an element of the charged offense does not require that it be stricken." *Markham*, 2013 WL 705113 at *6. Moreover, "when information is relevant to the charged offense, it should not be stricken, regardless of how prejudicial it may be." *Vogel*, 2010 WL 2465359 at *1 citing *United States v. Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990).

36. Because each of the statements in the Indictment are relevant to the charged offenses, and are not inflammatory or prejudicial, they should not be stricken.

37. **Paragraph 4.** The defendant objects to the listing of numerous corporate entities associated with the defendant. Motion at 2. These entities, however, are directly relevant to the money laundering charges in Count 7 which allege that the defendant and his co-conspirators "purchase[d] and acquire[d] the commercial and residential real estate, in part, through the name of a shell entity." *See* Indictment ¶ 23d. Because the defendant used the named entities to conceal the proceeds of his health care fraud, Paragraph 4 contains allegations necessary to prove Count 7 and should not be stricken.

38. **Paragraphs 5-12, 13, 17q.** The defendant objects to language in these paragraphs of the Indictment claiming that they unfairly make it appear as if the allegations present "given" rather than contested facts. Motion at 2, 3. On the contrary, the language in the Indictment (like every indictment) contains allegations which the government is required to prove at trial using witnesses and evidence. The government is prepared to meet this burden for each of the allegations at trial. Plus, the structure of federal health care benefit programs, general information about Rheumatoid Arthritis and the total amount of claims submitted to the affected health care benefit programs are all facts of consequence to determine whether the offenses were committed. *See*

Fed. R. Evid. 401. To the extent that the defendant disagrees with the standards described about Rheumatoid Arthritis (or any other allegations) presented in the government's case in chief to support the Indictment's allegations, it can cross examine the government's witnesses and present its own experts. Accordingly, paragraphs 5-12, 13, and 17q should not be stricken.

39. **Paragraph 17b.** The defendant objects to the Indictment's reference to the defendant's private jet and luxury car. Motion at 2. However, evidence showing that the defendant traveled in a private jet and luxury vehicles shows how—and the extent to which—the defendant was enriched by his fraud scheme. Obtaining money to fund his lavish lifestyle is alleged as one of the objects of the health care fraud conspiracy: "[i]t was a purpose of the conspiracy for DR. ZAMORA-QUEZADA and others...to unlawfully enrich themselves by…diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators." *See* Indictment ¶ 16(c); *see also Graves*, 5 F.3d at 1550 (holding "evidence suggesting a motive for a crime is relevant" in rejecting motion to strike language as surplusage). In another health care fraud case, a court rejected the lone remaining defendant's request to exclude language describing the offense as a "$30 million" health care fraud scheme, reasoning that the language "provides an overview of the extent and magnitude of the conspiracies…and evinces how lucrative those conspiracies actually were." *United States v. Crinel*, 2016 WL 3877976, at *8 (E.D. La. July 18, 2016). The defendant's use of a jet is also relevant to *how* he was able to execute the scheme charged, which alleges that the defendant submitted fraudulent claims for patients in three different cities which he visited each week, using his jet to get there. The fact that the defendant owned a jet and expensive vehicles is also relevant to how he induced patients to use his clinic. A private jet and luxury vehicles portrays an image of success, and lent his medical practice credibility. In *Crinel*,

because the indictment's reference to facts "relevant to issues that remain in dispute in this case" they were left in the indictment. *Id.* at *9. So, too, here.

40. **Paragraphs 17i-17m.** The defendant objects to the Indictment's reference to the defendant's Texas Medical Board "public reprimand." Motion at 2-3. This evidence is relevant because it has a tendency to make it more probable that the defendant knew the rules of practice for physicians in Texas when he is alleged to have violated them. The evidence is relevant to show this defendant's willfulness in continuing to engage in his fraudulent behavior, and should not be stricken. In similar cases, courts have denied defendants' motions to strike language as surplusage. For example, in a money laundering and unlawful distribution case brought against a group of doctors, the court rejected defendants' attempt to strike language describing "violations of state medical standards" as relevant to the doctors' criminal liability. *United States v. Prejean*, 429 F.Supp.2d 782, 797 (E.D. La. 2006). The *Prejean* court also admitted language relating to an earlier consent judgment—because the evidence of the judgment was deemed admissible, it could be referred to in the indictment. *Id.*

41. **Paragraphs 23c and d.** Here, the defendant seeks to have the description of properties stricken because, the defendant claims, the government has not adequately explained the relevance of each as part of the scheme. Motion at 3. As is clear from the face of the Indictment, the properties are named as part of Count 7 and are identified as part of the manner and means of the money laundering conspiracy, namely that they are among the purchases made to conceal the defendant's health care fraud proceeds. As explained above, the government will present evidence at trial to show this and it need not be spelled out in the Indictment.

## VII. Conclusion

42. Based on the foregoing, the Motions should each be denied.

Respectfully submitted,

SANDRA L. MOSER
ACTING CHIEF, FRAUD SECTION

| | |
|---|---|
| Joseph S. Beemsterboer<br>Deputy Chief, Health Care Fraud Unit | RYAN K. PATRICK<br>UNITED STATES ATTORNEY |
| */s Kevin Lowell*<br>KEVIN LOWELL<br>LESLIE S. GARTHWAITE<br>United States Department of Justice<br>Criminal Division Fraud Section<br>1400 New York Avenue, N.W.<br>Washington D.C. 20005 | */s Andrew R. Swartz*<br>ANDREW R. SWARTZ<br>Assistant United States Attorney<br>U.S. Attorney's Office, SDTX<br>1701 W. Highway 83, #600<br>McAllen, TX 78501 |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of July 25, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and provided an electronic copy to the defendant's counsel of record.

*/s Andrew R. Swartz*
ANDREW R. SWARTZ
Assistant United States Attorney
U.S. Attorney's Office, SDTX
1701 W. Highway 83, #600
McAllen, TX 78501