IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 7:18-cr-00855 |
| JORGE ZAMORA-QUEZADA | § § | |

**MOTION TO RECONSIDER ORDER OF DETENTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, JORGE ZAMORA-QUEZADA, in the above styled and numbered cause, and pursuant to Title 18 U.S.C. §3145(b), respectfully moves this Court reconsider the Order of Detention entered against the Defendant and grant Defendant pre-trial release, and would respectfully show the Court as follows:

### I. BACKGROUND

The Indictment was filed on May 9, 2018. The Indictment alleges Dr. Zamora-Quezada and an unknown alleged co-conspirator(s) participated in a health care fraud scheme concerning $240 million in Medicare, among others, reimbursement claims over a time span of nearly two decades.

### II. NEW INFORMATION

Since the detention order, new information has surfaced warranting reconsideration of the bail conditions.

1. First, Dr. Zamora-Quezada's wife, Meisy Zamora, was arrested and is being held without bail leaving their fourteen-year-old daughter separated from her parents.

2. Second, contrary to the Government's assertion that **all** claims were

1

subject to the fraudulent activity we now know that is not the case at all. For example, in a letter dated January 22, 2014, the Centers For Medicare & Medicaid Services (CMS) informed the Defendant of a "Fully Favorable" decision regarding services provided by Dr. Zamora-Quezada. The claim, similar to the one the Government asserts in this case, alleged Dr. Zamora-Quezada received an overpayment of $3,311,283.38, which was an unverified projection. However, after an independent medical examiner reviewed the file, **which the Government has not done in this case**, CMS determined that the services were medically necessary, and any services found to be not medically necessary were of no fault of Dr. Zamora-Quezada. The "investigation" was cited by the Government in support of their search and seizures, however, absent from the affidavits was the fact that the decision was fully favorable to Dr. Zamora-Quezada. Please see attached Exhibit "A".

3. Finally, the case has been declared Complex and has had substantial pretrial publicity, which may lead to further delays and has already proven to be true, given what has occurred with Meisy Zamora. All these are factors that give weight to a determination of pretrial detention.

### III. 3142(G) FACTORS

In determining whether there are conditions of release that will reasonably assure the appearance of the person, the court should take into account several aspects of the case.

A. *The Weight of the Evidence:*

The Government's claim stems around: 1) Dr. Zamora-Quezada falsely diagnosing

patients with Rheumatoid Arthritis and treating them with chemotherapy; 2) the Texas Medical Board reprimanded the Dr. Zamora-Quezada; and 3) the "conspiracy" generated $240 million in claims and approximately $50 million in payments dating back to 2000.

The Government's entire case is based upon hearsay and misunderstanding of the medical practice.

    i. **False Diagnosis and Chemotherapy:**

The evidence in this case shows that for nearly two decades, Dr. Zamora-Quezada has attended more than 10,000 patients, over 80% of which had been referred to his practice by General Medicine Practitioners and other specialists.

The evidence shows that Dr. Zamora-Quezada had a successful practice premised on patient satisfaction and, based upon the overwhelming amount of referrals, respect amongst the physician within the community, that is, until the Government, along with several competitors and former employees of Dr. Zamora-Quezada created a false narrative in order to justify two decades of fruitless investigations.

The Government's case is premised on treating physicians who will give opinions as to the treatment of certain patients sometimes years after Dr. Zamora-Quezada saw them. Accordingly, the only opinion being provided by the treating physicians are that at the time the patient was seen by the treating physician, the patient no longer had Rheumatoid Arthritis based upon the tests given by the treating physician. The Treating Physician did not review prior medical records, blood tests, or images. In fact, there is not a single opinion stating that Dr. Zamora-Quezada intentionally misdiagnosed a patient. Moreover, there is no opinion or evidence that based upon Dr. Zamora-Quezada's records, tests, and images, Dr. Zamora-Quezada gave a false diagnosis.

### ii. Texas Medical Board and Investigations

As stated above, the Government has attempted to find something wrong with Dr. Zamora-Quezada's practice based on nothing more than the fact that he was a successful practitioner.

