# EXHIBIT A

1  justification for services and there were no medical
2  records to show that the patient needed services.
3       Q.   Now, you previously discussed that 80 to 85
4  percent of the patients didn't qualify for hospice.  Did
5  you become interested in finding out why Merida was
6  getting so many patients referred to it?
7       A.   I did.
8       Q.   And why were you interested in finding that out?
9       A.   There were just so many patients on services and
10 as I was being patients in the home, I found that a lot
11 of them didn't really know what hospice was, didn't
12 realize what the services were and some of them didn't
13 even realize they were on hospice.
14      Q.   Did you talk to members of the marketing team at
15 Merida?
16      A.   I did.
17      Q.   Did members of the marketing team tell you who
18 was responsible for the marketing plan?
19              MR. GUERRA:  Objection, Your Honor.
20              THE WITNESS:  Yes.
21              MR. GUERRA:  Calls for hearsay.
22              MR. FOSTER:  It's 801(d)(2)(d), Your Honor.
23 Well, first the question did she have the conversation
24 is not hearsay so --
25              MR. GUERRA:  But --

1  　　　　　　MR. FOSTER:  -- that objection should be
2  overruled, and then 801(d)(2)(d) statement of the
3  parties employed.
4  　　　　　　THE COURT:  One -- one second, gentlemen.
5  All right.  Let's break it up one piece at a time.
6  Rephrase your question again.  Let me -- let me hear it.
7  　　Q.  (By Mr. Foster)  Did you talk with members of the
8  marketing team about who was responsible for the
9  marketing plan?
10 　　　　　　THE COURT:  Did she speak to them?
11 　　　　　　MR. FOSTER:  Yes.
12 　　　　　　THE COURT:  That -- I'll allow that.
13 　　　　　　THE WITNESS:  Yes.
14 　　Q.  (By Mr. Foster)  And what did they tell you?
15 　　　　　　MR. GUERRA:  Objection, Your Honor.  That
16 goes to hearsay.  Out of Court statement offered for the
17 truth of the matter asserted for people who are not in
18 this case.
19 　　　　　　MR. FOSTER:  It was -- Your Honor under
20 801(d)(2)(d), it was made by the Defendant's employee
21 about a matter in the scope of the employment
22 relationship so it falls squarely within that hearsay
23 exception.
24 　　　　　　THE COURT:  Let's clarify who she -- who
25 they is referring to before I allow that.

```
 1                 MR. FOSTER:  Sure.
 2       Q.   (By Mr. Foster)  Who did you speak with?
 3       A.   The name?
 4       Q.   Sure.
 5       A.   Or their title?  It was one of the marketers, her
 6  name was Crystal.
 7       Q.   Was she employed by the Merida Group?
 8       A.   Yes.
 9       Q.   Did you speak to her about the Merida Group
10  marketing plan?
11       A.   Yes.
12       Q.   What did she tell about that plan?
13                 MR. CANALES:  Objection, Your Honor.
14                 MR. GUERRA:  Same objection.
15                 THE COURT:  I'll allow that.  Overruled.
16                 THE WITNESS:  That when meeting with new
17  families that they were instructed to highlight the
18  benefits of hospice, not necessarily the six-month or
19  less life expectancy, not to mention that, but highlight
20  the free things that they get to be on services.  The
21  free medicines that they get, the free supplies that
22  they get like -- we call them briefs not diapers, but
23  briefs and wipes, Ensure, equipment, oxygen, hospital
24  bed, shower chairs things of that nature.
25       Q.   (By Mr. Foster)  Did that concern you?
```

1  patient is changing, the medications should be changing
2  according to the patient changing, such as increases or
3  decreases in medication to control symptoms as they
4  decline.
5       Q.   What about were there instances were you became
6  aware in your role at Merida Group that patients were
7  placed on hospice without the knowledge of their primary
8  care physician?
9       A.   Yes, there was.
10      Q.   Can you describe that for the jury?
11      A.   There was two instances specifically that I
12 recall receiving phone calls as the internal case
13 manager from very irate and upset --
14           MR. CANALES:  I -- Your Honor --
15           THE WITNESS:  -- physician.
16           MR. CANALES:  May we approach?
17           THE COURT:  One second.
18           (BENCH CONFERENCE.)
19           MR. CANALES:  Your Honor, I let this go with
20 the last witness, but it looks like they're getting into
21 testimony concerning patients or event that are not
22 indicted, no notice of with patients and complaints.
23 There's no specificity as to who this patient is but
24 they're certainly not one of the six hospice patients
25 that are in the indictment.

