UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

Case No. 7:18-CR-0855

**UNITED STATES OF AMERICA**

v.

**JORGE ZAMORA-QUEZADA,**
           **Defendant.**

_____/

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO REQUEST CLAIMS DATA

Nearly three years after Defendant Jorge Zamora-Quezada's conviction—and two years after multiple contested sentencing-related hearings—Zamora-Quezada asks the Government to obtain 20 years of medical billing data from third party insurance companies: Medicaid, Medicare, and TRICARE. (*See* ECF No. 762). Defendant's Motion to Request Claims Data ("Motion") should be denied because the data sought is not in the Government's possession, was not part of the trial, and is not subject to any discovery obligation on the part of the Government. If Zamora-Quezada wants new and additional claims data that was never before part of the case, the proper way to seek the data is through a request to the Court for a subpoena under Rule 17 of the Federal Rules of Criminal Procedure. However, Zamora-Quezada would have to demonstrate the "(1) relevancy, (2) admissibility;" and "(3) specificity," of each subpoena he seeks to issue, which he cannot demonstrate. *United States v. Nixon,* 418 U.S. 683, 700 (1974).

The Motion, which fails to cite a single case or rule, appears to be an attempt to relitigate the jury's verdict in this matter. But a trial already occurred, and the jury rendered a verdict.

Nothing that the defendant will do now can change the seven weeks of trial testimony and hundreds of exhibits that show the fraud that pervaded Zamora-Quezada's medical practice. The nine rheumatologists who testified all described the accepted practices for diagnosing patients, showing that Zamora-Quezada diagnosed patients without properly evaluating them. Ferreting through mountains of data outside the conspiracy period will not change the clear evidentiary record, or the jury's verdict.

I. **The Prosecution Team Is Not in Possession of Materials Sought by Defendant**

Defendant's motion should be denied because the Government does not have a duty to disclose data that it does not have in its possession. Prior to trial, the Government obtained data and it produced all of that data to defendant. Defendant now requests new categories of data that the Government does not have, and therefore does not have a duty to disclose.

The Government has a duty to disclose evidence in its possession that is favorable to the accused, where the evidence is material either to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 674 (1985). The Government's obligations to disclose materials extends to items "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). "Materials are clearly within the government's possession, custody, or control when the prosecutor has actually reviewed them or they are within his own files. Materials within the government's possession, custody, or control extend beyond what the prosecutor has or has seen, but not infinitely." For purposes of Rule 16, Government possession, custody, or control extends to materials in the possession of another federal—or even state—agency when the prosecutor is engaged in a joint investigation with that other agency or when the agency is so closely aligned with the prosecution as to be considered part of the prosecution team or has contributed significantly to the investigation or prosecution. *United States*

*v. Scott*, Case No. 17-CR-181, 2021 U.S. Dist. LEXIS 102389 (E.D. La. June 1, 2021) (internal citations omitted); *see also United States v. Trevino*, 556 F.2d 1265, 1271–72 (5th Cir. 1977).

A federal agency may be considered part of "the government" or "prosecution team" where the agency in question and prosecutors are "working together to apprehend those" engaged in the illegal conduct in question. *United States v. James*, 495 F.2d 434, 435–36 (5th Cir. 1974). Zamora-Quezada's Motion even recognizes that the Government would have to seek the records requested, arguing that because the Government "ha[d] **obtained**[1] data" from Medicare, Medicaid, and TRICARE "earlier in this case" that somehow the prosecution team has these records in its possession. (*See* ECF No. 762 at 3) (emphasis added).

The prosecution team in this case consists of prosecutors from the Fraud Section of the Criminal Division of the U.S. Department of Justice and the U.S. Attorney's Office for the Southern District of Texas; special agents from the U.S. Department of Health and Human Services Office of the Inspector General's Office of Investigations ("HHS-OI"); special agents from the Federal Bureau of Investigation; and investigators from the Texas Medicaid Fraud Control Unit and Texas Health and Human Services Commission assigned to work on the federal criminal investigation.

