United States District Court
Southern District of Texas
FILED

AUG 19 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

**UNITED STATES OF AMERICA**
Plaintiff/Respondent,

v. CIVIL NO. 7:26-cv-00302

CRIM NO. 7:18-CR-00855

**JORGE ZAMORA-QUEZADA**
Defendant/Movant.

**MOVANT'S EMERGENCY MOTION TO PRESERVE STATUS QUO AND STAY SALE, TRANSFER, OR DISPOSITION OF ANY REMAINING UNITED STATES OR OVERSEAS REAL PROPERTY PENDING RESOLUTION OF PROPERTY RIGHTS AND RELATED § 2255 CONSTITUTIONAL CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Movant **Jorge Zamora-Quezada**, proceeding pro se, respectfully requests a temporary and narrowly tailored order preserving the status quo and staying any presently pending or future sale, closing, transfer, conveyance, disposition, or material encumbrance of any **remaining unsold real property in the United States or Mexico** subject to the May 20–21, 2025 Settlement Agreement, Agreed Preliminary Order of Forfeiture, receivership arrangement, restitution enforcement, or related forfeiture proceedings, until this Court can determine the substantial property-rights and constitutional questions now placed before it.

Movant does **not** presently request that the Court return property, extinguish the Government's claimed interest, invalidate a completed sale, or finally adjudicate title through this emergency motion.

Movant asks for considerably narrower relief:

**Preserve what has not yet been sold.**

Once real property is transferred to a bona fide purchaser, particularly property situated in a foreign sovereign nation, restoration of the status quo may become substantially more complicated or impossible.

A temporary preservation order would cause comparatively little prejudice because it would merely suspend disposition while the Court determines the underlying issues. By contrast, allowing sales to proceed could alter property rights irreversibly before the Court determines whether the May 2025 agreement and associated waivers may lawfully be enforced in the manner presently contemplated.

For the reasons below, temporary preservation is warranted.

## I. THE SETTLEMENT AGREEMENT ITSELF DEMONSTRATES THAT PROPERTY DISPOSITION IS CENTRAL TO THE PENDING CONSTITUTIONAL DISPUTE

The written Settlement Agreement expressly provides for disposition of substantial property. Paragraph 2 provides for an Agreed Preliminary Order of Forfeiture covering domestic real properties listed in the Superseding Indictment, together with specified personal property. The agreement further states that the United States may discontinue forfeiture of a property in its discretion.

Paragraphs 3 and 4 impose extraordinarily broad cooperation and waiver provisions upon both Movant and his wife, Meisy Zamora. Paragraph 4 states that they waive constitutional and

statutory claims and defenses to forfeiture and specifically provides that Mrs. Zamora will not file a petition claiming an interest in forfeited property.

Paragraph 6 is independently significant.

It provides that the United States would discontinue forfeiture of **$488,047.52 in seized cash and bank-account funds** and that those funds would be released into defense counsel's IOLTA account; the version executed by the parties further states that Defendant represented the funds would be used to pay outstanding attorney's fees.

Paragraphs 10 through 12 address foreign property separately.

They contemplate appointment of a Receiver to sell **three properties in Mexico—a timeshare and two condominiums**—with the parties agreeing to cooperate and sign documents requested by the Receiver. The agreement directs that the Receiver's fees and expenses and other sale expenses be deducted and that the net proceeds be deposited into the Court Registry toward restitution.

Thus, this is not a hypothetical property dispute.

The written agreement itself establishes a mechanism designed to produce sales of both domestic and foreign assets.

## II. THE COURT SHOULD PRESERVE ALL REMAINING UNSOLD PROPERTY UNTIL A COMPLETE ACCOUNTING IDENTIFIES WHAT HAS AND HAS NOT BEEN DISPOSED OF

Movant presently does not possess a complete accounting identifying:

1. every property forfeited;

2. every property sold;
3. the date of each sale;
4. the gross sale price;
5. expenses deducted from each sale;
6. net proceeds received;
7. the amount credited against forfeiture;
8. the amount credited against restitution;
9. every property presently listed for sale;
10. every property under contract;
11. every property transferred but not yet closed;
12. and every property remaining in Government, Receiver, Marshal, or other custodial control.

