**Exhibit List:**

**Exhibit A:** DECLARATION OF JORGE C. ZAMORA-QUEZADA, M.D.

**Exhibit B:** DOCUMENT 826, Judgment in a Criminal Case

**Exhibit C:** Settlement Agreements, with and without signatures

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

**UNITED STATES OF AMERICA**
Plaintiff/Respondent

v. CIVIL NO. 7:26-cv-00302

CRIM NO. 7:18-CR-00855

**JORGE C. ZAMORA-QUEZADA, M.D.**
Defendant/Movant.

**DECLARATION OF JORGE C. ZAMORA-QUEZADA, M.D.**

**IN SUPPORT OF INTEGRATED SECOND AMENDED § 2255 MOTION AND RELATED MOTIONS AND TO PRESERVE STATUS QUO AND STAY SALE, TRANSFER, OR DISPOSITION OF ANY REMAINING U.S. OR OVERSEAS REAL PROPERTY**

I, **Jorge C. Zamora-Quezada, M.D.**, declare as follows:

1. I am the Defendant/Movant in the above-captioned criminal proceeding and the movant in the related proceeding under **28 U.S.C. § 2255**. I make this declaration from my personal knowledge, except where I expressly identify information communicated to me by counsel or another person.
2. I submit this declaration in support of my Emergency Motion requesting preservation of the status quo concerning property subject to the forfeiture settlement and related

proceedings while this Court considers constitutional claims challenging, among other things, the circumstances under which the May 2025 agreement was obtained.

3. I am not asking through this declaration for an immediate adjudication of ultimate ownership of every property. I am requesting preservation so that property is not irreversibly sold, transferred, conveyed, or otherwise disposed of before the Court can determine the disputed issues.

## I. EVENTS OF MAY 20, 2025

4. My sentencing was scheduled for **May 21, 2025**, following approximately five years and four months between the jury verdict on January 15, 2020, and sentencing.
5. On **May 20, 2025**, the day before sentencing, my attorneys and my wife's attorneys communicated to my wife and me the material terms under which we understood that the case would be resolved.
6. As those terms were communicated to us, I understood that:

   a. I would receive **time served** and would be released on May 21, 2025;

   b. approximately **$14 million** in forfeited assets/property would satisfy the contemplated financial resolution;

   c. I would relinquish my right to pursue a direct appeal;

   d. approximately **$500,000** in funds then being held would be released to my defense counsel; and

   e. my wife and I were expected to execute the agreement and associated waivers.
7. The approximately **$14 million figure** is particularly important to my present motion. It was the financial figure communicated to us as part of the resolution immediately preceding sentencing.
8. I am presently attempting to locate the contemporaneous written document, communication, draft, attorney record, or other documentary evidence memorializing the approximately $14 million figure.
9. I do not represent to the Court in this declaration that I have presently located that contemporaneous document. I state under oath that approximately $14 million was the amount communicated to me as part of my understanding of the agreement on May 20, 2025.

## II. PRESSURE UNDER WHICH THE AGREEMENT WAS EXECUTED

10. The agreement was not presented to me as an ordinary negotiated commercial agreement reached after unrestricted deliberation.
11. I was facing sentencing after having already spent approximately seven years in custody.
12. I was advised, in substance, that if I did not accept the proposed resolution, I faced the possibility of an extraordinarily lengthy sentence, which was described to me as potentially approximately **100 years**.
13. Under those circumstances, I understood that signing the agreement was the means by which I would receive time served and obtain my release the following day.
14. I relied heavily upon the representations and advice of my attorneys because I was incarcerated, facing sentencing the next day, and dependent upon counsel to accurately communicate the negotiations occurring with the Government and the Court.
15. The agreement also required relinquishment of extremely important rights, including my right to pursue a direct appeal.
16. Approximately one-half million dollars was also to be paid or released to my defense counsel in connection with the resolution, notwithstanding the substantial legal fees counsel had previously received.
17. The circumstances surrounding that payment, counsel's advice concerning the agreement, the representations concerning the sentence and financial consequences, and the voluntariness of my waiver are among the matters I contend require factual development in my § 2255 proceeding.

