United States District Court
Southern District of Texas
FILED

AUG 1 9 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**McALLEN DIVISION**

**UNITED STATES OF AMERICA,**
Plaintiff/Respondent

v.

CIVIL NO. 7:26-cv-00302

CRIM NO. 7:18-CR-00855

**JORGE ZAMORA-QUEZADA,**
Defendant/Movant

**MOVANT'S SEPARATE MOTION FOR DISCOVERY PURSUANT TO RULE 6 OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Movant **Jorge Zamora-Quezada**, proceeding pro se, respectfully moves pursuant to **Rule 6 of the Rules Governing Section 2255 Proceedings** for narrowly tailored discovery necessary to develop the constitutional claims raised in his Integrated Second Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

The requested discovery is not a fishing expedition. Each category is tied to a specific factual allegation and constitutional claim, including ineffective assistance of counsel, *Brady/Giglio/Napue* violations, alleged Government interference with potential defense witnesses, reliability of expert and extrapolation evidence, sentencing prejudice, and the circumstances surrounding Movant's May 2025 waiver and settlement.

Movant respectfully shows the following.

## I. INTRODUCTION

The pending § 2255 proceeding presents factual disputes that cannot be resolved solely from the trial transcript or existing public docket.

Several of Movant's constitutional claims concern evidence that is necessarily in the possession of the Government, its investigative agencies, former defense counsel, or other third parties.

Those materials include Government medical-review records; communications concerning witness benefits or expectations; communications with potential defense witnesses; underlying expert materials; records concerning the Government's selection of patients and comparator physicians; claims and extrapolation methodology; and documents surrounding the May 2025 settlement and counsel payment.

The need for discovery is particularly substantial because post-trial evidence has materially altered the factual landscape.

The Government's own medical witnesses acknowledged the existence of seronegative rheumatoid arthritis and the importance of clinical judgment in diagnosis.

Government testimony also acknowledged that autoimmune rheumatic diseases may overlap, mimic one another, and evolve diagnostically over time.

Defense expert Dr. Robert Freundlich possessed extensive patient-specific analyses concerning seronegative RA, inflammatory polyarthritis, psoriatic arthritis, lupus and overlapping autoimmune disease, radiological findings, methotrexate, biologic therapy, and independent medical corroboration.

Most significantly, post-trial claims analysis reported that **more than half of the Government's 7,088 alleged Medicare victims had received at least one RA diagnosis from an independent provider.**

These circumstances provide concrete reasons to believe that additional evidence exists which, if developed, could materially support one or more constitutional claims.

## II. GOVERNING LEGAL STANDARD

Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that:

> "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."

The Supreme Court explained in *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997), that good cause exists where specific allegations provide reason to believe that, if the facts are fully developed, the petitioner may be able to demonstrate entitlement to relief.

Rule 6 does not authorize discovery based merely upon speculation.

But neither does it require a § 2255 movant already to possess the very evidence that discovery is necessary to obtain.

That distinction is especially important where the alleged constitutional violation involves information controlled by the Government.

Movant therefore identifies below both the discovery sought and the constitutional claim to which each request relates.

## III. GOVERNMENT MEDICAL-REVIEW MATERIALS

Movant requests production of all reports, drafts, notes, memoranda, correspondence, emails, communications, summaries, and other materials reflecting medical review of Movant's patients performed for or at the request of the Government during the investigation, prosecution, trial, or sentencing proceedings.

This request specifically includes the materials relating to the Government medical reviewer whom defense counsel later represented had reviewed three patient records and had not disagreed with Movant's rheumatoid-arthritis diagnosis in two of them.

Movant requests documents sufficient to determine:

1. the identity and qualifications of each Government medical reviewer;
2. the patients reviewed;
3. the records supplied to each reviewer;
4. each reviewer's initial and final conclusions;
5. any disagreement between a reviewer and prosecutors or investigators;
6. any draft reports;
7. any changes requested by prosecutors or investigators;
8. communications concerning favorable findings;
9. whether any reviewer declined to support the Government's false-diagnosis theory; and
10. when each item was disclosed to the defense.

**Relevance**

This discovery bears directly upon Movant's claims under ***Brady v. Maryland*** and ineffective assistance of counsel.

