United States District Court
Southern District of Texas
FILED

AUG 19 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

McALLEN DIVISION

**UNITED STATES OF AMERICA,**
Plaintiff/Respondent

v.

CIVIL NO. 7:26-cv-00302
CRIM NO. 7:18-CR-00855

**JORGE ZAMORA-QUEZADA,**
Defendant/Movant

**MOVANT'S SEPARATE REQUEST FOR EVIDENTIARY HEARING PURSUANT TO 28 U.S.C. § 2255(b) AND RULE 8 OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Movant **Jorge Zamora-Quezada**, proceeding pro se, respectfully requests an evidentiary hearing pursuant to **28 U.S.C. § 2255(b)** and **Rule 8 of the Rules Governing Section 2255 Proceedings** on the material factual disputes identified in his Integrated Second Amended Motion to Vacate, Set Aside, or Correct Sentence.

Section 2255(b) provides that unless the motion and the files and records of the case **conclusively show** that the prisoner is entitled to no relief, the Court shall grant a prompt hearing, determine the issues, and make findings of fact and conclusions of law. Rule 8 likewise directs the Court, after considering the answer, prior transcripts and records, and any Rule 7 materials, to determine whether an evidentiary hearing is warranted.

Movant respectfully submits that the present record does not conclusively resolve the constitutional claims asserted here. Several claims turn upon facts outside the trial transcript,

including what defense counsel knew, what Government medical reviewers concluded, what witnesses were told, whether benefits or pressures affected witnesses, why potentially favorable expert evidence was not fully presented, and what occurred during the May 2025 settlement proceedings.

## I. THE STATUTORY STANDARD FAVORS A HEARING WHERE MATERIAL FACTS REMAIN DISPUTED

Section 2255(b) establishes the operative standard.

A hearing is unnecessary where the motion, files, and records conclusively demonstrate that the movant cannot obtain relief. But where specific factual allegations, if proven, could establish a constitutional violation and those allegations cannot conclusively be resolved from the existing record, factual development is required.

The Rules Governing § 2255 Proceedings reinforce that structure. Rule 7 permits expansion of the record with documents, exhibits, letters, and sworn answers; Rule 8 then requires the Court to evaluate the developed record in determining whether live evidentiary proceedings are warranted.

The Advisory Committee materials further recognize that Government answers or affidavits do not automatically resolve disputed facts against the movant; where they create genuine factual disputes, a hearing may be necessary.

Movant therefore does not ask for a hearing simply because serious allegations have been made.

He requests a hearing because **identified witnesses, documents, communications, expert files, and newly developed evidence create factual disputes requiring credibility determinations and findings of fact.**

## II. THE HEARING SHOULD FOLLOW THE TARGETED RULE 6 DISCOVERY REQUESTED SEPARATELY

Movant has separately requested discovery under Rule 6.

That sequencing is important.

Documentary discovery should first establish:

- what Government medical reviews exist;
- what communications occurred between Government witnesses and investigators;
- what former defense counsel possessed;
- what Dr. Freundlich provided to counsel;
- what witness-benefit evidence exists;
- what Government contacts occurred with potential defense witnesses;
- how patient populations and comparators were selected;
- and what records exist concerning the May 2025 settlement and counsel payment.

The evidentiary hearing can then focus upon genuine disputes that remain after document production.

This approach is more efficient than calling witnesses before the underlying records have been assembled.

## III. AN EVIDENTIARY HEARING IS NECESSARY TO RESOLVE GROUND ONE — INEFFECTIVE ASSISTANCE OF COUNSEL

### A. What Counsel Knew About Dr. Freundlich's Medical Evidence

The trial record establishes that Dr. Robert Freundlich testified for the defense.

But the newly reviewed Freundlich materials show that his underlying analysis was substantially broader than a simple disagreement with Government rheumatologists.

His materials addressed:

- seronegative rheumatoid arthritis;
- early rheumatoid arthritis;
- inflammatory polyarthritis;
- psoriatic arthritis;
- overlapping autoimmune conditions;
- radiographic erosions;
- longitudinal evolution of disease;
- methotrexate;
- biologic therapy;
- independent rheumatology diagnoses;
- and independent radiology corroboration.

