United States District Court
Southern District of Texas
FILED

NOV 05 2026

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
ENTERED
November 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **JORGE C. ZAMORA-QUEZADA,** | § | |
| **Movant,** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL NO. 7:26-CV-0302** |
| | § | **CRIM. NO. 7:18-CR-0855-1** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## REPORT AND RECOMMENDATION

Movant JORGE C. ZAMORA-QUEZADA, proceeding pro se, has filed a *Motion to Vacate, Set Aside, or Correct a Sentence Under 28 U.S.C. § 2255* (the "Section 2255 Motion") (Civ. Dkt. No. 1; Cr. Dkt. No. 875).[1]

Movant was sentenced to a term of imprisonment of 120 months upon his conviction by jury on multiple counts related to large-scale health care fraud. The Government's theory of the case was that Movant, a rheumatologist, intentionally misdiagnosed patients with autoimmune disorders, performed and administered unnecessary tests and procedures on those patients, and then fraudulently billed Medicare and other entities for the services. Now, seeking collateral relief from his conviction and sentence, Movant raises claims implicating the ineffective assistance of counsel, prosecutorial misconduct, and error at sentencing.

Upon screening the Section 2255 Motion in accordance with Rule 4 of the Rules Government Section 2255 Proceedings for the United States District Court (the "Section 2255 Rules"), the Magistrate Judge ordered the Government to submit a response to the Section 2255

[1] Unless otherwise noted, citations to specific pages in the record refer to the pagination of docket entries in the case management/electronic case-file (CM/ECF) system. As used here, "Civ. Dkt." is a citation to Civil Action No. 7:26-CV-0302, and "Cr. Dkt." is a citation to Criminal Action No. 7:18-CR-0855-1.

Motion. The Government has filed a *Motion to Dismiss* (Civ. Dkt. No. 12; Cr. Dkt. No. 884), arguing that the Section 2255 Motion is subject to summary dismissal as time-barred under the applicable statute of limitations.

Movant has submitted a response. (Civ. Dkt. No. 14; Cr. Dkt. No. 892). According to Movant, the Section 2255 Motion is timely because it is only within the last few months that he obtained an expert report providing evidentiary support for his claims. Otherwise, Movant argues for equitable tolling of the limitations period insofar as he has diligently pursued his right to collateral review.

This case was referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). After review of the record and relevant law, the Magistrate Judge RECOMMENDS that the Motion to Dismiss (Civ. Dkt. No. 12; Cr. Dkt. No. 884) be GRANTED, that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 875) be DENIED as untimely, and that this civil action be DISMISSED. The Magistrate Judge further RECOMMENDS that a Certificate of Appealability be DENIED.

## I. BACKGROUND

Movant was indicted in May 2018 and ordered detained pending trial. (*See* Cr. Dkt. Nos. 1, 14, 44). In January 2020, after a month-long jury trial, Movant was convicted on nine counts of conspiracy to commit health care fraud, substantive health care fraud, and conspiracy to obstruct justice. (Cr. Dkt. Nos. 115, 684). He was sentenced in May 2025 to 120 months of imprisonment, a term of supervised release, and restitution of over $28 million. (Cr. Dkt. Nos. 826, 835). A final judgment issued on May 23, 2025. (Cr. Dkt. Nos. 826). Movant's deadline to file a notice of appeal—which is relevant here for purposes of the limitations inquiry—fell on June 6, 2025. *See* Fed. R. App. P. 4(b)(1)(A)(i). No direct appeal was filed.

Approximately one year after sentencing, while he was still in the custody of the Bureau of Prisons (the "BOP"), Movant sought to initiate collateral review proceedings. (Civ. Dkt. No. 14 at 1; Civ. Dkt. No. 14-1 at 2). He thus prepared a § 2255 motion with a paralegal associated with a law firm in El Paso and instructed the paralegal to mail the completed motion for filing. (*See* Civ. Dkt. No. 14 at 1; Civ. Dkt. No. 14-1 at 2). Movant represents, as supported by an ostensible photo of the mailing envelope, that the recipient address was indicated as follows: U.S. District Court, Southern District of Texas, McAllen Division, 1701 W. Business Hwy. 83, Suite 600, McAllen, Texas 78501. (Civ. Dkt. No. 14 at 1-2; Civ. Dkt. No. 14-1 at 3; Civ. Dkt. No. 14-3 at 2). The Magistrate Judge notes that Suite 600 is the suite number for the local U.S. Attorney's Office, which is in the same building as the Clerk of Court in the McAllen Division. Movant states, as supported by a postal receipt, that the envelope was mailed by the paralegal on May 20, 2026.[2] (Civ. Dkt. No. 14 at 1; Civ. Dkt. No. 14-1 at 3; Civ. Dkt. No. 14-2 at 2).