In 2002, the Government claimed that 100% of the Dr. Zamora-Quezada's billing was incorrect, which result in an overpayment of $3.3 million. However, after contesting the issue, Dr. Zamora-Quezada was given a fully favorable decision. Exhibit "A". After a careful consideration of the evidence and arguments it was determined that: 1) the $3.3 million extrapolation was unverified and an invalid projection; 2) the services from the actual overpayment were found to be medically necessary with the exception of a few; and 3) of the few to be medically unnecessary, Dr. Zamora-Quezada was not liable.

In 2007, federal agencies again investigated Dr. Zamora-Quezada, which likewise did not turn to be fruitful. In 2009, the Government alleges that Dr. Zamora-Quezada was "reprimanded" for his conduct. However, the "reprimand" was an Agreed Order, pursuant to the provisions of Section 164.002 of the Act, and done so in order to save money and resources and to avoid further investigation, hearing, and the expense and inconvenience of litigation. Moreover, the terms of the Agreed Order provided that a physician would monitor Dr. Zamora-Quezada for two years. Dr. Zamora-Quezada complied with the Order without incident. In 2011 and again in 2014, federal agencies continued to investigate Dr. Zamora-Quezada without incident.

Now, despite investigating the practice of Dr. Zamora-Quezada for almost two decades and reviewing numerous medical records, customs, and procedures during that time, the Government claims he was harming his patients, <u>yet allowed it to continue for years</u>.

### iii. $240 Million

The Government further attempts to support its motion for detention based upon the amount at issue, that is, the claim of $240 million in submitted claims. The amount, similar to the Government's past extrapolations, is unverified and invalid. After nearly three months since the Indictment, the Government has not produced a single piece of evidence to support let alone identify the basis for the amount claimed to be derived from illegal activity. In fact, the Government's claim would presume that every single patient that was treated by Dr. Zamora-Quezada over the past eighteen years was somehow fraudulent. A claim that has already been proved to be false.

The allegation is false and misleading. The $240 million is being used by the Government for shock value without a single piece of evidence to substantiate the claim. The claims the Government has mentioned amount to less than $2,000. A claim for $2,000, however, would not garner the media attention and clear prejudice the Government is seeking to impose on Dr. Zamora-Quezada.

### B. History and Characteristics:

This Court, in determining whether there are conditions of release that will reasonably assure the appearance of the Defendant, should take into account Dr. Zamora-Quezada's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, criminal history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.

### i. Education

Dr. Zamora-Quezada became a U.S. citizen on September 19, 2011. Previously he was a permanent resident since October 12, 2005, and a H1B Visa holder granted for exceptional

abilities since October 5, 1998.  He is 61 years old.  Aside from his continued strive to educate himself and others, Dr. Jorge Zamora-Quezada has been trained in the following five (5) medical specialties: 1) Internal Medicine; 2) Rheumatology/Immunology; 3) Emergency Medicine; 4) Endocrinology – Bone Metabolism; and 5) Public Health

From 1976 to 1977, Dr. Jorge Zamora-Quezada was a Pre-Doctoral Research Fellow, at the "Instituto de Biología Experimental de la UNAM" in Mexico City.  From 1979 to 1980 he was a Pre-Doctoral Research Fellow at the Infectology Division of the "Instituto Nacional de la Nutrición, Salvador Zubirán" in Mexico City.  He graduated from medical school from the University of Guadalajara, School of Medicine, in 1980.  In 1983 he finished a residency in Internal Medicine at the "Instituto Nacional de Nutrición, Salvador Zubirán", in Mexico City.