1  So getting into what was happening, what
2 this witness is going to say about, I don't know what
3 she's going to say about what witness, but that it's
4 improper for -- I believe for the Government to get into
5 and we have no notice of prior bad acts before --
6 beforehand.
7  MR. SWARTZ: Your Honor, the indictment
8 charges Conspiracy to Commit Health Care Fraud that went
9 from 2009 to 2018. And the witness worked at Merida,
10 there were things she personally observed in the course
11 of her employment there, it's entirely proper for her to
12 relay, what she witnessed and observed and learned in
13 the course of employment here. It isn't limited to the
14 six health care fraud counts, but there's conspiracy.
15  THE COURT: Gentlemen.
16  MR. CANALES: They provided no notice of
17 these other patients to us, Your Honor, and at any point
18 in time. They're required -- if they're going to show
19 other bad acts outside of the indictment, they can do
20 that, but they provided no notice of these people.
21 We -- you know, there's no mention of any of that in her
22 302's, Your Honor, now all of a sudden, they did this
23 with the last witness, they started talking about
24 witnesses we've never seen before, we don't have -- we
25 haven't had an opportunity to interview them, to

1  investigate those -- those people, and it's completely
2  improper for the Government to try to surprise us
3  getting into testimony of -- of patients that we have no
4  knowledge and they never alleged any problems with.
5              MR. SWARTZ:  Your Honor, the witness is not
6  talking about other bad acts, this is the bad act
7  charged in the indictment, it's entirely -- we have the
8  burden of proof, we're eliciting evidence to support
9  that burden of proof.
10             THE COURT:  The objection to -- the
11 objection -- well, we can go back on the record.
12 Gentlemen, I'm going to overrule this obviously.  Again,
13 this is the conspiracy for many years not limited in
14 scope just to the six Defendants, the last witness spoke
15 about 100 different patients, again I'm only going to
16 let her speak about the patients she has knowledge about
17 but --
18             MR. CANALES:  We would ask, Your Honor, so I
19 don't have to keep getting up and down that -- that you
20 instruct the Government to ask that, to not generically,
21 but let's talk about which patients she's actually
22 talking about, if she knows.
23             They need to establish who are those
24 patient.  The last witness on cross, when I asked her
25 what the patients, I can't remember a single name,

```
 1   they're just giving these generalities.
 2              MR. SWARTZ:  That sounds like a topic you
 3   can take up on cross.
 4              THE COURT:  Again gentlemen, the Government
 5   is free to ask about the patients that they have
 6   knowledge about.  Gentlemen, the Court will be
 7   consistent about allowing hearsay exceptions as to
 8   employees, nurses, patients, discussions about the
 9   medical history or their treatment during the course of
10   the treatment.  You're free to make those hearsay
11   objections, but the Court will consistent in allowing
12   that kind of entry into the record.
13              Anything else?
14              MR. CANALES:  I need to make the objection,
15   Judge.  I understand where the Court -- I'm just --
16              THE COURT:  I'm just saying just so you
17   know, I mean -- now, if the -- if the nurse or a doctor
18   is speaking outside the scope of their employment, or it
19   doesn't have anything to do with the patient, obviously
20   that would be a different issue.  All right.
21              (OPEN COURT.)
22              THE COURT:  Let's do this.  First of all,
23   the -- the objection -- well, the Court has ruled on the
24   objection.  Why don't we take a break at this time.
25              MR. SWARTZ:  Yes, Your Honor.
```