During the case, HHS-OI submitted requests for information to a Medicare contractor, Qlarant, during its investigation. The prosecution team provided the Medicare data it received pursuant to its requests to the defense during its discovery productions in this case.

The Texas Health and Human Services Commission's structure mirrors that of HHS. As with HHS and Qlarant, the prosecution team had to submit requests to the Texas Health and Human Services Commission to obtain Medicaid claims data. As for TRICARE, the prosecution team did

---

[1] "To succeed in gaining possession of as the result of planning or endeavor; acquire." *Obtain*, American Heritage Dictionary of the English Language (5th ed. 2022).

not include anyone from the Department of Defense. The prosecution team similarly had to submit requests for information to the Defense Health Agency in order to obtain any data from TRICARE. An agency entirely uninvolved in the investigation and prosecution of the defendant cannot constitute a part of the "government" or "prosecution team" for the purpose of the application of Rule 16 or *Brady* obligations. Since the prosecution team does not possess the information sought, it cannot be subject to Rule 16, nor to *Brady*. *United States v. Beaver,* 524 F.2d 963, 966 (5th Cir. 1975) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.").

II. **Rule 17(c) Subpoenas Are the Appropriate Mechanism for Zamora-Quezada to Request Claims Data**

Courts have recognized the permissibility of post-trial use of subpoenas pursuant to Rule 17(c) in certain circumstances. *See, e.g., United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) ("A Rule 17(c) subpoena may also be properly used to gather documents for a pretrial or post-trial hearing."). Because Rule 17 is "a discovery provision that relates solely to pretrial matters" courts have also held that the decision as to whether to allow a subpoena in the post-trial context is left to the discretion of the trial court." *United States v. Martin*, 141 F.3d 1152 (2d Cir. 1998) ("The decision to deny the defendant's subpoena request [pursuant to Rule 17(c)] for purposes of sentencing or a sentencing hearing is in the sound discretion of the trial court.").

So, Zamora-Quezada can submit his own requests for this data—as he has been able to do in the over four years since his indictment and two and a half years since the jury's verdict—but he has never done so. The appropriate mechanism for this request would be to request a Rule 17(c) subpoena—not moving the Court to expand the established limits of what constitutes the prosecution team and what it possesses—and the Court could exercise its discretion as to whether to issue the subpoena.

4

**III.    But Zamora-Quezada Has and Will Fail to Satisfy the Requirements for Rule 17(c) Subpoenas for This Data**

Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  In *United States v. Nixon*, the Supreme Court established criteria for evaluating Rule 17(c) subpoenas: the party seeking the subpoena must show that it satisfies the requirements of (1) relevancy, (2) admissibility, and (3) specificity. 418 U.S. 683, 700 (1974).  Accordingly, courts have quashed subpoenas where compliance would be unduly burdensome due to the scope of the request.  *See, e.g., United States v. Cherevu,* 14-CR-130S, 2018 U.S. Dist. LEXIS 197922, at *11 (W.D.N.Y. Nov. 20, 2018) (quashing a pre-sentencing subpoena seeking approximately 10 years' worth of records relating the Defendant's medical practice and his patients from four separate custodians and finding that "[t]he fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence").

Here, the trial is over.  The Court held multiple extensive sentencing hearings.  At the time, Defendant declined to seek to rebut the presumption of intended loss or seek any additional information.  Rule 17(c) does not entitle Zamora-Quezada to now seek twenty years' worth of medical data that was never part of the case.  Zamora-Quezada further demands that agency staff members comb through the twenty years of data for "diagnosis codes corresponding to rheumatoid arthritis" and provide data for claims falling into that category.  However, Zamora-Quezada does not provide the particular codes, so it is not clear what he is asking for.  He also seeks data from Medicare parts (A (dealing with hospital services) and D (dealing with prescription drugs, such as opioids)) not ever requested by the Government nor at issue in this fraud.