That uncertainty itself supports a short preservation order.

Movant cannot intelligently seek property-specific relief when he does not possess an updated accounting identifying which properties remain available.

The Court should therefore order the United States and any Receiver acting pursuant to the Settlement Agreement to provide a current accounting identifying the status of every property covered by the Agreement and related forfeiture orders.

Until that accounting is produced, the status quo should remain unchanged.

## III. SUBSTANTIAL DOMESTIC PROPERTY WAS ALREADY AVAILABLE TO SATISFY THE FINANCIAL COMPONENT OF THE MAY 20 UNDERSTANDING

Movant understands that the domestic assets subject to seizure or forfeiture included substantial real and personal property.

Based upon Movant's information and historical estimates, these assets included approximately:

| **Property** | **Approximate historical/estimated value** |
|---|---|
| La Costa/Carlsbad, California property | $2,000,000 |
| Approximately 21 acres in Edinburg, Texas | $10,000,000 |
| Brownsville clinic | $2,000,000 |
| Edinburg clinic | $4,000,000 |
| Approximately 9 acres in McAllen Hospital District | $5,000,000 |
| Sharyland-area residence | $1,000,000 |
| Eclipse aircraft | $1,000,000 |
| **Approximate aggregate estimated value** | **$25,000,000** |

Movant expressly identifies these figures as **estimates requiring verification**, not adjudicated market values.

That is precisely why accounting is needed.

Movant contends that on **May 20, 2025**, the resolution represented to him included approximately **$14 million in forfeiture**, together with time served and release the following day.

If the Government has already realized, or reasonably could realize, proceeds approaching or exceeding that amount from domestic property, the necessity and equity of immediately disposing of additional foreign property deserves examination before irreversible transfers occur.

The Court need not resolve that issue today.

It need only preserve the remaining assets long enough to determine the facts.

## IV. THE MAY 20–21 CHRONOLOGY PRESENTS A SUBSTANTIAL FACTUAL ISSUE

included:The executed Settlement Agreement itself contains an unusual and potentially important chronology.

The signature page reflects that **Movant and his counsel, Trey Martinez, signed the Agreement on May 20, 2025.**

Mrs. Zamora and her attorney signed on **May 21, 2025.**

The Government's signature is likewise dated **May 21, 2025.**

Movant alleges that when he signed on May 20, the material resolution represented by counsel

- release with time served on May 21;
- approximately $14 million in forfeiture;
- waiver of direct appeal;
- release of approximately $488,047.52 to his defense counsel;
- and warnings that rejecting the arrangement could expose Movant to an extraordinarily lengthy sentence.

Movant further alleges that material circumstances changed the following day and that restitution ultimately became approximately $28 million.

These allegations are already relevant to Movant's pending § 2255 claims concerning ineffective assistance, conflict of interest, voluntariness, and waiver.

The Court should not permit irreversible property transfers predicated upon disputed waivers before those allegations can be examined.

## V. THE $488,047.52 PAYMENT TO DEFENSE COUNSEL REQUIRES PARTICULAR SCRUTINY

Paragraph 6 of the Agreement expressly provides that the United States would discontinue forfeiture of **$488,047.52** from seized cash and bank accounts and release those funds into Defendant's counsel's IOLTA account. The executed version further records Defendant's representation that the funds would be used to pay outstanding attorney's fees.

That provision does not, standing alone, establish ineffective assistance or a conflict of interest.

But its timing matters.

Movant alleges that counsel simultaneously advised him to execute an agreement:

- relinquishing substantial property;
- waiving direct appellate and collateral rights;
- requiring extensive cooperation;
- and resulting in counsel receiving nearly half a million dollars from previously seized funds.

Whether counsel's personal financial interest materially affected his advice is an issue raised in Movant's § 2255 proceeding.

The Government should therefore not be permitted to rely upon the disputed agreement to irreversibly dispose of remaining assets before the Court determines the validity and voluntariness of the underlying waiver.