## III. EVENTS OF MAY 21, 2025

18. On May 21, 2025, the sentencing proceeding did not unfold in the manner that had been represented to me the preceding day.
19. I was informed that events and discussions had occurred involving counsel, the prosecutors, and the Court outside my presence.
20. My counsel subsequently communicated to me that the financial obligation being demanded was approximately **$28 million**, rather than the approximately **$14 million** – figure that I understood had formed part of the resolution communicated to us on May 20.

21. Thus, as I understood what occurred, the financial burden effectively increased by approximately **$14 million within approximately one day**.

22. At the same time, my liberty remained immediately at stake.

23. I understood that if I resisted or refused to proceed, the promised resolution concerning my sentence and release could be lost.

24. I therefore proceeded under circumstances that I contend did not permit a genuinely free and informed reconsideration of the materially changed financial terms.

25. I did not understand myself to be voluntarily agreeing, after independent and unpressured deliberation, to double a previously communicated approximately $14 million financial resolution to approximately $28 million.

## IV. THE PROPERTY SUBJECT TO FORFEITURE

26. By the time of sentencing, the United States had already restrained, seized, forfeited, or asserted interests in substantial assets accumulated by my family and me.

27. Based upon my knowledge and records, those assets included significant real property in Texas and California and an Eclipse aircraft.

28. The properties/assets included, among others:

a. real property in **La Costa/Carlsbad, California**;

b. approximately **21 acres in Edinburg, Texas**;

c. the former clinic property in **Brownsville, Texas**;

d. the former clinic property in **Edinburg, Texas**;

e. approximately **nine acres in the McAllen hospital/medical district**;

f. a residence in the **Sharyland area**; and

g. an **Eclipse aircraft**.

29. My understanding on May 20, 2025 was that the existing forfeited property/assets, valued for purposes of our discussions at approximately $14 million, would provide the financial component of the resolution.

30. I subsequently learned that property disposition and forfeiture proceedings continued after sentencing.
31. I am concerned that additional property may now be sold or transferred before this Court determines the constitutional claims associated with the agreement.

## V. MEXICAN REAL PROPERTY AND MY WIFE'S INTEREST

32. The agreement also purported to reach real property situated in **Mexico**.
33. My wife, **Meisy Zamora**, is a Mexican citizen and has ownership interests in Mexican property implicated by the agreement.
34. My wife was a defendant in the criminal trial but was **acquitted by the jury**.
35. No criminal judgment of conviction was entered against my wife as a result of this case.
36. Nevertheless, the agreement executed immediately before my sentencing purported to affect property in which my acquitted wife possesses ownership rights.
37. I understand from communications concerning the Mexican properties that attempts have been made, or contemplated, to dispose of at least one such property.
38. I further understand from my wife and from information communicated to us by her Mexican counsel that transfer of Mexican real property implicates Mexican legal procedures and her independent ownership rights.
39. I do not offer those statements as an expert opinion concerning Mexican law. I identify them to explain why I believe preservation of the properties is necessary until the respective rights of the parties can be adjudicated through appropriate proceedings.

## VI. WHY PRESERVATION IS NECESSARY

40. Once real property is sold to third parties, additional rights and legal complications may arise that cannot easily be reversed.
41. The same is true of proceeds if they are distributed or otherwise dissipated.
42. Preservation of the remaining property would not determine ultimate ownership. It would simply maintain the existing situation while this Court determines the pending constitutional and property-related issues.
43. In contrast, continued sale or transfer of property could materially alter the subject matter of the dispute before those questions are adjudicated.