If Government medical experts reached materially favorable conclusions concerning patients characterized as falsely diagnosed, those conclusions could have supported the defense proposition that the case involved legitimate medical judgment rather than knowing fabrication.

## IV. PARCHMAN-WILSON COMMUNICATIONS AND WITNESS BENEFITS

Movant requests all communications between **Jaime Parchman and FBI Agent Wilson**, including text messages, emails, memoranda, interview reports, FBI 302s, notes, recordings, correspondence, and other communications.

Movant further requests documents concerning any benefit, anticipated benefit, reward, restitution, compensation, referral, civil recovery, financial assistance, or other consideration discussed with or reasonably expected by Parchman in connection with cooperation with the Government.

The request includes communications involving prosecutors or other agents discussing Parchman's expectations or motivation.

**Relevance**

Movant has identified a specific communication suggesting a potential financial-reward issue.

If a Government witness possessed a financial expectation associated with cooperation, that evidence could constitute material impeachment information under ***Giglio v. United States***.

If materially false testimony concerning such an expectation was knowingly left uncorrected, ***Napue v. Illinois*** may also apply.

Alternatively, if the information was available to defense counsel but was not reasonably investigated or used, it may support Movant's *Strickland* claim.

**V. GOVERNMENT CONTACTS WITH DR. SALINAS AND LILLIAN WILLIAMS, PA**

Movant requests all documents memorializing contacts between Government agents or prosecutors and:

**Dr. Salinas**, and

**Lillian Williams, PA.**

This request includes:

- interview reports;
- FBI 302s;
- subpoenas;
- emails;
- text messages;
- correspondence;
- notes;
- warnings;
- threats of prosecution;
- discussions of potential criminal exposure;

- immunity discussions;
- instructions concerning contact with Movant or his attorneys;
- and communications concerning whether either individual would testify for the defense.

**Relevance**

Both individuals possessed substantial firsthand knowledge of the clinical operation of Arthritis and Osteoporosis Centers and the treatment of significant numbers of patients.

Movant alleges that Government pressure contributed to the absence of potentially favorable testimony from these providers.

If Government conduct substantially interfered with a witness's free and unhampered decision whether to testify, that evidence may establish a due-process violation.

The same materials may also establish whether defense counsel adequately investigated and protected access to favorable witnesses.

## VI. GOVERNMENT WITNESS BENEFITS, PROMISES, AND EXPECTATIONS

Movant requests documents sufficient to identify any Government trial witness who received, requested, was offered, discussed, or reasonably expected any financial or other benefit arising from participation in the investigation or prosecution.

The requested categories include:

- restitution;
- anticipated restitution;
- rewards;
- witness payments;

- travel reimbursement beyond ordinary witness expenses;
- relocation assistance;
- referral to civil counsel;
- assistance pursuing malpractice claims;
- Government assistance in obtaining financial recovery;
- promises or representations concerning future compensation;
- immunity or non prosecution;
- assistance in unrelated criminal matters;
- and any other consideration potentially bearing upon credibility.

**Relevance**

This request directly concerns *Giglio* impeachment material.

It is limited to witnesses actually used by the Government and benefits or expectations capable of affecting credibility.

## VII. GOVERNMENT COMMUNICATIONS WITH PRIVATE MALPRACTICE ATTORNEYS

Movant requests documents sufficient to establish the existence and nature of communications between Government investigators or prosecutors and private attorneys or law firms engaged in soliciting or representing former patients of Movant during the investigation and prosecution.

Movant specifically seeks to determine whether federal authorities:

- referred patients to private attorneys;
- received patient referrals from private attorneys;
- shared patient information;
- coordinated interviews;
- provided investigative information;

- funded or reimbursed activities;
- discussed potential civil recovery;
- coordinated solicitation events;
- or otherwise participated in developing witnesses through private civil litigation activity.

Movant does **not** ask the Court at this stage to find that the Government secretly paid malpractice attorneys.

He seeks discovery to determine whether any such coordination existed and, if so, its nature.

**Relevance**

This evidence may bear upon witness selection, bias, inducements, the construction of the Government's alleged-victim population, *Giglio* disclosure obligations, and the reliability of the patient population subsequently used in extrapolation.