For Christopher Jones, for example, Freundlich testified that Movant was appropriately attempting to distinguish among RA, spondyloarthropathy, and lupus and that both the diagnostic and treatment approaches were appropriate.

The Court cannot determine from the transcript alone:

- what additional opinions Freundlich gave defense counsel;
- what supporting medical records counsel possessed;
- which favorable opinions counsel considered presenting;
- why materially favorable analyses were omitted;
- whether those omissions were informed strategic choices;

- or whether counsel simply failed to develop and organize the medical defense adequately.

Those questions require testimony from former counsel and potentially Dr. Freundlich.

**B. Counsel's Handling of Independent Corroborating Physicians and Radiologists**

Freundlich's materials identify numerous instances in which physicians independent of Movant diagnosed the same or related inflammatory disease, continued similar treatment, or identified objective radiological abnormalities supporting inflammatory arthritis.

The Court should determine:

- whether counsel knew of each corroborating physician;
- whether counsel obtained the records;
- whether counsel considered presenting them;
- whether admissibility concerns prevented their use;
- and whether omission resulted from strategy or inadequate investigation.

The trial record cannot answer those questions.

**C. Dr. Toro's Prior Relationship With Movant**

Dr. Bricia Toro testified that her first position as a rheumatologist was working for Movant from 2002 through 2005, that she was salaried by him, that she worked in Brownsville, and that in January 2006 she opened her own practice there.

She further testified that she treated **several hundred** former patients of Movant.

She later served as a significant Government medical witness.

The Court should determine what defense counsel knew concerning:

- the circumstances of Toro's departure;
- professional competition;
- patient migration;
- potential economic bias;
- and the methodological consequences of using her former-Zamora patient population as evidence against Movant.

Movant does not ask the Court to infer bias merely because Toro became a competing physician.

The issue is whether counsel reasonably investigated and presented materially relevant impeachment and comparator information.

**D. Dr. Salinas and Lillian Williams**

Movant alleges that Dr. Salinas and Lillian Williams, PA, possessed substantial favorable firsthand evidence concerning clinic operations and treatment of patients but did not provide the jury with that evidence.

A hearing should determine:

- what counsel expected them to testify about;
- whether counsel interviewed them;
- whether they were willing to testify;
- whether Government contacts affected their willingness;
- whether counsel knew of those contacts;
- and whether counsel attempted to preserve their testimony.

These matters are external to the trial transcript.

## IV. THE MAY 2025 SETTLEMENT AND COUNSEL-CONFLICT CLAIM REQUIRES LIVE TESTIMONY

Movant alleges that the circumstances immediately preceding sentencing involved a substantial personal financial interest by defense counsel.

According to Movant, on May 20, 2025, he was advised that:

- he would receive time served;
- the contemplated financial resolution was approximately $14 million;
- direct appeal would be waived;
- counsel would receive approximately $488,047.52;
- and rejection allegedly exposed Movant to approximately 100 years of imprisonment.

Movant alleges that the next day the financial terms materially changed and restitution became approximately $28 million, yet counsel continued pressing for immediate acceptance.

The existing Judgment does not resolve:

- what counsel told Movant;
- what Government counsel represented;
- when terms changed;
- what advice was given after those changes;
- when counsel became entitled to the approximately $488,047.52;
- whether counsel's payment depended upon execution or completion of the agreement;
- and whether counsel's financial interest adversely affected his advice.

Those issues depend upon testimony and documentary evidence.

Former counsel's explanation will be important.

So will Movant's testimony and, where relevant, testimony from other persons present during the negotiations.

The Court should not resolve a credibility dispute over private attorney-client communications solely from the written Judgment.

## V. A HEARING IS WARRANTED ON THE GOVERNMENT MEDICAL-REVIEW ISSUE

Movant has alleged that a Government physician reviewed three patient records and did not disagree with Movant's rheumatoid-arthritis diagnosis in two.

If confirmed, this evidence could be highly material to the Government's assertion of intentional false diagnosis.