The Government represents that, on May 26, 2026, a § 2255 motion from Movant was received at the local U.S. Attorney's Office.[3] (Civ. Dkt. No. 12 at 7 n.3).

As discussed below, where a defendant does not appeal their conviction or sentence, the applicable limitations period lapses one year from the end of the 14-day period for filing a notice

---

[2] According to a Certificate of Service in the Section 2255 Motion itself, Movant mailed a copy of the motion to the local U.S. Attorney's Office on May 19, 2026. (Civ. Dkt. No. 1 at 8). In attempting to explain away the date-of-mailing discrepancy, Movant avers that he reprinted the document and attempted to reconstruct the date on the Section 2255 Motion from memory. (*See* Civ. Dkt. No. 14 at 5; Civ. Dkt. No. 14-1 at 4). For purposes of this report, however, any discrepancy can be ignored.

[3] According to the Government, the motion it received is "substantially different" from the Section 2255 Motion hand-delivered to the clerk. (Civ. Dkt. No. 12 at 7 n.3). The Government further notes that the Certificate of Service is dated May 18, 2026 (whereas the certificate on the Section 2255 Motion is dated May 19, 2026), and the signature "markedly differs" from that on the Section 2255 Motion. (*Id.*). Unfortunately, the Government did not offer the document at issue into the record for the Magistrate Judge's review. Nevertheless, Movant would aver that he reprinted the document and failed to remember the correct date on which the original document was mailed. (*See* Civ. Dkt. No. 14 at 5; *see also* Civ. Dkt. No. 14-1 at 4). For present purposes, again, any discrepancy can be ignored.

of appeal. *See* 28 U.S.C. § 2255(f)(1); *see also United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008); Fed. R. App. P. 4(b)(1)(A)(i). The lapse of the one-year period would have occurred here on or around Monday, June 8, 2026.

Nevertheless, according to the Government, on or around June 22, 2026, Movant was released from BOP custody. (Civ. Dkt. No. 12 at 2).

On July 1, 2026, Movant hand-delivered the Section 2255 Motion to the Clerk of Court, thus formally initiating the instant collateral review proceedings.[4] (Civ. Dkt. No. 1; Civ. Dkt. No. 14 at 5; Civ. Dkt. No. 14-1 at 5). Together with the Section 2255 Motion, Movant submitted a letter requesting that the Section 2255 Motion be deemed "filed" as of "the date of mailing[.]" (Civ. Dkt. No. 2). With respect to the date of mailing, the letter states verbatim as follows: "On [fecha exacta], Movant deposited his § 2255 motion in the United States Postal Service, as evidenced by the attached USPS receipt." (*Id.*). The Magistrate Judge understands the bracketed material, *fecha exacta*, to translate from Spanish to English as "exact date" and serve as a placeholder for the date of mailing of the § 2255 motion received by the U.S. Attorney's Office.[5]

On July 6, 2026, the Magistrate Judge ordered the Government to respond to the Section 2255 Motion. (Civ. Dkt. No. 3).

Movant claims that, on July 17, 2026, he received for the first time a financial report from Mariela Ruiz, CPA. (Civ. Dkt. No. 14 at 10; Civ. Dkt. No. 14-1 at 6; Civ. Dkt. Nos. 14-5, 14-6).

---

[4] A Certificate of Service at the end of the document indicates that a copy of the Section 2255 Motion was mailed to the "United States Attorney's Office" and lists its address, including the suite number, Suite 600. (Civ. Dkt. No. 1 at 8). This seemingly contradicts Movant's present assertion that he directed the prior mailing to the "U.S. District Court." (Civ. Dkt. No. 14 at 1-2; Civ. Dkt. No. 14-1 at 3; Civ. Dkt. No. 14-3 at 2). Any such discrepancy, however, can again be ignored.