Dr. Zamora-Quezada arrived in the United States in 1983.  From 1983 to 1984, Dr. Zamora-Quezada was a Postdoctoral Research Fellow at the Infectious Disease Division of the Department of Medicine, University of Iowa, Hospitals and Clinics in Iowa City, Iowa.  He worked in Dallas, Texas, at Southwestern Hospital where he did another residency in Internal Medicine and became certified by the American Board of Internal Medicine in 1983.  Thereafter he studied and obtained a degree in Rheumatology/Immunology at the New England Medical Center Hospital in Boston, Massachusetts in 1986-1988 and became certified as Rheumatologist by the American Board of Internal Medicine.  From 1988 to 1993, Dr. Zamora-Quezada attended the Program in Clinical Effectiveness, at Harvard Medical School, which is a joint program of Harvard Medical School and the Brigham and Women's Hospital, as well as Mass. General, in Boston, Massachusetts.  In 1993 he received a Masters of Public Health from the Harvard School of Public Health and during that time studied Endocrinology – Bone Metabolism at Mass General Hospital, Harvard Medical School.  From July 1993 to June 1995, he was a Postdoctoral

Research Fellow, Endocrine Unit at the Massachusetts General Hospital, Harvard University, Boston, Massachusetts. In 1997, Dr. Zamora-Quezada became certified as a Basic Life Support Rescuer and Advance Trauma Life Support. From 1984 to 1999 Dr. Zamora-Quezada worked in Emergency Rooms in Iowa, Dallas, Boston, San Antonio, Suigine, Edinburg, McAllen, Weslaco, Brownsville, and other towns in Massachusetts and New Hampshire.

In 2008, Dr. Zamora received a certification as Instructor of Meditation from the Chopra Center and in 2009, a certification of Instructor of Perfect Health also from the Chopra Center. Additionally, Dr. Zamora-Quezada had diplomas in both Cenegentics - Age Management Medicine and Aesthetic Medicine - Liposuction with Ultrasound.

### ii. Teaching

On the Academic side, Dr. Zamora-Quezada has been an Instructor, for the Physiology Department, of the University of Guadalajara, School of Medicine, from 1975 to 1976; an Instructor at the Pharmacology Department at the University of Guadalajara, School of Medicine from 1976 to 1977; an Instructor of the Pre-Doctoral course of Scientific Method of Statistics at the University of Guadalajara, School of Medicine; an Assistant Professor of Scientific Method and Statistics at the University of Colima, School of Medicine, in Mexico, in 1977 and an Assistant Professor of Medicine at the General Hospital of Occident, University of Guadalajara, from 1989 to 1992. From 2000 to 2017, Dr. Zamora-Quezada was a lecturer at Pan-Am Edinburg for the Physician Assistant Program and the Nurse Practitioner Program.

### iii. Awards

Dr. Jorge Zamora-Quezada received the following Awards and Funding: 1974 – Anatomy Contest, School of Medicine, University of Guadalajara; 1976-1977 – Pre-Doctoral Research Fellowship Grant, University of Guadalajara, "Instituto de Biología Experimental",

UNAM – University of Guadalajara; 1978 – Pre-Doctoral Clinical Fellowship Grant, University of Guadalajara, Internal Medicine Department, "Instituto Nacional de la Nutrición, Salvador Zubirán", Mexico City; 1979 Pre-Doctoral Research Fellowship Grant CONACYT; 1980-1982 Post-Doctoral Clinical Fellowship Grants, University of Guadalajara, Internal Medicine Department, "Instituto Nacional de la Nutrición, Salvador Zubirán", Mexico City; and has been, since 1983, a Member of the American Medical Association, the American College of Physicians, and the Medical Society of the "Instituto Nacional de la Nutrición"; since 1984, a Member of the Texas Medical Association; since 1985 a Member of the American Federation for Clinical Research; since 1986, a Member of the Massachusetts Medical Society; since 1987, a Fellow of the American College of Rheumatology; since 1988, a Member of the "Instituto Nacional de la Nutrición", Guadalajara, Jalisco, Mexico; and since 1993, a Fellow of the American Society of Bone Mineral Research.