**IV.     Evidence of Zamora-Quezada's Pervasive Fraud Goes Far Beyond Claims Data**

"[W]hen fraud is pervasive—that is, when it becomes impractical to separate legitimate claims from fraudulent ones—the burden shifts to the defendant to show legitimate instances of billing." *United States v. Mesquias*, 29 F.4th 276, 283 (5th Cir. 2022). In these circumstances, "the district court [i]s not required to sift through thousands of claims of dubious reliability to sort the fraudulent from the nonfraudulent." *Id.*

Testimony from nine rheumatologists reflected the sharp contrast between Zamora-Quezada's clinics and the appropriate methods of diagnosis and treatment in their field.[2] Three rheumatologists who worked at Defendant's clinics, Dr. Robert Persellin, Dr. Emilia Dulgheru, and Dr. Bricia Toro, all testified that Zamora-Quezada's patient files were "cookie-cutter" and inconsistent with the symptoms that the patients actually presented. They testified that Zamora-Quezada had a pattern of diagnosing a high volume of patients with rheumatoid arthritis when, during their examination of the patients on subsequent visits, they found no evidence of the disease.

This testimony was corroborated by the testimony of Dr. Monty Tew, the independent rheumatologist asked by the Texas Medical Board to review Zamora-Quezada's patient files for two years. Dr. Tew found that Zamora-Quezada had a pattern of diagnosing patients with the same diseases and ordering medically unnecessary and redundant tests. *See* GX D-24, D-26, D-28, D-30, and D-32 (Dr. Tew's reports of his review of Zamora-Quezada's files).

Five rheumatologists who practice in the Valley saw hundreds of patients previously diagnosed with rheumatoid arthritis by Zamora-Quezada and found no evidence of rheumatoid arthritis for these patients 79 percent of the time. GX A-46.03.

Former employee Raymundo Moreno testified from memory the most common diagnoses listed on the fee ticket and in the order in which they typically appeared: (1) rheumatoid arthritis,

but "[s]ometimes, IPA; I think it's called inflammatory polyarthritis" or psoriatic arthritis; (2) bursitis or other diagnosis *to justify the injection type and injection site*;[3] (3) "knee OA"; (4) "mostly" fibromyalgia; and (5) "osteoporosis or osteopenia" or "GIA." 12/18/19 AM Trial Tr. 31:1–32:10 (R. Moreno).

Defense expert witness Dr. Bruce Freundlich testified about his review of files for more than twenty patients. The jury heard Dr. Bruce Freundlich testify that all of Zamora-Quezada's diagnoses and treatments were appropriate and reasonable. The jury clearly disregarded this testimony in convicting Zamora-Quezada on multiple counts of health care fraud.

A dilatory fishing expedition for twenty years of claims data will not refute the well-established evidence of pervasive fraud by Zamora-Quezada. The inevitable effect of this very belated request from the defense is a further delay to Zamora-Quezada's already protracted sentencing process.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Motion be denied.

Respectfully submitted,

LORINDA I. LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

---

[2] *See, e.g.,* Trial Tr. 12/17/19 PM at 77:20–23 (Dr. Monty Tew's experience as a rheumatologist "has not been that every patient that [he] see[s] as a new patient is presenting with exactly the same complaints or deserves or needs the same exact evaluation.")

[3] Trial Tr. 12/18/19 AM 31:12–19 (R. Moreno) ("Usually a second line would be where he gave injections to the patient . . . depending on the place. For example, if he gave an injection on the shoulder, we would put, 'shoulder bursitis.'").

<pre>
                        By:    /s/ Emily Gurskis
                               JACOB FOSTER
                               Acting Principal Deputy Assistant Chief
                               REBECCA YUAN
                               Acting Assistant Chief
                               EMILY GURSKIS
                               Trial Attorney
                               United States Department of Justice
                               Criminal Division, Fraud Section
                               1400 New York Avenue, N.W.
                               Washington, D.C. 20005


                               /s/ Cynthia Villanueva
                               CYNTHIA VILLANUEVA
                               Assistant United States Attorney
                               U.S. Attorney's Office
                               1701 W. Highway 83, #600
                               McAllen, Texas 78501
</pre>

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, causing service on all attorneys of record.

<pre>
                               /s/ Emily Gurskis
                               Trial Attorney
</pre>