## VI. THE AGREEMENT CONTAINS EXTREMELY BROAD WAIVERS THAT ARE THEMSELVES IMPLICATED BY THE § 2255 CLAIMS

Paragraph 4 purports to have Movant and his wife waive **"all constitutional and statutory claims and defenses to the forfeiture."** It further provides that Mrs. Zamora will not file a petition asserting an interest in forfeited property and that neither spouse will assist another person in asserting such an interest.

Paragraph 14 separately states that Movant knowingly and voluntarily waived appeal and collateral attack, while expressly preserving an ineffective-assistance claim under the circumstances described there. It further states that the waivers were made in exchange for concessions by the United States.

That final provision is especially relevant.

The agreement itself describes the waivers as an **exchange for Government concessions.**

Movant's § 2255 allegations directly dispute the voluntariness and circumstances of that exchange.

Preservation of the status quo therefore permits the Court to determine what the parties actually exchanged before property is irreversibly transferred in reliance upon the contested waivers.

## VII. MRS. ZAMORA'S INDEPENDENT PROPERTY INTEREST PRESENTS A SEPARATE AND SERIOUS ISSUE

Movant further represents that his wife, **Meisy Zamora**, possesses ownership interests in at least some of the affected property and that she was **acquitted in the underlying criminal trial.**

Her interests therefore cannot simply be treated as identical to Movant's criminal liability.

The Agreement nevertheless requires Mrs. Zamora to waive constitutional and statutory defenses, agree not to assert an interest in forfeited property, and cooperate with disposition of the Mexican properties.

Movant alleges that Mrs. Zamora's agreement was obtained as part of the same coercive circumstances now challenged.

The Court need not decide her ultimate ownership rights through this emergency motion.

Indeed, Movant recognizes that Mrs. Zamora may need to assert her own rights through the procedural mechanism applicable to her interests.

The immediate question is narrower:

**Should potentially jointly owned property be irreversibly sold while the validity of the very waiver preventing the acquitted co-owner from asserting her ownership interest remains disputed?**

Movant respectfully submits that it should not.

## VIII. THE MEXICAN PROPERTIES PRESENT ADDITIONAL INTERNATIONAL ENFORCEMENT CONCERNS

The Agreement contemplates that a court-appointed Receiver will sell three properties physically located in Mexico.

Foreign real property presents issues fundamentally different from domestic property.

The Department of Justice's own current Asset Forfeiture guidance recognizes that prosecutors seeking to restrain or forfeit assets abroad must coordinate with DOJ's Money Laundering and

Asset Recovery Section and the Office of International Affairs; DOJ specifically states that the extent of foreign forfeiture assistance depends upon treaty obligations and the foreign country's domestic law. DOJ further states that OIA is the channel through which formal requests for legal assistance are made to foreign governments.

Actual U.S.–Mexico forfeiture practice confirms the importance of that process. In a 2022 matter involving Mexican real estate, the DOJ described obtaining forfeiture in Mexico through a **request for mutual legal assistance from the United States followed by action of a Mexican court.**

Accordingly, Movant does **not** contend categorically that Mexican property can never be reached in connection with a United States forfeiture proceeding.

Rather, Movant contends that disposition of real property physically located in Mexico may implicate Mexican domestic law, Mexican judicial authority, international legal-assistance procedures, ownership rights of a Mexican citizen, and recognition of the United States proceedings.

Those matters should be resolved before—not after—the properties are sold.

## IX. PRESERVING THE STATUS QUO IS PARTICULARLY APPROPRIATE BECAUSE THE REQUEST DOES NOT SEEK RETURN OF PROPERTY

This motion is deliberately narrow.

Movant does not presently ask the Court to:

- return forfeited property;
- distribute proceeds;
- cancel completed transactions;

- invalidate the entire forfeiture order;
- determine final ownership of Mexican property;
- or adjudicate Mrs. Zamora's independent rights without her participation.

Movant asks only that **remaining unsold property not be sold while these questions are adjudicated.**

That distinction materially reduces any prejudice to the Government.

If the Government ultimately prevails, the property remains available.

If Movant or Mrs. Zamora ultimately prevails on a claim affecting the property, the Court will not face the potentially impossible task of reconstructing ownership after sale to third parties.