44. I therefore respectfully request that the Court require an accounting identifying:

a. property already sold;

b. property presently under contract for sale;

c. property for which a sale is presently contemplated;

d. property remaining in Government custody or control;

e. proceeds generated by previously completed sales; and

f. the present location and status of those proceeds.

45. I further respectfully request preservation of any remaining property and identifiable proceeds until the Court has had an opportunity to determine the issues raised by my motion and the related constitutional claims.

**VII. PURPOSE OF THIS DECLARATION**

46. I recognize that the Government may dispute my recollection or characterization of the May 20–21, 2025 events.

47. That is one reason I am requesting preservation rather than asking the Court to resolve every disputed factual question through this emergency motion.

48. I am prepared to testify under oath concerning these events at an evidentiary hearing.

49. I also request that the relevant communications, drafts, emails, notes, financial records, settlement negotiations to the extent discoverable, property records, and communications among counsel concerning the approximately $14 million and $28 million figures be preserved pending resolution of these proceedings.

50. My purpose in requesting a stay is to prevent an irreversible disposition of property while substantial disputes concerning the agreement, its formation, its implementation, my counsel's advice and financial interests, and third-party ownership interests remain unresolved.

**DECLARATION UNDER PENALTY OF PERJURY**

I declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the foregoing is true and correct to the best of my personal knowledge and recollection.

Executed on August 19th, 2026,

______________________________

**JORGE C. ZAMORA-QUEZADA,**
Defendant/Movant, Pro Se

by:
☐ CM/ECF electronic service
☐ United States Mail
☐ Hand delivery
☐ Other: ______________________

Respectfully certified,

**JORGE C. ZAMORA-QUEZADA,**
Defendant/Movant, Pro Se

**Date:** August 19th, 2026

# EXHIBIT B

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

United States District Court
~~Southern District of Texas~~
**ENTERED**
May 23, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF TEXAS**
Holding Session in McAllen

UNITED STATES OF AMERICA
v.
**JORGE ZAMORA-QUEZADA**

**JUDGMENT IN A CRIMINAL CASE**

**CASE NUMBER: 7:18CR00855-S1-001**

**USM NUMBER: 41667-479**

Benigno Trey Martinez, III, Michael Angelo Saldana, Stephen Chahn Lee, I and Tomas Francisco Tijerina
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s) ______

☐ pleaded nolo contendere to count(s) ______ which was accepted by the court.

☒ was found guilty on count(s) 1-4, 6-9, and 11 of the Superseding Indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit health care fraud. | 2018 | 1 |

☒ See Additional Counts of Conviction.

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s) Count 5 of the Superseding Indictment

☒ Count(s) 1 - 7 of the Original Indictment are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 21, 2025
Date of Imposition of Judgment

[signature]
Signature of Judge

**RANDY CRANE**
**CHIEF UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

May 23, 2025
Date

DEFENDANT: **JORGE ZAMORA-QUEZADA**
CASE NUMBER: **7:18CR00855-S1-001**

# ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 2 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 3 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 4 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 6 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 7 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 8 |
| 18 U.S.C. § 1347 and 2. | Health care fraud. | 2018 | 9 |
| 18 U.S.C. § 1512(k) | Conspiracy to Obstruct Justice. | 2018 | 11 |

DEFENDANT: **JORGE ZAMORA-QUEZADA**
CASE NUMBER: **7:18CR00855-S1-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 120 months, as to each of Counts 1, 2, 3, 4, 6, 7, 8, 9, and 11, said imprisonment terms to run concurrently with each other.

☐ See Additional Imprisonment Terms.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

- ☐ at ______________ on ______________________
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 p.m. on ________________
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

______________________________________________________________

______________________________________________________________

______________________________________________________________

Defendant delivered on ______________________ to ___________________________

at ______________________ , with a certified copy of this judgment.