**VIII. THE GOVERNMENT'S PATIENT HOTLINE**

Movant requests documents sufficient to identify:

1. when the Government's former-patient or "victim" hotline was established;
2. who authorized it;
3. the criteria used to classify callers as potential victims;
4. the number of callers;
5. the number ultimately interviewed;
6. the number referred for medical evaluation;
7. the number used as witnesses;
8. scripts or instructions used by hotline personnel;
9. communications concerning potential restitution or compensation;
10. procedures used to screen duplicate, unsupported, or medically inconsistent claims; and

11. whether the resulting population was later incorporated into statistical, loss, restitution, or victim calculations.

**Relevance**

The hotline is directly relevant if a self-selected population generated through Government solicitation was subsequently treated as representative of Movant's overall patient population.

This bears upon expert reliability, selection bias, loss extrapolation, and ineffective assistance.

## IX. PATIENT-SELECTION AND COMPARATOR-RHEUMATOLOGIST METHODOLOGY

Movant requests the underlying methodology used to select former patients for examination or review by Government-associated rheumatologists.

The Government should identify:

- the original patient universe;
- selection criteria;
- exclusions;
- referral sources;
- whether selection was random;
- whether statistical sampling was used;
- whether any statistician or epidemiologist designed or validated the sample;
- whether patients volunteered;
- whether hotline callers were included;
- and whether dissatisfied former patients were disproportionately represented.

Movant additionally requests materials describing the methodology for selecting comparator rheumatologists and comparing Movant's diagnosis rates with theirs.

**Relevance**

The Government's proof depended substantially upon drawing conclusions from selected former patients and other physicians.

Without evidence establishing representativeness, generalization from selected individuals to thousands of patients may be scientifically unreliable.

## X. DR. BRICIA TORO MATERIALS

Movant requests documents sufficient to determine the Government's knowledge of Dr. Bricia Toro's prior professional and economic relationship with Movant.

The trial record establishes that Toro previously worked for Movant, including in Brownsville, and subsequently opened her own Brownsville practice.

She further testified that she treated several hundred former patients of Movant's practice.

Movant requests:

- Government interview reports concerning Toro;
- communications discussing her prior employment;
- communications discussing her subsequent practice;
- documents concerning how her former-Zamora patients were selected;
- communications concerning her use as a comparator;
- and materials reflecting any potential professional or economic bias considered by the Government.

**Relevance**

Toro's testimony was important to the Government's medical theory.

The requested evidence bears upon impeachment, comparator reliability, witness selection, and counsel's effectiveness in investigating and presenting bias.

## XI. GOVERNMENT EXPERT FILES AND RULE 702 MATERIALS

Movant requests the materials underlying Government expert opinions used to support false diagnosis, medical necessity, patient selection, statistical inference, loss, or restitution.

The request includes, to the extent discoverable:

- data supplied to experts;
- assumptions;
- calculations;
- spreadsheets;
- statistical models;
- sampling methodology;
- drafts reflecting substantive changes;
- communications identifying methodological limitations;
- excluded patients;
- contrary findings;
- error rates;
- comparator data;
- and validation procedures.

**Relevance**

Movant challenges whether the Government reliably transformed patient-specific disagreement into population-wide conclusions.

The information is relevant to Movant's Rule 702-related ineffective-assistance claim and to whether counsel reasonably challenged the Government's expert methodology.

## XII. CLAIMS DATA AND SUBSEQUENT INDEPENDENT RA DIAGNOSES

Movant requests access to the complete datasets necessary to reproduce and independently evaluate the post-trial Medicare, Medicaid, TRICARE, and other claims analyses, subject to appropriate HIPAA, protective-order, or privacy safeguards.

The defense subsequently reported that more than half of the Government's 7,088 alleged Medicare victims had at least one RA diagnosis from an independent provider.

Movant requests the data necessary to determine:

- how many alleged victims subsequently received RA diagnoses;
- when those diagnoses occurred;
- whether they were made by independent rheumatologists;
- whether inflammatory-polyarthritis or related autoimmune codes were present;
- whether patients received methotrexate, DMARDs, or biologic therapy from independent providers;
- and how these results compare with the Government's original alleged-victim classification.