The hearing should determine:

1. who the reviewer was;
2. which patients were reviewed;
3. what the reviewer initially concluded;
4. whether written reports or drafts exist;
5. whether Government counsel knew of favorable findings;
6. whether any conclusions were changed;
7. whether additional records were reviewed;
8. whether other Government reviewers reached similar favorable conclusions;
9. when the defense was informed; and
10. whether the information was disclosed in time for effective trial use.

These issues bear upon both *Brady* and ineffective assistance.

## VI. THE PARCHMAN-WILSON COMMUNICATIONS REQUIRE FACTUAL DEVELOPMENT IF THE COMPLETE RECORD CONFIRMS A BENEFIT ISSUE

Movant has identified communications between Government witness Jaime Parchman and FBI Agent Wilson that may concern financial benefit or reward.

Movant does **not** ask the Court to treat an isolated text message as proof that an unlawful Government payment occurred.

Instead, the complete communications should first be produced.

If those communications reveal a material benefit or expectation, a hearing should determine:

- what Agent Wilson told Parchman;
- what Parchman understood;
- whether the subject involved restitution, civil recovery, reward, or another benefit;
- whether prosecutors knew;
- whether the information was disclosed;
- and whether trial testimony concerning motive or compensation was materially incomplete or false.

These questions may require testimony from both Wilson and Parchman.

They cannot be responsibly resolved by interpreting a fragmentary text exchange without context.

## VII. GOVERNMENT PRESSURE ON POTENTIAL DEFENSE WITNESSES, IF ESTABLISHED, REQUIRES CREDIBILITY FINDINGS

Movant alleges that certain clinic employees and healthcare providers experienced Government threats or pressure discouraging them from supporting the defense.

If Rule 6 discovery confirms material Government contacts, the Court should hear testimony concerning:

- who contacted the witnesses;
- exactly what was said;
- whether prosecution or professional consequences were threatened;
- whether the witnesses had previously been willing to testify;
- whether their decisions changed because of Government conduct;
- what testimony they would have supplied;
- and what defense counsel knew.

A due-process witness-interference allegation is inherently factual.

The Court must distinguish ordinary legitimate investigation from substantial interference with a witness's free choice.

Only evidence can make that distinction.

## VIII. THE GOVERNMENT'S EXPERT METHODOLOGY WARRANTS A HEARING TO THE EXTENT IT INTERSECTS WITH CONSTITUTIONAL CLAIMS

Movant does not assert that every Rule 702 disagreement at trial automatically becomes independently cognizable under § 2255.

The expert-reliability issue matters here because it intersects with:

- ineffective assistance;
- Government disclosure;
- sentencing prejudice;
- newly discovered evidence;
- and actual innocence.

A hearing may therefore be required concerning:

- how the Government's patient population was selected;
- whether the 772-patient group was random or self-selected;
- whether an epidemiologist or statistician validated its use;
- how comparator physicians were selected;
- whether case-mix differences were considered;
- whether competing rheumatologists were treated as neutral comparators;
- and whether population-wide conclusions were scientifically supportable.

Qualified expert testimony may be necessary to explain why those methodological distinctions matter.

## IX. METHOTREXATE SHOULD BE ADDRESSED AT THE HEARING IF DISCOVERY SHOWS THE GOVERNMENT KNOWINGLY USED A MATERIALLY MISLEADING CHARACTERIZATION

The Government repeatedly used the term "chemotherapy" in connection with methotrexate.

Yet Government medical evidence acknowledged that methotrexate is used differently in rheumatology from high-dose oncologic chemotherapy.

The Government's own rheumatologist explained the distinction during trial.

The hearing need not resolve a semantic dispute over whether methotrexate can technically be called a chemotherapy drug.

Instead, if discovery reveals that prosecutors were advised that low-dose rheumatologic methotrexate should not be portrayed to lay jurors as cancer chemotherapy, the relevant inquiry becomes whether the Government nevertheless intentionally used the term in a materially misleading fashion.

The issue may also bear on whether defense counsel adequately corrected the prejudice.