[5] While the letter does refer to an attached mailing receipt (Civ. Dkt. No. 2), no such receipt was included with Movant's hand-delivered filings. The ostensible receipt is attached to Movant's response to the Motion to Dismiss. (Civ. Dkt. No. 14-1 at 2-3; Civ. Dkt. No. 14-2).

For reference, Ms. Ruiz testified as a defense expert at Movant's trial and sentencing. (*See* Cr. Dkt. No. 666; *see also* Cr. Dkt. No. 739 at 120-56). Movant represents that "[her report] analyzes Government claims data to determine whether beneficiaries attributed to Movant also had rheumatoid-arthritis claims submitted by providers other than Movant." (Civ. Dkt. No. 14 at 10). "Among other results," Movant continues, "[Ms. Ruiz's] Medicare analysis identified [thousands of beneficiaries under multiple scenarios] as having [rheumatoid-arthritis] claims involving providers other than Movant[.]" (*Id.*). To be clear, the report in question is dated July 15, 2024—after trial but before sentencing—and involves an analysis of Medicare claims dated between January 2006 through January 2023. (Civ. Dkt. No. 14-6). Given the surrounding context, it seems the report was generated for purposes of challenging the Government's proposed loss calculation at sentencing. (*See* Cr. Dkt. Nos. 810, 811).

Nevertheless, on July 28, 2026, Movant filed an amended pleading thereby incorporating Ms. Ruiz's report in support of his claims.[6] (Civ. Dkt. Nos. 5, 5-1).

The Government then filed the Motion to Dismiss. (Civ. Dkt. No. 12). It is the Government's position that the Section 2255 Motion is barred by the one-year limitations period applicable to motions for collateral review. The Government argues that the Section 2255 Motion was not "filed" until it was hand-delivered to the clerk on July 1st, which date falls outside the typically applicable limitations period. (*Id.* at 3-6). The Government further argues that Movant is not entitled to equitable tolling of the limitations period based on factors like his ignorance of the applicable filing requirements. (*See id.* at 6-8).

[6] The Government has moved to dismiss this amended pleading as untimely and to deny as moot a motion by Movant to further amend the pleadings. (Civ. Dkt. No. 13; Cr. Dkt. No. 891). Issued contemporaneously with this report is a separate report and recommendation that the Government's motion be granted.

Movant submitted a response (Civ. Dkt. No. 14), taking a two-pronged approach in contesting dismissal. First, Movant argues for a limitations accrual date of July 17, 2026, or when he was e-mailed a copy of Ms. Ruiz's expert report. (*Id.* at 9-11). This alternate accrual date is appliable, according to Movant, insofar as it marks the date on which he first obtained the information necessary to support his claims for relief. (*Id.*). Otherwise, assuming the limitations period accrued in June 2025 with the lapse of the deadline for filing a notice of appeal, Movant invokes the doctrine of equitable tolling. (*Id.* at 6-9). Movant concedes that the Section 2255 Motion was not properly filed when he inadvertently mailed it to the U.S. Attorney's Office. (*See id.* at 8). Candidly, "Movant recognizes that Government notice alone does not automatically constitute filing with the Clerk. Nor does Movant suggest that the United States Attorney's Office had a general obligation to perfect his filing for him." (*Id.*). Nevertheless, Movant contends that he is entitled to equitable tolling insofar as he diligently pursed his right to collateral review. (*See id.* at 6-9). Movant notes, for such purposes, that he mailed the § 2255 motion in advance of the deadline, documented the mailing, and personally visited the clerk's office to deliver a copy of the document upon noticing that the original mailing had not been docketed. (*Id.* at 6-7).