### iv. Publications

Dr. Jorge Zamora-Quezada has authored and co-authored the following books: 1975 – Drucker-Colin, R., Diaz-Mitoma, F., and Zamora-Quezada, J. "La Neurobiología del Sueño. BIOLOGIA. (6) 27-33; 1976 – Drucker Colin, R., Bernal, J., and Zamora-Quezada, J. Multiple Unit Activity During Tonic and Phasic REM Sleep. Modification by Protein Synthesis Inhibitors. Seventh Annual Meeting of the Society for Neuroscience, Anaheim, CA; 1977 – Drucker Colin, R., Bernal. J., Zamora-Quezada, J. Changes in Multiple Unit Activity During Rapid Eye Movement Sleep. Experimental Neurology 57:331-41; 1997 – Drucker Colin, R., Bernal, J, Zamora-Quezada, J. Oscillatory Level of Excitation During Phasic and Tonic REM Sleep: A Study of Multiple Unit Activity in Brain Stem and Limbic Structures. Sleep Research. 6:25; 1979 – Drucker Colin, R., Zamora-Quezada, J., Bernal, J., and Diaz-Mitoma, F., Modifications

of REM Sleep and Associate Phasic Activities by Protein Synthesis Inhibitors. Experimental Neurology 63:158-67; 1980 – Zamora-Quezada, J., Lymphoma as a Cause of Fever of Unknown Etiology, A Twenty Year Experience. Eighteen Annual Meeting of the Physicians Society of the "Instituto Nacional de la Nutrición", Mexico City; 1981 – Zamora-Quezada, J., Mucormycosis, Clinical and Pathological Characteristics of 15 Fatal Cases. Nineteenth Annual Meeting of the Physicians Society of the "Instituto Nacional de la Nutrición", Mexico City; 1981 – Ruiz-Palacios, G., and Zamora-Quezada, J., "Piperacilina. Estudio Clínico en Infecciones Graves". Rev Invest Clin (Mexico) 33:252-57; 1982 – Zamora-Quezada, J., A Prospective Evaluation of the Clinical Utility of ESR Determination and The Use of Simple Radiology Studies in a Large Outpatient Clinic. Twentieth Annual Meeting of the Physician Society of the "Instituto Nacional de la Nutrición", Mexico City; 1983 – Del Real, O., Zamora-Quezada, J.C., and Abud-Mendoza, C., "Mucormicosis. Estudio Anatomopatologico de 15 Casos". Rev Invest Clin (Mexico) 35:237-40; 1988 – Zamora-Quezada, J., C., Dinerman, H., Stadecher, M., and Kelly, J. Muscle and Skin Infraction After Free Basing Cocaine (Crack). Ann Intern Med 108:564-66; 1994 – Finkelstein, J.S., Cleary, R.L. Butler, J.P., Antonelly, R., Mitlak, B.H., Deraska, D.J., Zamora-Quezada, J.C., and Neer, R.M. A Comparison of Lateral Versus Anterior-Posterior Spine Dual Energy X-Ray Absorptiometry for the Diagnosis of Osteopenia. J Clin Endocrinol Metab 78:724-30; and submitted Zamora-Quezada, J.C., Cleary, R.L., Mitlak, B.H., and Neer, R.M., A Comparison of Peripheral Quantitative Computed Tomography Versus Dual Energy X-Ray Absiormetry for the Diagnosis of Early Trabecular and Cortical Osteopenia. J Clin Endocrinol Metab.

  v. **<u>HealthTexas Medical Group Lawsuit</u>**

  The allegations by the Government that Dr. Zamora-Quezada failed to adequately care for his patients is without merit and contrary to his history and actions of patient advocacy.  In

the Western District of Texas – San Antonio, having Cause Number: 5:97-cv-00726-FB in front of the Honorable Fred Biery, Dr. Zamora-Quezada along with another physician and thirteen patients brought a lawsuit against health care entities alleging discriminatory conduct against the disabled.  The lawsuit alleges that the health care entities delayed or denied the patients full and equal enjoyment of medical treatment and services in violation of the ADA, 42 U.S.C. § 12182(a), and limited or denied medical treatment and services in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Dr. Zamora-Quezada contended that his employment was terminated as result of advocating for his patients and giving care, which infringed on the contractual arrangement.  The matter was eventually tried and resolved.