## X. IRREPARABLE HARM FAVORS TEMPORARY PRESERVATION

Federal equitable principles recognize preservation of the status quo as a central purpose of preliminary injunctive relief. Courts generally consider likelihood of success, irreparable harm, the balance of equities, and the public interest.

Here, the threatened harm is unusually concrete.

Real property is unique.

Sale to third parties could introduce:

- bona fide purchaser rights;
- recording consequences;
- distribution of proceeds;
- Receiver fees;
- taxes;
- commissions;
- foreign-law consequences;

- and potentially irreversible changes in title.

The Agreement itself provides that Receiver fees, sales expenses, and other expenses will be deducted from the Mexican-property proceeds before the remainder is deposited with the Court.

Thus, even if Movant later prevailed, merely returning an equivalent dollar amount might not restore the parties to their prior positions.

## XI. THE BALANCE OF EQUITIES FAVORS A SHORT PRESERVATION ORDER

The balance is straightforward.

If the stay is granted and the Government ultimately prevails, disposition can resume.

The Government's claimed security interest in the property remains intact.

By contrast, if the stay is denied and a property is sold before Movant's constitutional claims and Mrs. Zamora's potential independent interests are adjudicated, the consequences may be irreversible.

The balance therefore favors temporary preservation.

## XII. THE PUBLIC INTEREST FAVORS ORDERLY AND LAWFUL DISPOSITION RATHER THAN SPEED

The Government has a legitimate interest in enforcing lawful forfeiture and restitution orders.

Movant does not dispute that general proposition.

But the public also has an interest in ensuring that:

- constitutional waivers are voluntary;

- defense counsel is conflict-free;
- property belonging to innocent third parties is protected;
- foreign property is handled through legally authorized procedures;
- court orders are based upon accurate accountings;
- and irreversible transfers do not moot substantial constitutional disputes.

A preservation order protects both interests.

## XIII. AN IMMEDIATE ACCOUNTING SHOULD ACCOMPANY THE STAY

Movant respectfully requests that the Court direct the United States, United States Marshals Service, and any Receiver or other person acting under authority of the forfeiture orders to provide an accounting identifying, for each property:

**A.** legal description and address;

**B.** claimed owner or owners;

**C.** Government's legal basis for forfeiture or disposition;

**D.** current status;

**E.** whether sold;

**F.** sale date;

**G.** gross proceeds;

**H.** expenses;

**I.** net proceeds;

**J.** application of proceeds;

**K.** whether currently listed;

**L.** whether subject to an offer or contract;

**M.** anticipated closing date;

**N.** identity of Receiver, broker, Marshal, or other person controlling disposition; and

**O.** status of any property located outside the United States.

This accounting will allow the Court and parties to determine which properties actually require continued preservation.

## XIV. THE COURT SHOULD ALSO ORDER PRESERVATION OF SALE AND FORFEITURE RECORDS

Movant further requests preservation of all records concerning the affected assets, including:

- appraisals;
- broker opinions;
- listings;
- purchase offers;
- contracts;
- closing statements;
- title documents;
- deeds;
- liens;
- receiver reports;
- Marshals Service records;
- communications concerning disposition;
- gross and net proceeds;
- commissions and expenses;
- and records reflecting credits against forfeiture or restitution.

These materials are directly relevant to the pending constitutional and property issues and should not be destroyed while the litigation remains pending.

## XV. ALTERNATIVE RELIEF IF THE COURT DECLINES A COMPLETE STAY

If the Court is not prepared immediately to stay every remaining property, Movant respectfully requests, at minimum, an interim order providing that **no closing or final transfer shall occur without advance notice to Movant and the Court** sufficient to permit property-specific relief.

The Court could also require the Government to file the requested accounting before authorizing any further disposition.

Such relief would substantially reduce the danger that property will disappear from the Court's practical reach before the underlying issues can be heard.

## XVI. REQUEST FOR EXPEDITED CONSIDERATION

This motion concerns property that may presently be marketed, negotiated for sale, under contract, or approaching closing.

Movant does not presently know the status of every property.

That uncertainty is itself the reason expedited consideration is necessary.