______________________________
UNITED STATES MARSHAL

By ______________________________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: **JORGE ZAMORA-QUEZADA**
CASE NUMBER: **7:18CR00855-S1-001**

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: 3 years, as to each of Counts 1, 2, 3, 4, 6, 7, 8, 9, and 11, said imprisonment terms to run concurrently with each other.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

☐ See Special Conditions of Supervision.

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.
14. If restitution is ordered, the defendant must make restitution as ordered by the Judge and in accordance with the applicable provisions of 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663A and/or 3664. The defendant must also pay the assessment imposed in accordance with 18 U.S.C. § 3013.
15. The defendant must notify the U.S. Probation Office of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

DEFENDANT: **JORGE ZAMORA-QUEZADA**
CASE NUMBER: **7:18CR00855-S1-001**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment[1] | JVTA Assessment[2] |
|---|---|---|---|---|---|
| **TOTALS** | $900.00 | $28,245,454.00 | $0.00 | $ | $ |

☐ See Additional Terms for Criminal Monetary Penalties.

☐ The determination of restitution is deferred until ______________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss[3] | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Medicare | $20,311,775.00 | $20,311,775.00 | |
| Medicaid | $6,412,174.00 | $6,412,174.00 | |
| TRICARE | $615,963.00 | $615,963.00 | |
| Blue Cross & Blue Shield (BCBS) | $905,542.00 | $905,542.00 | |
| **TOTALS** | $28,245,454.00 | $28,245,454.00 | |

☐ See Additional Restitution Payees.

☐ Restitution amount ordered pursuant to plea agreement $______________

☒ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

☐ Based on the Government's motion, the Court finds that reasonable efforts to collect the special assessment are not likely to be effective. Therefore, the assessment is hereby remitted.

1 Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
2 Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
3 Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: **JORGE ZAMORA-QUEZADA**
CASE NUMBER: **7:18CR00855-S1-001**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☒ Lump sum payment of $900.00 due immediately, balance due

☐ not later than ______________, or
☒ in accordance with ☐ C, ☐ D, ☒ E, or ☒ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ______________ installments of $____________ over a period of ______________________, to commence ______________ after the date of this judgment; or

D ☐ Payment in equal ______________ installments of $____________ over a period of ______________________, to commence ______________ after release from imprisonment to a term of supervision; or

E ☒ Payment during the term of supervised release will commence within INSTANTER after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

Payable to: Clerk, U.S. District Court
Attn: Finance
P.O. Box 5059
McAllen, TX 78502

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ See Additional Defendants and Co-Defendants Held Joint and Several.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# EXHIBIT C

# SETTLEMENT AGREEMENT

WHEREAS, Defendant Jorge Zamora Quezada was convicted by a jury on January 15, 2020, of conspiracy to commit health care fraud (Count One), engaging in a scheme to defraud health care benefit programs (Counts Two, Three, Four, Six, Seven, Eight, and Nine), and conspiracy to obstruct justice (Count Eleven).

WHEREAS, the Superseding Indictment in Case No. 7:18-CR-855 provided notice to Defendant that upon his conviction of health care fraud offenses (Counts One through Nine), the United States would seek the forfeiture of property as provided by Title 18, United States Code, Section 982(a)(7) ("all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to" health care fraud offenses), that the United States would seek a money judgment, and that specific listed property was alleged to be subject to forfeiture.

WHEREAS, on February 26, 2020, the United States submitted an opposed Motion for Preliminary Order of Forfeiture, which is still pending. The United States discontinued forfeiture of one property (425 Soledad Street, Unit #7, San Antonio, Texas, listed as (a)(12) in the Superseding Indictment) because the net equity became too low.

WHEREAS, the parties recognize that there is uncertainty about whether the forfeiture motion will be granted or denied; that a restitution order is mandatory in this case; and that the community property of Defendant and his wife will be subject to a restitution lien at the time of sentencing.

NOW, THEREFORE, the United States of America, Defendant Jorge Zamora Quezada, and Defendant's wife Meisy Zamora ("the parties") have come to an agreement settling certain forfeiture and restitution matters in this case.