**Relevance**

These data bear directly upon materiality, prejudice, actual innocence, expert reliability, and whether the Government's original population-wide theory remains medically sustainable.

## XIII. CHARGED-PATIENT SUBSEQUENT MEDICAL EVIDENCE

Subject to appropriate privacy protections and Court authorization, Movant requests subsequent medical and claims records sufficient to determine the later diagnostic and treatment history of the patients corresponding to the substantive counts of conviction.

The request should focus upon:

- rheumatoid arthritis;
- seronegative RA;
- inflammatory polyarthritis;
- psoriatic arthritis;
- lupus;
- Sjögren syndrome;
- other inflammatory autoimmune disease;
- erosive arthritis;
- methotrexate;
- DMARD therapy;
- and biologic treatment.

**Relevance**

Subsequent diagnosis does not automatically prove that an earlier diagnosis was correct.

Nevertheless, if independent physicians later diagnosed the same inflammatory disease that the Government alleged Movant knowingly fabricated, that evidence may materially affect the actual-innocence and prejudice analysis.

## XIV. LOSS, RESTITUTION, AND EXTRAPOLATION MATERIALS

Movant requests the complete methodology underlying the Government's loss and restitution calculations, including:

- patient universe;
- claims included;
- claims excluded;
- assumptions;
- extrapolation formulas;
- sampling;
- confidence intervals, if any;
- statistical validation;
- calculations of actual loss;
- treatment of legitimate alternative diagnoses;
- treatment of independently diagnosed RA patients;
- spreadsheets;
- databases;
- and expert communications concerning methodological limitations.

**Relevance**

Movant recognizes that § 2255 is not a vehicle for attacking a restitution order standing alone.

These materials are sought because the loss methodology bears upon Movant's ineffective-assistance claim, sentencing prejudice, counsel's performance, and the circumstances surrounding the final custodial sentence and settlement.

## XV. PROSECUTION-TEAM TRANSITION AND EVOLUTION OF MEDICAL THEORY

Movant requests narrowly tailored documents sufficient to reconstruct whether material changes occurred in the Government's medical theory as prosecution personnel changed.

The original indictment was signed by Kevin Lowell and Andrew Swartz.

Later proceedings involved Jacob Foster, Emily Gurskis, Rebecca Yuan, and Cynthia Villanueva.

Movant requests documents sufficient to determine:

- the Government's original theory concerning seronegative RA;
- whether Government experts initially recognized substantial numbers of seronegative patients;
- whether that theory changed;
- why it changed;
- whether contrary expert evidence contributed to changes in prosecution personnel or strategy;
- and whether materially favorable medical information was preserved and disclosed.

Movant does not seek privileged attorney work products concerning ordinary prosecution strategy.

He seeks discoverable factual material and constitutionally required exculpatory evidence relating to changes in the underlying medical theory.

## XVI. METHOTREXATE AND "CHEMOTHERAPY" MATERIALS

Movant requests Government expert materials and factual communications sufficient to determine what prosecutors and investigators were advised concerning:

- low-dose methotrexate use in rheumatology;
- methotrexate as a first-line DMARD for RA;
- its use in inflammatory arthritis and autoimmune disease;
- the difference between rheumatologic dosing and oncologic chemotherapy;

- and the Government's decision repeatedly to characterize Movant's methotrexate treatment as "chemotherapy."

The indictment itself recognized that rheumatologists use medications it described as chemotherapy to treat RA.

Yet the indictment simultaneously alleged that patients were subjected to "chemotherapy and other toxic medications."

**Relevance**

The requested materials may establish what the Government actually knew medically when choosing terminology that was potentially highly prejudicial before a lay jury.

They also bear upon counsel's effectiveness in challenging that characterization.

**XVII. DR. FREUNDLICH AND FORMER-DEFENSE-COUNSEL FILES**

To the extent necessary through subpoena or an order directed to former counsel rather than the Government, Movant requests:

- Dr. Freundlich's complete reports;
- notes;
- patient analyses;
- draft opinions;
- correspondence with defense counsel;
- materials identifying favorable patient-specific conclusions;
- lists of independent corroborating physicians and radiologists;
- and communications concerning what Freundlich would or would not present at trial.