## X. POST-TRIAL CLAIMS EVIDENCE WARRANTS EXPERT DEVELOPMENT

The defense's later analysis reported that more than half of the Government's **7,088 alleged Medicare victims** had at least one RA diagnosis from an independent provider.

That finding requires careful interpretation.

It does not automatically mean that every earlier diagnosis was correct.

But neither can it be dismissed as irrelevant where the prosecution's broad theory treated large numbers of those persons as falsely diagnosed.

An evidentiary hearing should permit appropriate testimony concerning:

- how the claims analysis was performed;
- what data were available;
- what limitations existed;
- whether the results are reproducible;
- what independent-provider RA coding means;
- what it does not mean;
- and how the findings affect the Government's original false-diagnosis inference.

Mariela Ruiz, CPA, may be an appropriate witness concerning the data methodology.

A qualified rheumatologist should address the medical significance separately.

## XI. CURRENT MEDICAL EVIDENCE CONCERNING THE SUBSTANTIVE-COUNT PATIENTS MAY REQUIRE A HEARING

Movant has requested appropriately protected access to subsequent medical records concerning the patients underlying the substantive convictions.

If subsequent independent physicians diagnosed those same individuals with:

- rheumatoid arthritis;
- seronegative rheumatoid arthritis;
- inflammatory polyarthritis;
- psoriatic arthritis;
- lupus-associated arthritis;
- or another materially related inflammatory disease,

the Court should consider the significance of that evidence.

Again, later diagnosis does not automatically validate every earlier diagnostic decision.

But patient-specific subsequent evidence may materially affect factual innocence when considered with the historical records and Freundlich's analyses.

This issue requires qualified medical testimony rather than argument alone.

## XII. ACTUAL INNOCENCE CANNOT BE FAIRLY EVALUATED ON AN INCOMPLETE RECORD

Movant invokes actual innocence principally as a gateway to merits consideration of constitutional claims.

The inquiry requires assessment of the evidentiary record as a whole.

That record now potentially includes:

- Freundlich's fuller analyses;

- independent radiological corroboration;
- subsequent independent rheumatology diagnoses;
- Government medical-review evidence;
- claims data;
- potential witness-bias evidence;
- and testimony from healthcare providers not heard by the jury.

The Court should not decide the actual-innocence gateway until the material evidence has been developed sufficiently to evaluate its combined force.

## XIII. THE FIVE-YEAR POST-VERDICT PERIOD ALSO PRESENTS FACTUAL QUESTIONS

The verdict was returned January 15, 2020, while sentencing occurred in May 2025.

Movant alleges that claims-data production and loss litigation consumed years and that important information could have been produced sooner.

Movant recognizes that delay alone does not establish a constitutional violation.

The hearing should address this issue only if documentary development establishes a genuine dispute concerning:

- when the relevant claims data were requested;
- when the Government possessed or could obtain them;
- why production took years;
- whether Court orders were complied with promptly;
- whether any delay was tactical;
- and what cognizable prejudice resulted.

This is appropriately narrower than presuming intentional misconduct from the duration alone.

## XIV. THE HEARING SHOULD BE LIMITED AND ORGANIZED BY SUBJECT

Movant respectfully submits that the Court can conduct a focused proceeding rather than effectively retrying the seven-week criminal trial.

A practical structure would be:

**Phase One — Counsel, Disclosure, and Witness Issues**

This phase would address:

- former counsel's investigation;
- Freundlich preparation;
- Toro impeachment;
- Government medical reviews;
- Parchman-Wilson communications;
- Government contacts with Salinas and Williams;
- and other *Brady/Giglio/Napue* issues.

**Phase Two — Medical and Methodological Evidence**

This phase would address:

- seronegative RA;
- inflammatory polyarthritis;
- diagnostic overlap;
- methotrexate;
- patient selection;
- comparator methodology;
- claims analysis;
- and independent medical corroboration.

**Phase Three — Settlement and Sentencing**

This phase would address:

- May 20–21, 2025 representations;
- counsel's approximately $488,047.52 financial interest;
- appellate waiver;
- loss methodology insofar as relevant to a cognizable custodial claim;
- and sentencing prejudice.