## II. LEGAL STANDARDS

### A. Collateral Review Under § 2255

Section 2255 provides a federal prisoner with a post-conviction remedy to test the legality of their detention by filing a motion to vacate their judgment and sentence before the trial court. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)

(per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). There are four grounds for which a federal prisoner may seek § 2255 relief: (i) the sentence was imposed in violation of the Constitution or federal law; (ii) the court lacked jurisdiction to impose the sentence; (iii) the sentence exceeds the statutory maximum; or (iv) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). The movant has the burden to establish their right to relief by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

A § 2255 motion may be denied without a hearing if the record conclusively shows the movant is not entitled to relief. *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990). Conclusory or speculative allegations do not require a hearing. *See United States v. Edwards*, 442 F.3d 258, 264 & 268 n.10 (5th Cir. 2006). Nor will such allegations give rise to a constitutional issue and thus a right to collateral relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (per curiam)).

**B. Limitations and Tolling**

A motion for relief under § 2255 is subject to a one-year limitations period, which runs from the latest of four possible dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In a typical case, the limitations period will begin to run under § 2255's subsection (f)(1), or the date on which the challenged conviction becomes "final." 28 U.S.C. § 2255(f)(1). Where a defendant does not file for direct review, as here, finality coincides with the expiration of the deadline to file a notice of appeal, *Plascencia*, 537 F.3d at 388, generally 14 days after the entry of judgment, Fed. R. App. P. 4(b)(1)(A)(i).

Where a movant invokes an alternate accrual date, it becomes their burden to establish its application. *See United States v. Thompson*, 2023 WL 2499190, at *3 (E.D. La. Mar. 14, 2023); *see also Navarro v. United States*, 2020 WL 13801475, at *15-16 (S.D. Tex. Apr. 28, 2020), *report and recommendation adopted*, 2020 WL 13801482 (S.D. Tex. Aug. 31, 2020). Movant's arguments allude to subsection (f)(4), or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). As the statutory language makes clear, subsection (f)(4) applies when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered. *Navarro*, 2020 WL 13801475, at *15 (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)) (quotations omitted). A movant will be afforded the benefit of this accrual date only if vital facts could not have been known. *Id.* (quoting *Schlueter*, 384 F.3d at 74) (quotations omitted). In other words, to be entitled to a finding of timeliness under subsection (f)(4), a movant must show the existence of a new fact, while also demonstrating that they acted with diligence to discover the new fact. *Id.* (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)) (quotations omitted). As such, the proper task in a case such as this one is to determine when a duly diligent person in the movant's circumstances would have discovered the facts necessary for their claim. *See Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000).

Diligence for such purposes can be shown by prompt action on the part of the movant as soon as they are in a position to realize they should act. *United States v. Rodriguez*, 858 F.3d 960, 962 (5th Cir. 2017). The diligence exercised must merely be "due" or "reasonable" under the circumstances. *Id.* (quoting *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir. 2008)) (quotations omitted). When applying subsection (f)(4), "[t]he important thing is to identify a particular time when . . . diligence is in order." *Id.* (quoting *Johnson v. United States*, 544 U.S. 295, 308 (2005)) (internal quotations omitted).

The limitations period is not jurisdictional and thus can be subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). Equitable tolling is available only where the movant bears the burden of showing (i) the diligent pursuit of their rights, and (ii) that some extraordinary circumstance stood in their way and prevented timely filing. *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010). "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (per curiam) (citing *United States v. Patterson*, 211 F.3d 927, 931 (5th Cir. 2000) (per curiam)).

The diligence required for equitable tolling "is 'reasonable diligence,' not 'maximum feasible diligence.'" *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)). In establishing diligence, a movant must refer to specific actions taken in pursuit of their rights, such that they attempted to contact their attorney for information and documents, requested documents from the clerk of court, or sought new counsel. *See Holland*, 560 U.S. at 653; *see also United States v. Barnes*, 2020 WL 6931287, at *2 (M.D. La. Nov. 24, 2020). Waiting too long to act, however, may cut against the movant. *See Haarmann v. Thaler*, 2011 WL 5155705, at *4 (S.D. Tex. Oct. 28, 2011). A movant must exercise diligence

even if they receive inadequate legal representation, are abandoned by counsel, or otherwise fail to hear from counsel about the status of their case. *Manning*, 688 F.3d at 184 n.2, 185-86; *accord Rodriguez*, 858 F.3d at 963-64.