### vi. Family

Dr. Zamora-Quezada married Meisy Zamora in 2000.  Their marriage produced a fourteen-year-old daughter, Georgina Zamora, a U.S. citizen.  Dr. Zamora-Quezada has several children from a previous marriage: Tatiana Zamora, a Mexican National and doctor who resides in Mexico City; Jorge Alejandro Zamora, a U.S. citizen and doctor who resides in Harlingen, Texas; Victor Zamora, a doctor who is taking his Unites States Medical Licensing Exam; and Lucia Zamora, a U.S. citizen, who studies at UTRGV in Edinburg, Texas.  Meisy Zamora has two children from her previous marriage: Pilar Gonzalez, a U.S. citizen who lives and works in San Francisco, California; and Fabio Gonzalez, a U.S. citizen who recently graduated from Texas Sothern University in Houston, Texas.

While Dr. Zamora-Quezada has ties to Mexico, he also has significant community and family ties in the United States, which would assure his presence at trial.  Of utmost importance to Dr. Zamora-Quezada is his wife, Meisy Zamora, and their fourteen year old daughter, Georgina.  Due to the recent arrest and denial of bail of Meisy Zamora, the circumstances

presented to him would assure his presence at trial.

### C. *Meisy Zamora Arrest:*

Dr. Zamora-Quezada's wife, Meisy Zamora, was arrested on July 26th, 2018. On August 2, 2018, she was denied bail. The arrest of Meisy Zamora places Dr. Zamora-Quezada and Meisy Zamora's fourteen-year-old daughter without a parent. The Government's actions in depriving a minor child of her parents pending trial, who are, as of now, completely innocent of any wrongdoing, is unconscionable and disheartening, but in line with the Government's recent immigration policy and behavior of separating families.

Dr. Zamora-Quezada has, on multiple occasions, sought to clear his name and repeatedly done so. The Government has continued to thwart the efforts of Dr. Zamora-Quezada's ability to provide an adequate defense.

The incarceration of Meisy Zamora and the resulting, and unnecessary, consequences to his minor daughter are circumstances, which indeed warrant the release of Dr. Zamora-Quezada and in no uncertain terms, would ensure his presence at trial to not only face the charges asserted against him but, once again, be absolved of any wrongdoing.

### D. *Prior Conduct:*

As stated by the Government, "Defendant knew of countless state and federal investigations into his conduct. Defendant has been the subject of prior civil investigations, civil lawsuits, insurance audits, prior criminal investigation, and Texas Medical Board investigations. He had no reason to believe that this particular investigation was any different." Doc. 39. The Government's own admission indicates that either the prior investigations had no merit or were only civil claims and would not be filed as a criminal proceeding, or Dr. Zamora-Quezada has consistently shown that he will stay and fight the allegations asserted against him, whether civil

or criminal. In either case, Dr. Zamora-Quezada has shown he is not a flight risk and will continue to stand against his accusers.

### IV. DUE PROCESS AND PRETRIAL PUBLICITY

An excessively prolonged detention may become so unreasonable in relation to the regulatory goals of detention that it violates due process. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). In determining whether due process has been violated, the court may consider additional factors such as 1) length of detention that has in fact occurred or may occur in the future; 2) the non-speculative nature of the future detention; 3) the complexity of the case; and 4) whether the strategy of one side or the other occasions the delay. *Id*.

A fair and impartial trial cannot be obtained at this time as a result of adverse pretrial publicity prejudicial to the Defendant. Discussions are currently taking place on how to address this issue. The time necessary to be able to obtain an impartial and jury is uncertain and could lead to further delay. The Government, after nearly three months of preparation for this matter, filed a complaint against Dr. Zamora's wife, Meisy Zamora. The facts to file the complaint against Mrs. Zamora were known at the time of this Indictment, but were not pursued until after several months of media reports, commercials, billboards, FBI hotlines, websites, and numerous other methods of creating publicity were utilized. Now, once again, the Government files a complaint and continues to generate prejudicial publicity.