Movant therefore respectfully requests that the Government be directed promptly to identify whether **any covered property currently has a pending sale, accepted offer, executed contract, scheduled closing, deed transfer, or other disposition.**

If so, Movant requests temporary preservation of that property until the Court can hear the parties.

## XVII. PRAYER FOR RELIEF

WHEREFORE, Movant respectfully requests that the Court:

1. **temporarily STAY the sale, closing, transfer, conveyance, disposition, or material encumbrance of any remaining unsold real property located in the United States or abroad that is subject to the Settlement Agreement, forfeiture orders, receivership, or related restitution enforcement;**
2. direct the United States, USMS, Receiver, and persons acting in concert with them to **maintain the status quo** pending further order;
3. require an expedited **accounting of all affected property**, identifying which assets have been sold and which remain unsold;
4. require immediate disclosure of any property presently subject to a listing, accepted offer, purchase contract, scheduled closing, or pending transfer;
5. stay disposition of the three Mexican properties contemplated by paragraphs 10–12 of the Settlement Agreement pending determination of the applicable ownership, enforcement, foreign-law, and constitutional issues;
6. preserve Mrs. Zamora's ability to assert any independent rights through the procedure the Court determines legally appropriate, without adjudicating those rights adversely through this motion;
7. order preservation of all forfeiture, receivership, appraisal, marketing, sale, accounting, and title records;
8. direct that no net proceeds from any transaction occurring before the stay becomes effective be irreversibly distributed until the Court determines whether those proceeds are implicated by the pending disputes, to the extent the Court has authority to do so;

9. alternatively, if the Court declines a complete stay, require **advance notice before any closing or transfer** sufficient to permit Movant or any affected third party to seek property-specific relief;
10. permit expedited briefing or a prompt hearing if necessary;
11. consider this Motion together with Movant's Integrated Second Amended § 2255 Motion, Rule 6 Discovery Motion, and Request for Evidentiary Hearing to the extent those filings bear upon the validity and voluntariness of the Settlement Agreement; and
12. grant such other relief as justice requires.

## XVIII. CONCLUSION

The requested relief is fundamentally preservative.

Movant is not asking the Court today to decide who ultimately owns every property.

He is asking the Court to ensure that **there remains property upon which its eventual decision can operate.**

That request is particularly appropriate because the Settlement Agreement itself demonstrates that substantial domestic and Mexican property was placed into disposition mechanisms; that Movant and his wife executed sweeping forfeiture waivers; that approximately $488,047.52 was released from forfeiture into defense counsel's IOLTA account; and that the Agreement specifically contemplated sale of three Mexican properties.

Moreover, the signature page establishes that Movant and his counsel signed on **May 20, 2025,** whereas Mrs. Zamora, her counsel, and the Government signed on **May 21, 2025.**

Movant's pending § 2255 proceeding places the circumstances surrounding those waivers, counsel's advice, counsel's financial interest, and the voluntariness of the May 2025 arrangement directly in dispute.

Selling the remaining property first and deciding those issues afterward risks converting potentially meaningful judicial review into an ineffective remedy.

Preserving the status quo does the opposite.

It protects the Government's claimed interests, protects potentially independent third-party interests, protects the Court's ability to grant effective relief, and allows the underlying issues to be resolved upon evidence rather than after irreversible transfers have occurred.

Movant therefore respectfully requests that the Court **preserve the status quo immediately and stay further disposition of any remaining domestic or overseas real property pending further order of the Court.**

Respectfully submitted,

JORGE C ZAMORA-QUEZADA

2330 Red River Drive
Mission, TX 78572
(956) 672-9359
Movant, Pro Se

**Date;** August 19th, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 19th, 2026, a true and correct copy of the foregoing **Movant's Emergency Motion to Preserve Status Quo and Stay Sale, Transfer, or Disposition of Any Remaining United States or Overseas Real Property Pending Resolution of Property Rights and Related § 2255 Constitutional Claims** was served upon counsel for the United States in accordance with the applicable rules and procedures of this Court.

United States Attorney's Office
Southern District of Texas
McAllen Division
1701 West Business Highway 83, Suite 600
McAllen, Texas 78501

JORGE C ZAMORA-QUEZADA
Movant/Prose

**Date:** August 19th, 2026