It is hereby stipulated and agreed by and between the parties as follows:

1. The United States and Defendant have agreed that under the facts of this case, the appropriate amount of the money judgment to be imposed against Defendant should be the dollar amount of actual loss as found by the Court at sentencing; and Defendant agrees to an Agreed Order Imposing Money Judgment for that amount.

2. The parties have agreed to an Agreed Preliminary Order of Forfeiture that forfeits domestic real properties listed in the Superseding Indictment as property items (a)(1) through (a)(11) and (a)(13); a Maserati listed as (b)(i); and a twin-engine jet listed as (b)(ii). The parties understand that the United States may discontinue forfeiture of a property at any time in its sole discretion.



JZQ

3. Defendant and his wife agree to cooperate with the forfeiture and to provide the United States with information concerning any tenants in the forfeited real properties (including tenant name and contact information; amount owed per month; whether payments are current or in arrears; and a copy of the lease), as well as any other necessary information such as utility providers.

4. Defendant and his wife waive all constitutional and statutory claims and defenses to the forfeiture. Meisy Zamora understands that she will be personally served with notice and a copy of the Agreed Preliminary Order of Forfeiture. Defendant and his wife agree that Meisy Zamora will not file a petition claiming an interest in any of the forfeited property; that neither the J & M Zamora Family Limited Partnership, nor JZACE #1, LLC, nor any other entity established or controlled by Defendant or his wife will file a petition claiming an interest in any of the forfeited property; and that Defendant and his wife will not assist anyone in filing a petition claiming an interest in any of the forfeited property.

5. Defendant and his wife agree to authorize attorney Trey Martinez to accept service of notice and a copy of the Agreed Preliminary Order of Forfeiture on behalf of any entity established or controlled by Defendant or his wife, including but not limited to the J & M Zamora Family Limited Partnership (and all of its different spellings) and JZACE #1, LLC.

6. The United States will discontinue forfeiture of the $488,047.52 from seized cash and funds seized from bank accounts (listed in the Superseding Indictment as property items (b)(iii) through (b)(x)), and those funds shall be released and paid into Defendant's counsel's IOLTA account. Defendant has stated that the funds will be used to pay outstanding attorney's fees.

7. After the Agreed Preliminary Order of Forfeiture is signed, Defendant's counsel will fill out the U.S. Marshals Service ("USMS") banking information form, and the USMS will process the form promptly, although the process can take up to 45 days.

8. Defendant and his wife understand that the $488,047.52 will be processed through the Treasury Offset Program before being returned, with the possibility that any outstanding and delinquent obligations that Defendant may owe to the United States or a state government may be offset against the payment.

9. Defendant and his wife understand and acknowledge that this settlement does not affect any tax obligations, fines, penalties, or any other monetary obligations Defendant may owe to the United States.



JCZA

10. The parties have agreed to an Agreed Order Regarding Receiver providing that the Court shall appoint a Receiver to sell three properties in Mexico (a timeshare and two condominiums), which are listed in the Superseding Indictment as property items (a)(14), (a)(15), and (a)(16).

11. Defendant and his wife agree to cooperate with the Receiver in the sale of the Mexican properties and to sign any documents requested by the Receiver in order to facilitate the sale of the properties.

12. The Receiver's fees and expenses shall be deducted from the gross sales proceeds of the three Mexican assets, as will any sales or other expenses; and the net sales proceeds will be deposited into the Court's Registry to be used towards the restitution order expected to be imposed at Defendant's sentencing.

13. Although the parties recognize that the United States has an obligation to enforce the restitution order that is expected to be imposed by the Court, the United States has agreed to exempt from enforcement of the restitution debt the following two properties: (a) the Zamoras' residence at 2330 Red River, Mission, Texas; and (b) 425 Soledad Street, Unit #7, San Antonio, Texas.

14. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States.

15. Defendant and his wife release, discharge, and hold harmless the U.S. Attorney's Office; the Department of Justice; the Federal Bureau of Investigation; the United States Marshals Service; all federal, state, and local law enforcement agencies; and all of the officers, agents, and employees of those agencies acting in their official or individual capacities from any and all claims, demands, damages, causes of action, or suits of whatever kind or nature that might now or



JCZ Q

hereafter exist in connection with the detention, seizure, and/or release by the United States of any of the assets listed for forfeiture in the Superseding Indictment.

16. Defendant and his wife acknowledge that they have each consulted with their own attorney with respect to this Agreement and that they have carefully reviewed this Agreement, understand this Agreement, and voluntarily agree to its terms.

17. Each party will bear its own attorney's fees, costs, and expenses.

STIPULATED AND AGREED:

Jorge Zamora Quezada
Defendant

Date: 5/20/2025

Trey Martinez
Attorney for Defendant

Date: 5/20/2025

Meisy Zamora
Defendant's Wife

Date: 5-21-25

Jaime Pena
Attorney for Meisy Zamora

Date: 5-21-2025

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

By:

Kristine E. Rollinson, LAURA GARCIA
Assistant United States Attorney
On behalf of the United States

Date: 5/2/25

# SETTLEMENT AGREEMENT

WHEREAS, Defendant Jorge Zamora Quezada was convicted by a jury on January 15, 2020, of conspiracy to commit health care fraud (Count One), engaging in a scheme to defraud health care benefit programs (Counts Two, Three, Four, Six, Seven, Eight, and Nine), and conspiracy to obstruct justice (Count Eleven).

WHEREAS, the Superseding Indictment in Case No. 7:18-CR-855 provided notice to Defendant that upon his conviction of health care fraud offenses (Counts One through Nine), the United States would seek the forfeiture of property as provided by Title 18, United States Code, Section 982(a)(7) ("all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to" health care fraud offenses), that the United States would seek a money judgment, and that specific listed property was alleged to be subject to forfeiture.

WHEREAS, on February 26, 2020, the United States submitted an opposed Motion for Preliminary Order of Forfeiture, which is still pending. The United States discontinued forfeiture of one property (425 Soledad Street, Unit #7, San Antonio, Texas, listed as (a)(12) in the Superseding Indictment) because the net equity became too low.

WHEREAS, the parties recognize that there is uncertainty about whether the forfeiture motion will be granted or denied; that a restitution order is mandatory in this case; and that the community property of Defendant and his wife will be subject to a restitution lien at the time of sentencing.

NOW, THEREFORE, the United States of America, Defendant Jorge Zamora Quezada, and Defendant's wife Meisy Zamora ("the parties") have come to an agreement settling certain forfeiture and restitution matters in this case.

It is hereby stipulated and agreed by and between the parties as follows:

1. The United States and Defendant have agreed that under the facts of this case, the appropriate amount of the money judgment to be imposed against Defendant should be the dollar amount of actual loss as found by the Court at sentencing; and Defendant agrees to an Agreed Order Imposing Money Judgment for that amount.

2. The parties have agreed to an Agreed Preliminary Order of Forfeiture that forfeits domestic real properties listed in the Superseding Indictment as (a)(1) through (a)(11) and (a)(13); a Maserati listed as (b)(i); and a twin-engine jet listed as (b)(ii). The parties understand that the United States may discontinue forfeiture of a property at any time in its sole discretion.

3. Defendant and his wife agree to cooperate with the forfeiture and to provide the United States with information concerning any tenants in the forfeited real properties (tenant name and contact information; amount owed per month; whether payments are current or in arrears; and a copy of the lease), as well as any other necessary information such as utility providers.