Movant further requests relevant portions of former counsel's file sufficient to establish:

- counsel's investigation of the medical evidence;
- decisions concerning Freundlich;
- investigation of Dr. Toro;
- investigation of Salinas and Williams;
- investigation of witness benefits;
- expert-retention decisions;
- and preparation concerning Government extrapolation.

**Relevance**

These materials lie at the center of Movant's *Strickland* claim.

The issue is not merely what the jury heard.

It is what competent counsel reasonably should have discovered and presented from the evidence available at the time.

## XVIII. MAY 2025 SETTLEMENT AND COUNSEL-PAYMENT MATERIALS

Movant requests documents necessary to determine the circumstances surrounding the May 20–21, 2025 settlement and sentencing process.

The request includes:

- settlement drafts;
- final agreement;
- redlines or revisions;
- communications reflecting changes between May 20 and May 21;
- communications concerning approximately $14 million;

- communications concerning approximately $28 million;
- communications concerning release with time served;
- communications concerning waiver of direct appeal;
- communications concerning potential sentencing exposure if Movant rejected the agreement;
- documents concerning the approximately **$488,047.52 payment to defense counsel;**
- authorization for that payment;
- timing of the payment;
- source of the funds;
- and communications linking counsel's payment to execution or completion of the agreement.

**Relevance**

The fact that counsel received payment does not by itself establish a constitutional violation.

The relevant question is whether counsel possessed a personal financial interest that materially affected the independence of his advice when Movant allegedly surrendered constitutional and appellate rights.

That question cannot be resolved without the underlying documents and testimony.

## XIX. SEIZED MATERIALS AND APPROXIMATELY FORTY BOXES

Movant requests inventory and chain-of-custody information for the approximately forty boxes of materials seized from his clinics and reportedly remaining in federal custody.

Movant further requests documents sufficient to identify:

- what remains in Government possession;

- what has been copied;
- what has been returned;
- what has been destroyed;
- which agency presently possesses each category;
- and any instructions preventing return of materials previously scheduled for delivery.

Movant specifically requests preservation of those materials pending resolution of this § 2255 proceeding.

**Relevance**

The materials may contain medical records, defense evidence, business records, or other information directly relevant to the pending constitutional claims.

Their preservation is therefore essential.

**XX. PROPOSED METHOD OF DISCOVERY**

Movant respectfully proposes that discovery proceed in stages to minimize burden.

**First**, the Government should produce existing reports, communications, datasets, spreadsheets, expert materials, and other documentary evidence responsive to the requests above.

**Second**, Movant should be permitted to serve limited interrogatories or requests for admission if the documentary production leaves material factual questions unresolved.

**Third**, after reviewing the documentary discovery, Movant should be permitted to request narrowly tailored depositions of witnesses whose testimony remains necessary.

Potential witnesses may include:

- former defense counsel;
- Dr. Robert Freundlich;
- Mariela Ruiz, CPA;
- FBI Agent Wilson;
- relevant Government medical reviewers;
- Dr. Salinas;
- Lillian Williams, PA;
- and other persons identified through discovery.

This staged procedure would conserve judicial resources and permit the evidentiary hearing to focus upon genuinely disputed facts.

## XXI. PROTECTIVE ORDER AND PATIENT PRIVACY

Movant recognizes that portions of the requested discovery may contain protected health information or other sensitive personal information.

Movant therefore does not oppose reasonable safeguards including:

- redaction of unnecessary personal identifiers;
- use of unique patient identifiers;
- HIPAA-compliant protective orders;
- attorney/expert-eyes-only restrictions where appropriate;
- sealed filing of protected medical records;
- and limitations preventing use outside this litigation.

Patient privacy can be protected without preventing constitutionally necessary factual development.

## XXII. GOOD CAUSE EXISTS

Taken individually and collectively, the identified facts satisfy Rule 6's good-cause requirement.

Movant has identified specific evidence rather than merely speculating that useful information might exist.