The Court need not adopt this precise structure, but phasing would allow efficient resolution.

## XV. APPOINTMENT OF COUNSEL IF A HEARING IS GRANTED

Rule 8(c) provides that when an evidentiary hearing is warranted, the Court **must appoint counsel** for a moving party who qualifies for appointment under 18 U.S.C. § 3006A.

Accordingly, if the Court determines that an evidentiary hearing is warranted and Movant qualifies financially, Movant respectfully requests appointment of counsel sufficiently in advance of the hearing to permit adequate investigation and preparation.

Given the medical and forensic complexity of this case, appointment would materially assist orderly presentation of the evidence.

## XVI. POTENTIAL WITNESSES

Subject to the results of Rule 6 discovery, potential witnesses may include:

- **Jorge C. Zamora-Quezada**, concerning matters within his personal knowledge;

- former trial and sentencing counsel, concerning investigation, expert preparation, witness decisions, settlement advice, waiver, and the approximately $488,047.52 payment;
- **Dr. Robert Freundlich**, concerning his complete medical analyses and what he communicated to defense counsel;
- **Mariela Ruiz, CPA**, concerning claims and financial analysis;
- **Dr. Salinas**, concerning clinical practice and alleged Government contacts;
- **Lillian Williams, PA**, concerning clinical practice and alleged Government contacts;
- **FBI Agent Wilson**, concerning communications with Parchman and other witnesses;
- **Jaime Parchman**, if material witness-benefit issues remain disputed;
- relevant Government medical reviewers;
- appropriate rheumatology experts;
- an epidemiologist or biostatistician if patient-selection and extrapolation remain disputed;
- and such additional witnesses as discovery establishes are necessary.

Movant does not presently request that every listed person automatically be subpoenaed.

The final witness list should be narrowed after documentary discovery.

## XVII. DOCUMENTS TO BE CONSIDERED AT THE HEARING

Movant anticipates that relevant documentary evidence may include:

- Dr. Freundlich's reports and notes;
- Freundlich-defense-counsel communications;
- independent rheumatology and radiology records;
- Government medical-review records;

- Parchman-Wilson communications;
- FBI 302s and OIG reports;
- Government witness-benefit materials;
- claims datasets and Ruiz analyses;
- patient-selection methodology;
- comparator-rheumatologist materials;
- methotrexate-related expert materials;
- settlement drafts and communications;
- records concerning the approximately $488,047.52 counsel payment;
- and subsequent medical evidence concerning charged patients.

Rule 7 permits the Court to expand the § 2255 record with appropriate documentary materials before determining the ultimate necessity and scope of the evidentiary hearing.

## XVIII. THE COURT SHOULD MAKE SPECIFIC FINDINGS AFTER THE HEARING

Section 2255(b) expressly calls for findings of fact and conclusions of law when a hearing is required.

Movant therefore respectfully requests specific findings concerning:

1. what defense counsel knew concerning Freundlich's complete opinions;
2. why materially favorable evidence was or was not presented;
3. whether counsel reasonably investigated independent corroborating physicians;
4. whether counsel adequately investigated Toro's potential bias;
5. whether counsel adequately investigated and protected favorable clinic witnesses;

6. what Government medical reviewers concluded;
7. when favorable Government evidence was disclosed;
8. whether Government witnesses possessed undisclosed benefits or expectations;
9. whether any materially false testimony was knowingly left uncorrected;
10. whether Government conduct substantially interfered with potential defense witnesses;
11. whether the Government's patient-selection and comparator methodologies were reliable;
12. whether newly discovered claims and medical evidence materially change the trial evidence;
13. what occurred during the May 2025 settlement negotiations;
14. whether counsel's financial interest affected his representation;
15. whether Movant satisfies the prejudice requirements applicable to the established constitutional claims;
16. whether the actual-innocence gateway is satisfied;
17. whether multiple established errors cumulatively undermined fundamental fairness; and
18. what relief, if any, § 2255 requires.