As for extraordinary circumstances, a pro se prisoner's ignorance of the law does not suffice. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000). Also insufficient, insofar as a prisoner has no right to an attorney during collateral proceedings, is counsel's mere error or neglect. *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002). Generally, the movant must show that they were actively misled about or prevented from asserting their collateral rights, *see Patterson*, 211 F.3d at 930, such as through misrepresentations by the movant's attorney, *see Wynn*, 292 F.3d at 230.

**C. Filing of Papers by Pro Se Prisoners**

Rule 5(d) of the Federal Rules of Civil Procedure generally recognizes that the "filing" of papers is accomplished through the clerk of court. *See, e.g.*, Fed. R. Civ. P. 5(d)(2) ("A paper not filed electronically is filed by delivering it . . . to the clerk . . . or . . . to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk."). The same applies with specific respect to motions for collateral review, insofar as Rule 3(a) of the Section 2255 Rules states that "[a]n original and two copies of [a § 2255 motion] must be filed with the clerk[.]" Pro se litigants may deliver papers to the clerk for filing through various means, including by hand-delivery and by mail. *See* Fed. R. Civ. P. 5(d)(2); *see also* Rule 3(d), Section 2255 Rules.

The general rule is that papers submitted by mail are deemed "filed" on the date they are received by the clerk. *Smith v. Noem*, 2026 WL 2001200, at *9 (N.D. Tex. Feb. 9, 2026) (collecting cases), *report and recommendation adopted sub nom. Smith v. Mullin*, 2026 WL

1590118 (N.D. Tex. June 3, 2026). Pursuant to the "mailbox rule," however, a pro se prisoner's papers may be deemed filed when such papers are deposited for mailing with the prison's internal mailing system. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011) (per curiam); Rule 3(d), Section 2255 Rules ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."). The burden is on a pro se prisoner to show when they tendered a filing to prison officials for mailing to the court. *United States v. Duran*, 934 F.3d 407, 412 (5th Cir. 2019). In support of timely filing, a prisoner may provide "[an unsworn] declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." Rule 3(d), Section 2255 Rules. Where a paper is never received or docketed by the addressee court, timely filing may otherwise be supported by "prison mail logs, copies of inmates' requests for legal or indigent mail, date-stamps on court records, postal receipts reflecting mailing on the date in question, and certified mail receipt forms." *See Callahan v. Cain*, 2017 WL 834983, at *4 (M.D. La. Feb. 15, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 830969 (M.D. La. Mar. 2, 2017). To be clear, however, in resorting to means other than their prison's mailing system, a prisoner loses the benefit of the mailbox rule. *See Ramseur v. United States*, 2023 WL 3587774, at *1 (N.D. Tex. Apr. 24, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 3590687 (N.D. Tex. May 22, 2023); *see also* Rule 3(d), Section 2255 Rules ("If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this [mailbox] rule.").

Although a prisoner may be proceeding without the assistance of counsel, pro se status does not excuse compliance with a court's procedural filing rules, *see McNeil v. United States*, 508

U.S. 106, 113 (1993), including the rules concerning the timely filing of papers, *see Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam).

## III. ANALYSIS

As a threshold matter, Movant argues for an alternate accrual date under § 2255's subsection (f)(4) of July 17, 2026, or the date he received Ms. Ruiz's financial report. Again, a claim accrues according to subsection (f)(4) based on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The statutory language explicitly refers to when a factual predicate ***could have*** been discovered, rather than the date of its actual discovery. *Navarro*, 2020 WL 13801475, at *15. Here, Movant cannot even begin to rely on the date he was e-mailed Ms. Ruiz's report given that the report was authored and submitted into the record well in advance of Movant's sentencing. (*See* Cr. Dkt. Nos. 810, 811).

In terms of the generally applicable accrual date under subsection (f)(1), the judgment in this case was filed on May 23, 2025 (Cr. Dkt. No. 826), and because Movant did not file a direct appeal, his conviction became final 14 days later, that is, June 6, 2025. Accordingly, Movant had until Monday, June 8, 2026 to timely file the Section 2255 Motion pursuant to the one-year limitations period. Instead, Movant filed the Section 2255 Motion on July 1, 2026, when it was hand-delivered to the clerk, or over three weeks after the limitations period expired.