**<u>A criminal case should be tried in the courtroom and not in the press.</u>**

### V. CONDITIONS AVAILABLE

In ordering the release of Dr. Zamora-Quezada pending trial, the Court may impose a combination of conditions to ensure the presence of Dr. Zamora-Quezada at trial. See 18 U.S.C. §3142(c). Dr. Zamora-Quezada will submit to any of or a combination of, the following

conditions, or others as imposed by this Court: 1) reporting to police; 2) house arrest; 3) curfew; 4) surrender of passports; 5) electronic home monitoring; 6) GPS tracking; 7) 24/7 guard; and 8) waiver of extradition.

### A. 24-Hour-A-Day Armed Security

In *United States v. Marc Dreier*, 596 F.Supp.2d 831 (S.D. N.Y. 2009), the court found that the defendant presented a risk of flight, but conditions of release existed which would reasonably assure defendant's appearance in court as required. The bail package presented to the court included, but was not limited to, 1) a sizeable personal recognizance bond; 2) home detention, 24/7 in his residence, secured not only by electronic monitoring but by on-premises armed security guards, which would likely be less costly to the Government than the current conditions imposed; 3) surrender of travel documents; 4) strict supervision by Pre-Trial Services; and 5) ongoing cooperation with the court-appointed Receiver in identifying and preserving all assets held directly or indirectly by defendant.

### B. Waiver of Extradition

Although the previously described conditions of release would secure Dr. Zamora-Quezada's presence at trial, as an additional condition, Dr. Zamora-Quezada would execute a non-revocable wavier of extradition.

### VI. CHARACTER LETTERS

While hundreds of letters have been submitted, a representative sample of community and patient support are reflected in the attached letters for the Court's consideration, which address Dr. Zamora-Quezada's character and resolve to address the charges in a court of law. Exhibit "B".

## VII. PRAYER

WHEREFORE, premises considered, Defendant respectfully requests that this Honorable Court Reconsider its Order of Detention and order appropriate conditions for Defendant's release.

Respectfully submitted,

**LAW OFFICE OF BENIGNO (TREY) MARTINEZ, PLLC**

1201 East Van Buren
Brownsville, Texas 78520
Tel:  956-550-4868
Fax:  956-621-0135

By: /s/ Tomas F. Tijerina
TOMAS F. TIJERINA
State Bar No. 24070746
Federal ID No. 1062166
E-mail: tomas@mbymlaw.com
BENIGNO (TREY) MARTINEZ
State Bar No.  00797011
Federal ID No. 23945
E-mail: trey@mbymlaw.com

J. A. "Tony" Canales
Federal Bar No. 1163
State Bar No. 03737000
**CANALES & SIMONSON, P.C.**
2601 Morgan Ave.-P.O. Box 5624
Corpus Christi, Texas 78465-5624
Telephone: (361) 883-0601
Facsimile: (361) 884-7023
Email: tonycanales@canalessimonson.com

Cynthia Contreras Gutierrez
State Bar No. 08640550
**CONTRERAS GUTIERREZ AND ASSOCIATES**
1302 S. 10th Avenue
Edinburg, Texas 78539
Telephone: (956) 683-0057
Facsimile: (956) 683-0059

Email: cynthia@ccglaw.net

**ATTORNEYS FOR DEFENDANT**
**JORGE ZAMORA-QUEZADA**


**CERTIFICATE OF CONFERENCE**

I, Tomas Tijerina, certify that on the 7th day of August 2018, I consulted with Assistant U.S. Attorney Andrew Swartz regarding this motion. Mr. Swartz has stated that he opposes the Motion.

/s/ Tomas F. Tijerina
Tomas F. Tijerina


**CERTIFICATE OF SERVICE**

On the 7th day of August 2018, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

/s/ Tomas F. Tijerina
Tomas F. Tijerina