4. Defendant and his wife waive all constitutional and statutory claims and defenses to the forfeiture. Meisy Zamora understands that she will be personally served with notice and a copy of the Agreed Preliminary Order of Forfeiture. Defendant and his wife agree that Meisy Zamora will not file a petition claiming an interest in any of the forfeited property; that neither the J & M Zamora Family Limited Partnership, nor JZACE #1, LLC, nor any other entity established or controlled by Defendant or his wife will file a petition claiming an interest in any of the forfeited property; and that Defendant and his wife will not assist anyone in filing a petition claiming an interest in any of the forfeited property.

5. Defendant and his wife agree to authorize attorney Trey Martinez to accept service of notice and a copy of the Agreed Preliminary Order of Forfeiture on behalf of any entity established or controlled by Defendant or his wife, including but not limited to the J & M Zamora Family Limited Partnership (and all of its different spellings) and JZACE #1, LLC.

6. The United States will discontinue forfeiture of the $488,047.52 from seized cash and funds seized from bank accounts (listed as property items (b)(iii) through (b)(x)), and those funds shall be released and paid into Defendant counsel's IOLTA account.

7. After the Agreed Preliminary Order of Forfeiture is signed, Defendant's counsel will fill out the U.S. Marshals Service ("USMS") banking information form, and the USMS will process the form promptly, although the process can take up to 45 days.

8. Defendant and his wife the understand that the $488,047.52 will be processed through the Treasury Offset Program before being returned, with the possibility that any outstanding and delinquent obligations that Defendant may owe to the United States or a state government may be offset against the payment.

9. Defendant and his wife understand and acknowledge that this settlement does not affect any tax obligations, fines, penalties, or any other monetary obligations Defendant may owe to the United States.

10. The parties have agreed to an Agreed Order Regarding Receiver providing that the Court shall appoint a Receiver to sell three properties in Mexico (a timeshare and two condominiums), which are listed as (a)(14), (a)(15), and (a)(16).

11. Defendant and his wife agree to cooperate with the Receiver in the sale of the Mexican properties and to sign any documents requested by the Receiver in order to facilitate the sale of the properties.

12. The Receiver's fees and expenses shall be deducted from the gross sales proceeds of the three Mexican assets, as will any sales or other expenses; and the net sales proceeds will be deposited into the Court's Registry to be used towards the restitution order expected to be imposed at Defendant's sentencing.

13. Although the parties recognize that the United States has an obligation to enforce the restitution order that is expected to be imposed by the Court, the United States has agreed to exempt from enforcement of the restitution debt the following two properties: (a) the Zamoras' residence at 2330 Red River, Mission, Texas; and (b) 425 Soledad Street, Unit #7, San Antonio, Texas.

14. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States.

15. Defendant and his wife release, discharge, and hold harmless the U.S. Attorney's Office; the Department of Justice; the Federal Bureau of Investigation; the United States Marshals Service; all federal, state, and local law enforcement agencies; and all of the officers, agents, and employees of those agencies acting in their official or individual capacities from any and all claims, demands, damages, causes of action, or suits of whatever kind or nature that might now or hereafter exist in connection with the detention, seizure, and/or release by the

United States of any of the assets listed for forfeiture in the Superseding Indictment.

16. Defendant and his wife acknowledge that they have each consulted with their own attorney with respect to this Agreement and that they have carefully reviewed this Agreement, understand this Agreement, and voluntarily agree to its terms.

17. Each party will bear its own attorney's fees, costs, and expenses.

STIPULATED AND AGREED:

______________________________ Date: ________________

Jorge Zamora Quezada
Defendant

______________________________ Date: ________________

Trey Martinez
Attorney for Defendant

______________________________ Date: ________________

Meisy Zamora
Defendant's Wife

______________________________ Date: ________________

Jaime Pena
Attorney for Meisy Zamora

JENNIFER B. LOWERY
Acting United States Attorney
Southern District of Texas

By: ______________________________ Date: ________________

Kristine E. Rollinson
Assistant United States Attorney
On behalf of the United States