He has identified:

- a particular Government medical-review issue;
- a particular witness and FBI agent;
- identifiable potential defense healthcare-provider witnesses;
- identifiable expert materials;
- a documented former-employee/competitor relationship involving Dr. Toro;
- an identifiable Government hotline;
- ascertainable claims datasets;
- a specific post-trial finding involving thousands of independent RA diagnoses;
- a defined loss/extrapolation methodology;
- identifiable settlement documents;
- a specific approximately $488,047.52 counsel-payment issue;
- and identifiable seized materials still reportedly under Government control.

If the facts are developed and Movant's allegations are substantiated, they could support relief under *Strickland*, *Brady*, *Giglio*, *Napue*, due-process principles, or the actual-innocence gateway.

That is sufficient to warrant targeted discovery.

## XXIII. REQUEST FOR RELIEF

WHEREFORE, Movant respectfully requests that the Court:

1. **grant this Motion for Discovery under Rule 6**;

2. order the Government to produce the Government medical-review materials described above;
3. order production of the Parchman-Wilson communications and related witness-benefit materials;
4. order production of Government contacts with Dr. Salinas and Lillian Williams, PA;
5. order disclosure of material witness benefits, promises, inducements, and expectations;
6. permit discovery concerning Government interaction with private malpractice attorneys;
7. permit discovery concerning the Government's patient hotline and resulting patient-selection process;
8. order production of materials concerning patient-selection and comparator-rheumatologist methodology;
9. permit discovery concerning Dr. Toro's role and the Government's knowledge of her prior relationship with Movant;
10. permit discovery of discoverable underlying Government expert methodology;
11. permit access to relevant claims datasets subject to appropriate privacy protections;
12. permit appropriately protected discovery of subsequent medical and claims evidence concerning the patients underlying the counts of conviction;
13. permit discovery of the underlying loss and extrapolation methodology insofar as relevant to cognizable constitutional claims affecting custody;
14. permit narrowly tailored factual discovery concerning material changes in the prosecution's medical theory;
15. permit discovery concerning the Government's medical understanding and characterization of methotrexate;

16. permit appropriate discovery from former defense counsel and concerning Dr. Freundlich's complete materials;
17. permit discovery concerning the May 20–21, 2025 settlement and the approximately $488,047.52 counsel payment;
18. order the Government to preserve the approximately forty boxes of seized materials and produce an inventory sufficient to identify their present status and location;
19. enter an appropriate protective order governing confidential patient information;
20. permit Movant, after reviewing documentary production, to request limited additional discovery upon a showing of continued need; and
21. grant such other and further relief as justice requires.

## XXIV. CONCLUSION

Movant is not asking the Court to decide the merits of these constitutional claims on the basis of this discovery motion.

He asks for the evidence necessary to adjudicate them fairly.

The existing record already provides concrete reasons for factual development.

Government medical testimony acknowledged seronegative RA and evolving autoimmune diagnoses.

Dr. Freundlich possessed extensive patient-specific medical analyses supporting diagnoses and treatment in circumstances central to the prosecution.

Post-trial claims analysis reported that more than half of the Government's 7,088 alleged Medicare victims received independent-provider RA diagnoses.

Specific unresolved questions additionally exist concerning Government medical reviews, witness incentives, potential witness pressure, patient selection, comparator physicians, expert methodology, claims extrapolation, counsel's investigation, and the May 2025 settlement.

Rule 6 exists to permit factual development where specific allegations provide reason to believe that the petitioner may, if the facts are fully developed, demonstrate entitlement to relief.

Movant has made that showing.

Accordingly, the Court should grant targeted discovery and permit the constitutional claims to be adjudicated upon a complete factual record.

Respectfully submitted,

**JORGE C. ZAMORA-QUEZADA**
2330 Red River Drive
Mission, TX 78572
(956) 672-9359
Movant Pro Se

**Date:** On the 19th day of August, 2026.

**CERTIFICATE OF SERVICE**

I certify that on August 19th, 2026, a true and correct copy of the foregoing **Movant's Separate Motion for Discovery Pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings** was served upon counsel for the United States in accordance with the applicable rules and procedures of this Court.

United States Attorney's Office
Southern District of Texas
McAllen Division
1701 West Business Highway 83, Suite 600
McAllen, Texas 78501

**JORGE C. ZAMORA-QUEZADA**
Movant, Pro Se