## XIX. REQUEST FOR RELIEF

WHEREFORE, Movant respectfully requests that the Court:

1. **grant this Separate Request for Evidentiary Hearing** pursuant to 28 U.S.C. § 2255(b) and Rule 8;
2. permit completion of the separately requested Rule 6 discovery before the hearing;
3. permit expansion of the record under Rule 7;
4. establish an appropriate schedule for pre hearing discovery, witness identification, exhibit exchange, and expert disclosures;

5. appoint counsel under Rule 8(c) if the Court determines that a hearing is warranted and Movant qualifies under 18 U.S.C. § 3006A;
6. permit testimony from former counsel concerning matters placed at issue through Movant's ineffective-assistance claims, subject to an appropriately limited waiver of attorney-client privilege;
7. permit testimony from Dr. Robert Freundlich;
8. permit testimony from Mariela Ruiz, CPA, if claims-analysis issues remain material;
9. permit testimony from Dr. Salinas, Lillian Williams, PA, and other potentially favorable witnesses whose testimony becomes material;
10. permit testimony from Agent Wilson and relevant Government witnesses if witness-benefit or witness-interference issues remain contested;
11. permit testimony from relevant Government medical reviewers;
12. permit appropriate medical, rheumatology, epidemiological, statistical, and forensic expert testimony;
13. permit development of current or subsequent medical evidence concerning the charged patients subject to appropriate privacy protections;
14. make findings of fact and conclusions of law concerning each material constitutional issue following the hearing;
15. if the evidence establishes constitutional violations undermining confidence in the convictions, vacate the affected convictions and grant a new trial;
16. alternatively, if the established constitutional violations principally affected the custodial sentence, vacate the sentence and conduct a constitutionally valid resentencing; and
17. grant such other and further relief as § 2255 and justice require.

## XX. CONCLUSION

The question presented by this motion is procedural but fundamental.

Movant is not asking the Court at this stage to decide that his factual allegations are true.

He asks the Court **not to decide that they are false without first resolving the factual disputes that the existing record cannot conclusively answer**.

The present § 2255 claims depend upon questions such as:

What did counsel know?

What did Dr. Freundlich tell counsel?

Why did the jury not hear substantial portions of the available medical analysis?

What did Government medical reviewers conclude?

What were Government witnesses told about possible benefits?

Were favorable healthcare providers pressured?

Was Dr. Toro's prior employer-employee and subsequent competitor relationship adequately investigated and presented?

What did the newly produced claims data actually demonstrate?

What occurred during the May 20–21, 2025 settlement process?

And did counsel's substantial personal financial interest affect the advice that resulted in waiver of appellate rights?

The answers cannot be supplied by the verdict.

They cannot be supplied by the Judgment.

And several cannot be supplied by the trial transcript because the relevant events occurred outside the courtroom.

Section 2255(b) addresses precisely that circumstance: unless the existing motion, files, and records conclusively show that relief is unavailable, the statute provides for a prompt hearing, determination of the issues, and findings of fact and conclusions of law.

Movant has identified concrete witnesses, documents, expert materials, communications, and newly developed evidence capable of proving or disproving the constitutional allegations.

Accordingly, after appropriate targeted discovery and expansion of the record, Movant respectfully requests an evidentiary hearing under **28 U.S.C. § 2255(b) and Rule 8**.

Respectfully submitted,

**JORGE C. ZAMORA-QUEZADA**

2330 Red River Drive
Mission, TX 78572

(956) 672-9359

Movant, Pro Se

**Date:** On the 19th day of August, 2026.

**CERTIFICATE OF SERVICE**

I certify that on August 19th,, 2026, a true and correct copy of the foregoing **Movant's Separate Request for Evidentiary Hearing Pursuant to 28 U.S.C. § 2255(b) and Rule 8 of the Rules Governing Section 2255 Proceedings** was served upon counsel for the United States in accordance with the applicable rules and procedures of this Court.

United States Attorney's Office
Southern District of Texas
McAllen Division
1701 West Business Highway 83, Suite 600
McAllen, Texas 78501

**JORGE ZAMORA-QUEZADA**
Movant, Pro Se