Indeed, Movant does not argue for timely filing based on the § 2255 motion inadvertently mailed to the U.S. Attorney's Office in May 2026. (*See* Civ. Dkt. No. 14 at 8). Movant explicitly disclaims reliance on the mailbox rule insofar as he did not mail the document through his prison mailing system but relied, instead, on the assistance of an outside paralegal. (*Id.* at 4-5). Again, the benefit of the mailbox rule is unavailable to movants who opt not to use their prison's mailing

system. *See Ramseur*, 2023 WL 3587774, at *1; *see also* Rule 3(d), Section 2255 Rules. Movant also concedes that the U.S. Attorney's Office was under no obligation to deliver the § 2255 motion to the clerk's office for docketing. (*Id.* at 8).

This brings to a head the matter of equitable tolling. In arguing that he was diligent in the pursuit of his right to collateral review, Movant notes that he mailed the § 2255 motion before the deadline, documented the mailing, and delivered the Section 2255 Motion to the clerk's office soon after his release from BOP custody. (Civ. Dkt. No. 14 at 6-7). That said, even assuming diligence on his part, Movant fails to show that extraordinary circumstances stood in his way of timely filing. Movant would pivot again to the circumstance that his original request for relief was mailed to the U.S. Attorney's Office instead of the clerk because the mailing envelope listed the incorrect office suite number. (*See id.* at 9). But unless a movant is misled about their rights, sending a motion for collateral review to the wrong address does not present an extraordinary circumstance. *See Merryman v. Davis*, 2017 WL 11637497, at *1-2 (W.D. Tex. Sept. 28, 2017) (concluding that pro se habeas petitioner was not entitled to equitable tolling where petitioner was dyslexic, "had trouble accumulating records because of his imprisonment and limited financial resources," and "repeatedly sent his habeas petition to the wrong address because he did not understand the rules"), *aff'd*, 781 F. App'x 325 (5th Cir. 2019) (per curiam). The same is true even where the wrong address in question is that of the U.S. Attorney's Office. *See United States v. Walker*, 2020 WL 8408661, at *1-3 (N.D. Tex. Oct. 26, 2020) (concluding that movant was not entitled to benefit of mailbox rule, and otherwise failed to show extraordinary circumstances for purposes of equitable tolling, where motion for collateral relief was addressed to district court but mailed to address of U.S. Attorney's Office in same building), *report and recommendation adopted*, 2021 WL 347616 (N.D. Tex. Feb. 2, 2021). Movant does not allege that he was misled

in any way here but, instead, raises a mere "garden variety" claim of excusable neglect based on a clerical error, which is insufficient to justify the application of equitable tolling. *See United States v. Kirkham*, 367 F. App'x 539, 541-43 (5th Cir. 2010) (per curiam).

Finally, Movant suggests that the financial report authored by Ms. Ruiz establishes his "actual innocence" and, thus, a mechanism by which to circumvent the preclusive effect of his untimely filing under subsection (f)(1). (Civ. Dkt. No. 14 at 11-12). Indeed, "a claim of 'actual innocence' is not a free-standing ground for relief but, instead, is a gateway to consideration of claims of constitutional error that otherwise would be barred from review." *Holstein v. United States*, 2015 WL 1514986, at *31 (N.D. Tex. Mar. 17, 2015) (citing *United States v. Scruggs*, 691 F.3d 660, 671 (5th Cir. 2012)), *report and recommendation adopted*, 2015 WL 1515177 (N.D. Tex. Apr. 1, 2015). One procedural bar that may be overcome by a successful claim of actual innocence is the bar associated with the limitations period. *See Perez v. United States*, 2020 WL 2201904, at *4 (S.D. Tex. Feb. 26, 2020) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)), *report and recommendation adopted*, 2020 WL 2201418 (S.D. Tex. May 6, 2020). Tenable actual innocence claims are rare, however, and depend on the discovery of new, reliable evidence of the movant's innocence. *See McQuiggin*, 569 U.S. at 386. To meet the threshold requirement, a movant must persuade the district court that it is more likely than not that no rational fact-finder would have found the movant guilty beyond a reasonable doubt in light of the new evidence and the evidence presented at trial. *Garcia v. United States*, 2020 WL 2737249, at *2 (N.D. Tex. Mar. 20, 2020) (quoting *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018)) (quotations omitted), *report and recommendation adopted*, 2020 WL 2735926 (N.D. Tex. May 26, 2020). Such new, reliable evidence may include, by way of example, exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.

*McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012) (quoting *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)) (quotations omitted). Nevertheless, the financial report by Ms. Ruiz was not meant to establish that Movant was innocent of intentionally misdiagnosing patients and fraudulently billing the healthcare system. As alluded to above, the report was offered to challenge the alleged scope of such activities for purposes of a sentencing-related loss calculation. Moreover, the financial report does ***not*** specifically address any victims alluded to in the counts of conviction. As such, Movant fails to meet the actual innocence threshold.[7]

---

[7] In terms of another potential avenue for raising actual innocence, Movant asserts through the Section 2255 Motion that—

> [n]ewly discovered evidence—including the ACR/EULAR 2010 RA classification criteria, VECTRA biomarker results, inflammatory markers (ESR, CRP, C3, C4), ANA, RNP, Sjogren's antibodies, and autoimmune comorbidities—demonstrates that the patients at issue [in the criminal counts of conviction] did meet the criteria for RA or related autoimmune disease.

(Civ. Dkt. No. 1 at 2). According to Movant, the—

> documents now available—including those submitted by Movant—show [as follows]: [f]ive of the seven patients had positive rheumatoid factor[;] [t]wo patients had elevated VECTRA scores (12-biomarker RA panel)[;] [a]ll patients had inflammatory markers (ESR, CRP, C3, C4)[;] [a]ll patients had autoimmune markers (ANA, RNP, Sjogren's, SSB)[;] [a]ll patients met ACR/EULAR 2010 RA classification criteria[;] [and] [a]ll patients had autoimmune comorbidities consistent with RA[.]"

(*Id.* at 3 (bulleting omitted)). However, this information does not appear to be "new" for purposes of supporting actual innocence, as Movant specifically complains, in terms of his claim of ineffective assistance, that trial counsel "failed to present these matters through qualified medical experts and failed the challenge the Government's medical representations adequately." (Civ. Dkt. No. 5 at 5; *see also* Civ. Dkt. No. 1 at 2-5). Otherwise, despite his representations, Movant has not submitted any supporting documentation into the record.

# IV. CONCLUSION

### *Recommendation*

For these reasons, the Magistrate Judge RECOMMENDS that the Motion to Dismiss (Civ. Dkt. No. 12; Cr. Dkt. No. 884) be GRANTED, that the Section 2255 Motion (Civ. Dkt. No. 1; Cr. Dkt. No. 875) be DENIED as untimely, and that this civil action be DISMISSED.[8]

### *Certificate of Appealability*

The Magistrate Judge must also address the matter of the issuance of a certificate of appealability ("COA").

A movant may not appeal the final order of a collateral proceeding "unless a circuit justice or judge issues a [COA]." 28 U.S.C. § 2253(c)(1). Rule 11 of the Section 2255 Rules instructs that the court "must issue or deny a [COA] when it enters a final order adverse to the applicant." A movant is entitled to a COA upon showing that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).

Having concluded that Movant fails to meet this threshold, the Magistrate Judge RECOMMENDS that the District Judge DENY a COA.

### *Objections*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed.

---

[8] In concluding that the Section 2255 Motion is untimely and that Movant is not entitled to equitable tolling, the Magistrate Judge has assumed many of Movant's allegations to be true—despite the above-noted discrepancies with his filings and papers. Should the District Court reject the Magistrate Judge's recommendations made under the assumed factual allegations, the Magistrate Judge recommends that the matter be remanded for an evidentiary hearing to resolve the noted discrepancies in determining the timeliness of the Section 2255 Motion.

R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Judge on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Judge, except on grounds of clear error or manifest injustice.

***Directive to Clerk of Court***

The Clerk of Court is DIRECTED to forward a copy of this report to the parties by any receipted means.

DONE at McAllen, Texas this 5th day of November 2026.

J. SCOTT HACKER
United States Magistrate Judge