United States District Court
Southern District of Texas
FILED

NOV 09 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**McALLEN DIVISION**

**JORGE C. ZAMORA-QUEZADA, M.D., M.P.H.,**
Movant,

V.

Civil No. 7:26-CV-00302
Crim No. 7:18-CR-00855-1

**UNITED STATES OF AMERICA,**
Respondent.

**MOVANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS (ECF NOS. 897 AND 898), REQUEST FOR DE NOVO REVIEW, OBJECTION TO DENIAL OF EVIDENTIARY DEVELOPMENT (ECF NO. 899), REQUEST FOR EXAMINATION OF JUDICIAL IMPARTIALITY, AND ALTERNATIVE REQUEST FOR CERTIFICATE OF APPEALABILITY**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Movant Jorge C. Zamora-Quezada, proceeding pro se, respectfully submits these specific objections to the Reports and Recommendations entered November 5, 2026 (Criminal ECF Nos. 897 and 898), and seeks review of the related order denying discovery and an evidentiary hearing (Criminal ECF No. 899).

These objections are submitted pursuant to 28 U.S.C. § 636(b)(1), Federal Rules of Civil Procedure 72(a) and 72(b), and the Rules Governing Section 2255 Proceedings.

Movant requests de novo determination of the dispositive recommendations, review of the nondispositive discovery and hearing rulings under the applicable standard, and independent examination of the fairness and appearance of impartiality of the proceedings.

## I. INTRODUCTION AND NATURE OF THE OBJECTIONS

This proceeding concerns a federal physician who spent approximately seven years in federal detention and incarceration following a prosecution premised upon allegations of fraudulent rheumatoid arthritis diagnoses, medically unnecessary treatment, and related health-care billing.

Movant maintains that the prosecution's overarching medical narrative was fundamentally flawed and that material evidence concerning diagnoses, treatment, subsequent independent medical findings, and the calculation of alleged financial losses was inadequately investigated or presented.

The Government was required to prove the charged criminal offenses beyond a reasonable doubt. Movant was not required to establish his innocence at trial.

Yet Movant has undertaken substantial efforts to obtain medical and financial evidence that he believes undermines the prosecution's theory and supports constitutional claims concerning ineffective assistance of counsel, due process, and the reliability of evidence.

The immediate issue, however, is procedural.

The Magistrate Judge recommends terminating this collateral proceeding without adjudication of its constitutional merits, despite contemporaneous evidence that Movant caused a § 2255 motion expressly addressed to the United States District Court to be mailed before expiration of the limitations period and despite the Government's acknowledgment that it received the pleading before the deadline.

Movant acknowledges that mailing a document to the United States Attorney's Office does not ordinarily constitute filing it with the District Clerk.

Nevertheless, he contends that the combination of his incarceration, documented pre-deadline efforts, reliance upon outside assistance, express identification of the District Court as the intended recipient, actual governmental receipt, and subsequent corrective action requires a complete and individualized equitable analysis.

The Court should not convert an acknowledged pre-deadline effort to seek judicial relief into an unexplained abandonment of constitutional rights.

Movant specifically objects to:

1. The rejection of equitable tolling in ECF No. 897;
2. The treatment of the evidence concerning the May 2026 mailing;
3. The rejection of an alternative limitations analysis under § 2255(f)(4);
4. The rejection of the asserted actual-innocence gateway;
5. The recommendation to deny a Certificate of Appealability;
6. The derivative recommendations concerning acceptance, amendment, and related relief in ECF No. 898; and
7. The denial of discovery and an evidentiary hearing in ECF No. 899.

Movant also requests examination of the appearance of judicial impartiality and the Government's handling of a pleading expressly addressed to the federal court.

## II. THE DOCUMENTARY CHRONOLOGY IS ESTABLISHED IN THE RECORD

Movant's Response in Opposition to the Government's Motion to Dismiss, Criminal ECF No. 892, filed September 4, 2026, provided a detailed chronology and six supporting exhibits.

The relevant facts include the following.

First, Movant was incarcerated when he prepared and pursued his initial § 2255 motion.

Second, Movant arranged outside assistance for preparation and mailing.

Third, a contemporaneous United States Postal Service receipt establishes a mailing transaction dated May 20, 2026, at 4:19 p.m., in El Paso, Texas.

Fourth, a photograph of the envelope identifies the intended recipient as:

**U.S. District Court**
**Southern District of Texas**
**McAllen Division**

The envelope also bears the address 1701 W. Business Highway 83, Suite 600, McAllen, Texas 78501.

Fifth, Suite 600 corresponded to the United States Attorney's Office rather than the District Clerk.

Sixth, the Government acknowledged receiving a § 2255 motion from Movant on or about May 26, 2026.

Seventh, after learning that the motion had not been docketed, Movant and his wife personally appeared at the Clerk's Office on July 1, 2026, and delivered another copy.

The Magistrate Judge identifies June 8, 2026, as the expiration of the ordinary limitations period.

Thus, the Government received a § 2255 pleading before that deadline.

The legal effect of that receipt remains disputed, but the existence of the pre-deadline activity is supported by documentary evidence and the Government's own acknowledgment.

**Specific Objection No. 1:** Movant objects to any characterization of July 1, 2026, as the beginning of his pursuit of collateral relief, rather than the date of his corrective delivery to the Clerk.

## III. THE MAY 18, MAY 19, AND MAY 20 DISCREPANCIES WERE EXPLAINED UNDER PENALTY OF PERJURY

In ECF No. 892-1, Movant submitted a declaration under 28 U.S.C. § 1746.

Paragraphs 21 through 26 explain the differences among dates appearing on copies of his original § 2255 materials.

Movant declared that the originally printed document did not contain a completed certificate date.

When he later entered a date on another copy, he used his best recollection and wrote May 19, 2026.

The Government's copy contained a certificate dated May 18, 2026.

The independent USPS receipt establishes May 20, 2026, as the date of the mailing transaction.

The date appearing on a certificate of service need not be identical to the date on which a postal transaction was completed.

Movant expressly denied attempting to fabricate or misrepresent the mailing date.

He also clarified that he had arranged outside assistance and had not personally deposited this envelope in the prison's institutional legal-mail system.

The Magistrate Judge's footnote 8, ECF No. 897 at 16, recognizes the Government's objections to discrepancies but declines to resolve them because the recommendation assumes that equitable tolling is unavailable even if Movant's factual allegations are accepted.

Movant therefore does not contend that the Magistrate Judge made an express finding of fabrication.

Instead, Movant objects to the legal conclusion that the complete factual circumstances, including the sworn explanation, cannot materially affect the equitable-tolling analysis.

**Specific Objection No. 2:** The District Court should independently assess the legal significance of the sworn declaration and contemporaneous evidence, rather than treating the unresolved factual issues as categorically incapable of supporting relief.

## IV. THE MAGISTRATE JUDGE'S EQUITABLE-TOLLING ANALYSIS REQUIRES DE NOVO REVIEW

Under *Holland v. Florida*, 560 U.S. 631, 649 (2010), equitable tolling requires a petitioner to establish diligent pursuit of his rights and extraordinary circumstances that stood in his way and prevented timely filing.

Movant recognizes that ordinary negligence, ignorance of procedural requirements, or a mistaken mailing address ordinarily will not satisfy this demanding standard.

The Fifth Circuit applies equitable tolling narrowly. See *United States v. Riggs*, 314 F.3d 796, 799–800 (5th Cir. 2002).

The question, however, is whether the circumstances here amount to no more than an ordinary addressing mistake or whether additional evidence establishes an extraordinary impediment that materially prevented timely filing.

The record demonstrates affirmative activity before the deadline.

Movant prepared a motion, arranged its transmission, preserved mailing evidence, and caused a pleading identifying the federal District Court to reach a federal governmental office before expiration of the limitations period.

The Magistrate Judge concluded that these circumstances were insufficient because the incorrect suite number caused the pleading to reach the prosecuting office rather than the Clerk.

Movant respectfully submits that this analysis warrants further examination, particularly concerning the Government's subsequent handling of the document.

**A. United States v. Kirkham does not eliminate the need for individualized analysis**

The Fifth Circuit's decision in *United States v. Kirkham*, 367 F. App'x 539 (5th Cir. 2010), presents a substantial obstacle to Movant's equitable-tolling argument.

In that case, the court rejected equitable tolling based upon a prisoner's incorrect mailing of a § 2255 motion to a state court.

Movant does not suggest that *Kirkham* guarantees relief here.

He submits, however, that the circumstances differ because the present envelope expressly named the correct federal District Court, and the document was actually received before the deadline by the federal prosecuting office involved in Movant's case.

The distinction is relevant to whether the error should be evaluated solely as an addressing mistake or together with additional facts concerning governmental receipt and handling.

Movant asks the District Court to determine whether those additional facts have legal significance under the demanding equitable-tolling standard.

**B. The prison-mailbox rule is not Movant's principal argument**

Movant acknowledges that his May 2026 mailing was accomplished through outside assistance rather than through his institution's internal legal-mail system.

He therefore does not claim entitlement to the prisoner-mailbox rule solely on the basis of the USPS receipt.

His primary contention is equitable tolling, not automatic filing under the mailbox rule.

This distinction was expressly presented in ECF No. 892 and should be maintained in the District Court's independent analysis.

**Specific Objection No. 3:** Movant objects to the conclusion that the record necessarily establishes only ordinary negligence without further consideration of whether governmental handling or other circumstances created an extraordinary impediment causally connected to the late filing.

**V. THE UNITED STATES ATTORNEY'S HANDLING OF THE COURT-ADDRESSED PLEADING WARRANTS LIMITED INQUIRY**

The Government's acknowledgment that it received the motion on or about May 26, 2026, raises a narrow but important factual question.

What happened to the pleading after its receipt?

Movant requests examination of whether personnel receiving the envelope recognized that it expressly identified the United States District Court as the intended recipient, and whether any action was taken to forward the pleading or notify Movant of the problem.

The Government's responsibility is not identical to that of a private litigant.

Federal prosecutors are subject to professional obligations concerning fairness and the administration of justice.

See *Berger v. United States*, 295 U.S. 78, 88 (1935).

Movant does not assert that *Berger* independently establishes a mandatory duty to forward every misaddressed pleading or automatically creates an equitable-tolling exception.

Nor does Movant claim to have established intentional concealment or misconduct by the United States Attorney's Office.

Instead, he requests that the Court determine whether the office's actual handling of this specific pleading contributed to the failure of timely filing.

The requested inquiry should address:

- The actual date of receipt;
- The person or office that received and processed the envelope;
- Whether the enclosed document was recognized as a motion addressed to the District Court;
- Whether it was forwarded, retained, returned, or otherwise processed;
- Whether the Clerk was contacted;
- Whether Movant was notified; and
- Whether contemporaneous mail logs, correspondence, or routing records exist.

Movant requests preservation and production of records directly relevant to these matters.

**Specific Objection No. 4:** The Court should not foreclose an otherwise legally material inquiry into the Government's handling of the pleading without determining whether the requested evidence could establish facts relevant to equitable tolling.

## VI. THE GOVERNMENT'S PRE-DEADLINE RECEIPT AND HANDLING OF MOVANT'S COURT-ADDRESSED § 2255 MOTION: INTERRUPTION OF MAIL DELIVERY, LOSS OF THE OPPORTUNITY TO CORRECT THE ADDRESS, AND EQUITABLE TOLLING

### A. The Government Seeks Dismissal for Untimeliness Despite Having Received the Court-Addressed Pleading Before the Filing Deadline

Movant respectfully objects to the Magistrate Judge's conclusion that the circumstances surrounding the May 2026 mailing do not warrant equitable tolling.

The central issue is not merely that an incorrect suite number appeared on an envelope. Rather, it is that the United States received Movant's original motion under 28 U.S.C. § 2255 before the statutory deadline, although the envelope expressly identified the United States District Court—not the United States Attorney's Office—as the intended recipient, and the pleading nevertheless failed to reach the District Clerk before that deadline.

The Government now seeks dismissal of the § 2255 proceeding on the ground that the pleading was not timely filed with the Court.

Movant respectfully submits that this position presents a substantial equitable question: **whether the Government may obtain dismissal based on a missed filing deadline without meaningful examination of whether its own handling of correspondence expressly addressed to the Court materially contributed to that missed deadline.**

Movant does not argue that the Government's receipt of the pleading automatically constituted filing with the District Clerk. He recognizes the distinction between receipt by an opposing party and filing with the Court.

His argument is different and narrower: the Government's acknowledged possession of the court-addressed pleading before the limitations deadline creates a concrete factual basis for determining whether the subsequent failure to redirect, return, or otherwise correct the misdelivery deprived Movant of a meaningful opportunity to achieve timely filing.

The Court should not treat the initial addressing error as necessarily dispositive without considering the potentially independent consequences of the Government's handling of the misdelivered correspondence.

### B. The Documentary Chronology Establishes That a Meaningful Period Remained for Corrective Delivery

The relevant chronology is supported by the documentary evidence previously submitted with Movant's opposition, including the postal receipt, photograph of the envelope, and sworn declaration.

**May 20, 2026.** Movant's original § 2255 pleading was mailed through the United States Postal Service. The postal receipt establishes mailing before the statutory deadline.

The exterior of the envelope identified the United States District Court for the Southern District of Texas, McAllen Division, as the intended recipient. The United States Attorney's Office was not named as the addressee.

The envelope nevertheless contained an incorrect suite number associated with the United States Attorney's Office.

**On or about May 26, 2026.** The Government acknowledged receiving the § 2255 pleading.

**June 8, 2026.** According to the limitations calculation in the Magistrate Judge's Report and Recommendation, this was the applicable filing deadline.

Accordingly, approximately thirteen calendar days remained between the Government's acknowledged receipt of the correspondence and the expiration of the limitations period.

**July 1, 2026.** The pleading was received by the District Clerk, after expiration of the deadline identified in the Report and Recommendation.

This chronology establishes that the Government obtained possession of correspondence intended for the Court while a substantial period remained before the filing deadline.

It does not establish that timely corrective delivery would necessarily have occurred. It does, however, demonstrate that the possibility of correction cannot be dismissed merely because the initial envelope contained an incorrect suite number.

Movant respectfully submits that the approximately thirteen-day interval is material to the equitable-tolling analysis and warrants specific consideration.

### C. The Failure to Return or Redirect Misdelivered Correspondence May Have Interrupted a Meaningful Opportunity for Timely Filing

The purpose of addressing correspondence is to identify its intended recipient and facilitate delivery to that recipient.

Here, the intended recipient was expressly identified as the United States District Court. The incorrect suite number did not change the identity of the named addressee.

Once the envelope reached the United States Attorney's Office, several potential corrective actions existed: the correspondence could have been returned to the Postal Service as misdelivered, forwarded through an available and authorized internal mail process, or brought to the attention of the sender or intended recipient.

Movant does not assert that every such action was legally required, or that any particular correction would necessarily have resulted in timely filing.

Rather, he submits that the absence of evidence concerning whether any corrective action occurred is significant because the Government received the pleading while sufficient time potentially remained to remedy the delivery error.

If the correspondence was retained without timely return, redirection, or notification, Movant may have lost an opportunity to discover and correct the addressing error before June 8, 2026.

The relevant inquiry is therefore not limited to who originally wrote the incorrect suite number.

It also includes whether the subsequent handling of the envelope interrupted a realistic means of correcting that error while the filing period remained open.

**Movant contends that the initial addressing error and the subsequent failure of the correspondence to reach its expressly identified recipient are analytically distinct events.**

The first explains how the envelope reached an unintended office.

The second raises the question of why the correspondence did not reach the intended judicial recipient—or return to the sender for correction—during the remaining limitations period.

Whether the second event constituted an extraordinary circumstance and actually prevented timely filing must be determined under the applicable equitable-tolling standard.

**D. The Government's Litigation Position Makes Examination of Its Handling of the Correspondence Particularly Important**

The Government has relied upon untimeliness as a basis for dismissing Movant's collateral attack.

Yet the Government acknowledges receiving the original pleading before expiration of the limitations period.

Movant respectfully submits that the combination of those facts warrants scrutiny.

The Government's position is that the § 2255 motion should not be considered because it was not timely filed with the District Clerk. At the same time, the record establishes that the Government received correspondence expressly addressed to that Court before the deadline.

The question is not whether the Government was required to act as Movant's legal representative or assume responsibility for preparing or filing his pleading.

Nor does Movant seek to impose an automatic duty upon an opposing party to perfect a litigant's filing.

Instead, the question is whether the Government's actual handling of a misdelivered, court-addressed pleading contributed to the filing defect upon which the Government now relies.

A determination of that question requires examination of what occurred after the Government received the envelope.

If the correspondence was promptly returned or redirected, that fact would be relevant to the Government's position.

If it was retained without corrective action until after the limitations period expired, that fact could support Movant's equitable-tolling argument, subject to proof of causation and the other applicable requirements.

The Government's acknowledged pre-deadline receipt does not establish misconduct by itself. But it supplies a specific, documented reason to examine the handling of the correspondence rather than resolving the matter solely by reference to the initial addressing error.

**E. Equitable Tolling Requires Examination of Both Diligence and the Causal Effect of Any Extraordinary Circumstance**

Under *Holland v. Florida*, 560 U.S. 631, 649 (2010), equitable tolling requires a litigant to establish:

1. That he has been pursuing his rights diligently; and
2. That some extraordinary circumstance stood in his way and prevented timely filing.

See also *United States v. Riggs*, 314 F.3d 796, 799–800 (5th Cir. 2002).

Movant acknowledges that an ordinary mailing mistake, standing alone, does not necessarily establish an extraordinary circumstance.

He further recognizes that equitable tolling does not follow automatically from the Government's receipt of a pleading intended for the Court.

Nevertheless, the analysis should account for the entire sequence of events, including the actions taken before the deadline and any subsequent circumstances that may have prevented timely correction.

Movant caused his original pleading to be mailed on May 20, 2026, well before the June 8 deadline. The Government acknowledged receiving it on or about May 26.

These facts support his contention that he undertook affirmative action to pursue collateral relief before the limitations period expired.

The remaining inquiry is whether the manner in which the correspondence was handled after misdelivery created an extraordinary impediment and whether that impediment actually prevented timely filing despite reasonable diligence.

Movant recognizes that the Court must also consider whether he had a reasonable alternative means of filing or discovering the error before the deadline.

Accordingly, Movant requests an individualized assessment of his documented mailing efforts, his circumstances at the relevant time, the availability of corrective measures, and the actual disposition of the envelope.

The Court should distinguish between a case involving only an incorrectly addressed mailing and a case in which evidence establishes that subsequent conduct by an unintended recipient materially prevented an otherwise available opportunity to correct that error.

Movant submits that the latter possibility warrants factual examination here.

**F. The May 18 and May 19 Document-Date Discrepancy Does Not Eliminate the Significance of the May 20 Mailing and the Government's May 26 Receipt**

The Magistrate Judge identified discrepancies concerning dates appearing on versions of Movant's original pleading.

Movant submits that those discrepancies should not obscure the independently documented postal chronology.

The May 20 postal receipt and the Government's acknowledged receipt on or about May 26 establish material events occurring before the limitations deadline, regardless of whether a particular certificate or document version bears a May 18 or May 19 date.

The precise circumstances under which the Government obtained and retained its version of the pleading may require further explanation.

However, the equitable-tolling issue addressed in this section does not depend upon proving who opened the envelope, whether the opening was authorized, or whether a postal offense occurred.

It depends upon whether the handling of the correspondence after its receipt by an unintended office materially interfered with the opportunity to accomplish timely filing.

The Court can address that question without making any finding of criminal conduct.

**G. Limited Factual Development Is Necessary to Resolve the Disputed Causation Issue**

Movant recognizes that the Magistrate Judge concluded that further factual development was unnecessary even assuming the accuracy of Movant's factual allegations.

He respectfully objects because the existing record does not establish the complete disposition of the court-addressed correspondence during the period between the Government's receipt and the limitations deadline.

Movant requests limited discovery under Rule 6 of the Rules Governing Section 2255 Proceedings, upon a finding of good cause, concerning:

1. The date the United States Attorney's Office received the envelope;
2. Whether the envelope was returned to USPS or redirected to the District Clerk;
3. Whether the intended recipient identified on the envelope was recognized during processing;
4. Whether the sender or the District Clerk was notified of the delivery error before June 8, 2026;
5. The date and manner of any return, forwarding, retention, or other disposition; and
6. Available contemporaneous mail logs, routing records, correspondence, and other records establishing those events.

Movant further requests preservation of any remaining original envelope and associated records.

This request is narrowly directed to the equitable-tolling question. It does not seek broad discovery into prosecutorial motives or an investigation of unrelated matters.

The purpose is to establish whether the Government's handling of the correspondence had a material causal relationship to the missed filing deadline.

If the Court determines that the existing record is insufficient to resolve material factual disputes, Movant requests an appropriately limited evidentiary hearing under Rule 8 of the Rules Governing Section 2255 Proceedings.

**H. Requested De Novo Determination**

For the foregoing reasons, Movant respectfully requests that the District Court:

**First**, recognize that the Government received Movant's court-addressed original § 2255 pleading before the statutory deadline, while approximately thirteen calendar days remained for potential corrective action.

**Second**, distinguish the initial addressing error from the subsequent handling of the misdelivered correspondence.

**Third**, determine whether the absence of timely return, redirection, or notification, if established, deprived Movant of a realistic opportunity to correct the addressing error and timely file his pleading.

**Fourth**, examine whether that circumstance, considered together with Movant's diligence and available alternatives, satisfies the extraordinary-circumstance and causation requirements for equitable tolling.

**Fifth**, decline to adopt the recommendation of dismissal without adequately addressing this specific equitable-tolling contention, or alternatively authorize narrowly tailored factual development sufficient to resolve the issue.

**Sixth**, if the Court ultimately rejects equitable tolling, address whether reasonable jurists could debate the procedural determination and whether the requirements for a Certificate of Appealability are satisfied under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Movant respectfully submits that **the Government's acknowledged receipt of the court-addressed pleading before the deadline, followed by its reliance on the failure of that pleading to reach the District Clerk in time, presents a material equitable issue deserving independent judicial consideration.**

The requested relief is not a presumption of wrongdoing. It is a determination, grounded in the documentary chronology and applicable law, of whether the interruption of corrective delivery deprived Movant of the meaningful opportunity to present his § 2255 motion within the statutory period.

## VII. THE ALTERNATIVE LIMITATIONS PERIOD UNDER § 2255(f)(4) REQUIRES CLAIM-SPECIFIC ANALYSIS

ECF No. 897 at 12 rejects Movant's reliance upon the date he received the financial report prepared by Mariela Ruiz, CPA.

The Magistrate Judge reasons that the report was prepared and submitted before sentencing.

Movant recognizes that personal receipt of an expert report does not automatically establish the commencement date under § 2255(f)(4).

The statute concerns the date on which facts supporting a claim could have been discovered through due diligence.

Movant nevertheless objects to any analysis that treats the date of the report's preparation as necessarily resolving when the particular supporting facts were reasonably discoverable by Movant.

The financial report examined claims data involving beneficiaries diagnosed or treated for rheumatoid arthritis by providers other than Movant.

Its methodologies produced differing beneficiary counts and financial totals.

The report may bear upon allegations concerning counsel's failure to investigate, the reliability of the Government's extrapolation, and the calculation of financial loss.

Movant acknowledges that an RA-related billing claim is not necessarily proof of an independently confirmed diagnosis.

The relevant inquiry must distinguish the report's existence, the underlying data, the discoverability of particular facts, and the constitutional claims those facts support.

**Specific Objection No. 5:** Movant requests a claim-specific determination under § 2255(f)(4), including consideration of whether any particular factual predicate could have been discovered earlier through reasonable diligence.

## VIII. THE ACTUAL-INNOCENCE GATEWAY REQUIRES CAREFUL EXAMINATION OF THE EVIDENCE

Movant invokes the actual-innocence gateway recognized in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

He recognizes that the standard is demanding and that a mere dispute over medical opinions does not establish actual innocence.

Under *Schlup v. Delo*, 513 U.S. 298 (1995), the gateway requires new, reliable evidence sufficient to show that, considering the evidence as a whole, it is more likely than not that no reasonable juror would have convicted.

The Magistrate Judge concluded at ECF No. 897 at 15 that the Ruiz report does not specifically address the patients involved in the counts of conviction and does not establish the required innocence showing.

Movant acknowledges the importance of that limitation.

The Ruiz report alone cannot establish that each patient involved in the conviction had rheumatoid arthritis at the relevant time.

However, Movant asserts that independent medical evidence concerning those patients may materially undermine specific diagnostic assertions presented at trial.

Movant maintains that subsequent diagnoses, laboratory findings, specialist evaluations, and other medical records deserve examination where they bear directly upon testimony concerning the charged patients.

Movant further acknowledges that later diagnoses cannot automatically establish the correctness of earlier diagnoses.

Nevertheless, where a prosecution relies upon assertions that a patient did not have a particular disease, later independently documented findings may have probative significance depending upon the underlying clinical evidence and the precise trial testimony.

**Specific Objection No. 6:** Movant requests that the District Court separately evaluate the claimed medical evidence concerning the seven counts of conviction and determine whether a legally sufficient showing has been made for further proceedings under the actual-innocence standard.

## IX. THE GOVERNMENT'S BROADER MEDICAL NARRATIVE MUST BE DISTINGUISHED FROM THE SEVEN COUNTS OF CONVICTION

Movant maintains that the prosecution advanced an overarching narrative portraying his rheumatoid arthritis diagnostic practices as systematically fraudulent over many years.

The conviction on seven counts does not, without more, establish that every diagnosis rendered during approximately two decades of practice was erroneous.

Nor does it establish that every patient treated with methotrexate or another disease-modifying antirheumatic drug was improperly treated.

The Government was required to prove the elements of the charged offenses beyond a reasonable doubt.

Movant was not required to prove that all his medical diagnoses were correct.

The distinction between charged offenses, uncharged conduct, and extrapolated financial conclusions is central to Movant's constitutional claims.

Movant maintains that his trial and sentencing proceedings were affected by unreliable medical generalizations and financial assumptions.

He requests consideration of whether trial counsel adequately challenged those assertions and whether the Government's methodology satisfied the applicable evidentiary and constitutional requirements.

Movant does not ask this Court to presume that the jury's findings were invalid merely because the underlying medical issues were complex.

He requests review of specific alleged constitutional errors supported by the record.

## X. CONTEMPORANEOUS MOTIONS TO SEVER SUPPORT EXAMINATION OF TRIAL COUNSEL'S PERFORMANCE

The original criminal docket contains evidence that counsel for three co-defendants identified risks arising from the joint trial before trial commenced.

### A. Estella Santos Natera — ECF No. 156

On September 4, 2018, counsel for Estella Santos Natera filed a Motion to Sever.

The motion described a prosecution involving four defendants and eleven counts.

It warned that a multiweek joint trial would place substantial demands upon the jury's ability to distinguish the evidence applicable to each defendant.

The motion further asserted that a separate trial for Natera could be substantially shorter.

### B. Meisy Angelica Zamora — ECF No. 174

Counsel Christopher Sully filed a separate Motion to Sever on behalf of Meisy Zamora.

The motion raised concerns regarding prejudicial evidentiary spillover, confrontation rights, and the availability of potentially exculpatory testimony.

Importantly, the motion expressly identified possible prejudice to Dr. Zamora's confrontation rights arising from the joint proceedings.

### C. Félix Ramos — ECF Nos. 158, 181, and 187

Counsel for Félix Ramos also sought severance, raising the risk of guilt by association and the potential unavailability of exculpatory testimony.

ECF No. 181 sought leave to correct a procedural deficiency affecting the severance request.

**D. Failure of Movant's counsel to request severance**

Movant states that his own trial counsel did not independently seek severance.

The existing documents do not establish whether counsel joined another defendant's motion orally or otherwise adopted its arguments.

Movant requests examination of the complete pretrial record.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), the constitutional question is whether counsel's conduct fell below an objective standard of reasonableness and whether the alleged deficiency created a reasonable probability of a different outcome.

Under *Zafiro v. United States*, 506 U.S. 534, 539 (1993), severance may be warranted where a joint trial creates a serious risk of compromising a specific trial right or preventing a reliable determination of guilt or innocence.

Movant does not assert that a separate trial was automatically required.

He contends that the failure to seek severance or appropriate alternative protections should be evaluated in light of the risks expressly identified by other defense counsel.

The fact that other attorneys raised these concerns contemporaneously is relevant to whether those risks were reasonably foreseeable.

## XI. JURY FATIGUE, EVIDENTIARY SPILLOVER, AND THE POSSIBILITY OF A COMPROMISE VERDICT

Movant states that the joint trial lasted approximately seven weeks.

He further states that multiple persons present during the proceedings observed conduct suggesting jury fatigue or diminished attention.

Movant maintains that the combination of multiple defendants, numerous counts, extensive medical evidence, and prolonged proceedings created a risk that the jury would have difficulty evaluating each defendant and each count independently.

Three co-defendants were acquitted.

Movant was convicted on seven patient-related counts and acquitted on another patient-related count.

Movant raises the possibility that the resulting verdicts reflected an impermissible compromise or difficulty separating the evidence.

He acknowledges, however, that mixed verdicts do not themselves establish a compromise.

The acquittals could also reflect the jury's careful differentiation among defendants and counts.

Likewise, the assertion that Movant would probably have been acquitted in a separate trial remains a hypothesis rather than an established fact.

Movant therefore requests examination of admissible evidence concerning the conduct of the trial, including courtroom observations, objections, jury instructions, and the admission of evidence potentially prejudicial to particular defendants.

Federal Rule of Evidence 606(b) generally restricts inquiry into jurors' deliberations and mental processes.

Movant does not seek unrestricted investigation of confidential deliberations.

Instead, he requests examination of objectively observable courtroom conduct and identifiable legal errors, subject to applicable evidentiary rules.

This issue is raised as supporting context for any properly preserved ineffective-assistance or due-process claim, not as an independent basis for disregarding the jury's verdict.

## XII. THE ACQUITTAL OF THREE CO-DEFENDANTS AND THE HUMAN CONSEQUENCES OF THE PROSECUTION

Movant respectfully submits that the procedural history of this prosecution cannot be evaluated without recognizing its substantial human consequences.

Three co-defendants, including Movant's wife, were acquitted.

Movant states that his wife spent approximately nineteen months in detention and that their daughter, Ángeles Georgina, was approximately fourteen years old during that period.

Movant maintains that the prosecution caused profound disruption to his family and professional life.

These consequences do not independently establish prosecutorial misconduct.

An acquittal does not necessarily prove that the original charges were brought without probable cause or in bad faith.

Nevertheless, Movant contends that allegations concerning prosecutorial overreach, investigative methods, witness handling, and disclosure obligations deserve consideration when supported by specific evidence and properly presented constitutional claims.

The severity of the consequences reinforces the importance of accurate adjudication, but it does not replace the legal standards governing collateral relief.

**XIII. SPECIFIC OBJECTION TO THE DENIAL OF DISCOVERY AND AN EVIDENTIARY HEARING — ECF NO. 899**

ECF No. 899 denies Movant's Motion for Discovery and Motion for Evidentiary Hearing.

The Magistrate Judge reasoned that, even assuming Movant's factual allegations were true, the § 2255 motion was untimely and equitable tolling was unavailable.

Movant objects to that determination insofar as it forecloses evidence potentially relevant to the procedural issue itself.

Rule 6 of the Rules Governing Section 2255 Proceedings permits discovery upon a showing of good cause.

Movant requests narrowly tailored discovery concerning the May 2026 mailing, the Government's receipt and handling of the court-addressed pleading, and any contemporaneous communications or records.

Movant further requests an evidentiary hearing if genuinely disputed facts material to equitable tolling cannot be resolved from the existing record.

Under 28 U.S.C. § 2255(b), a hearing is generally required unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.

Movant acknowledges that no hearing is required merely because he disagrees with the legal conclusion or seeks speculative discovery.

He submits, however, that a focused inquiry may be justified if it could establish additional facts material to the legal standard.

Separately, if the timeliness barrier is overcome, Movant requests consideration of protected medical discovery concerning the patients involved in the counts of conviction.

Any such discovery should proceed under appropriate confidentiality safeguards, including protective orders, redaction, and judicial review of sensitive records.

Movant requests review of ECF No. 899 under Federal Rule of Civil Procedure 72(a) to the extent the order is treated as a nondispositive ruling.

If the District Court determines that any aspect of the order is dispositive in substance, Movant requests application of the corresponding review standard.

**Specific Objection No. 7:** Movant objects to the denial of all evidentiary development without an independent determination whether narrowly tailored evidence could materially affect the procedural analysis.

## XIV. OBJECTIONS TO ECF NO. 898

ECF No. 898 recommends denying Movant's request for acceptance or nunc pro tunc recognition of his filing, rejecting related amendments, and granting the Government's associated request for dismissal.

Movant recognizes that service upon the Government under Rule 5 does not automatically constitute filing with the Clerk under Rule 5(d).

He does not request that the Court disregard that distinction.

Instead, he requests that the Court determine whether equitable tolling or another legally authorized basis permits the proceeding to continue.

If the original § 2255 motion is deemed timely through equitable tolling or another applicable rule, the Court should separately consider the amendments under Federal Rule of Civil Procedure 15 and the relation-back principles applicable to habeas proceedings.

See *Mayle v. Felix*, 545 U.S. 644 (2005).

Movant acknowledges that an amendment introducing a new claim after expiration of the limitations period does not automatically relate back merely because it concerns the same criminal case.

The required inquiry is whether the proposed amendment arises from the same core of operative facts as a timely claim or is independently timely.

Movant therefore requests claim-by-claim consideration rather than automatic rejection of all amendments solely as a consequence of the recommended dismissal.

**Specific Objection No. 8:** Movant objects to the derivative rejection of related motions and amendments without consideration of the effect of any successful timeliness objection and the applicable standards governing amendment.

## XV. REQUEST FOR EXAMINATION OF JUDICIAL IMPARTIALITY

Movant respectfully requests that the District Court examine whether the circumstances of these proceedings create an objectively reasonable question concerning judicial impartiality.

Under 28 U.S.C. § 455(a), a judicial officer must disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Movant recognizes that adverse judicial rulings ordinarily do not establish bias or require recusal.

See *Liteky v. United States*, 510 U.S. 540 (1994).

Movant's concerns arise from the cumulative procedural treatment of his collateral claims, including the recommendation to dismiss without reaching the merits, the rejection of equitable tolling, and the denial of evidentiary development.

Movant does not claim that those rulings, without more, establish personal prejudice, improper motive, or unethical conduct.

He requests an independent judicial examination of whether the record contains an objectively sufficient basis for questioning impartiality.

If the District Court finds no such basis, Movant requests that it nevertheless conduct the full independent review required by § 636(b)(1) and explain the resolution of his specific objections.

Movant seeks impartial adjudication, not disciplinary relief against a judicial officer for issuing an adverse recommendation.

## XVI. THE RECOMMENDATION TO DENY A CERTIFICATE OF APPEALABILITY SHOULD BE REJECTED

ECF No. 897 at 16 recommends denial of a Certificate of Appealability.

Movant specifically objects.

Under 28 U.S.C. § 2253(c), a COA may issue upon a substantial showing of the denial of a constitutional right.

Where a district court dismisses a habeas proceeding on procedural grounds without reaching the merits, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), requires consideration of whether reasonable jurists could debate the procedural ruling and whether the motion states a debatable constitutional claim.

The COA standard does not require the applicant to demonstrate that he will ultimately prevail.

Of particular relevance, *United States v. Kirkham*, 367 F. App'x 539 (5th Cir. 2010), involved a grant of a COA to examine equitable tolling even though the Fifth Circuit ultimately affirmed the adverse timeliness ruling.

That procedural history illustrates the distinction between the debatable nature of a legal question and the ultimate merits of the claim.

Movant submits that reasonable jurists could examine the relationship among the documented pre-deadline mailing, governmental receipt, the equitable-tolling standard, and the asserted constitutional grounds.

Movant recognizes that the existence of a legal dispute alone does not compel issuance of a COA.

He requests an independent application of the *Slack* standard and, if the Court adopts dismissal, a COA identifying any qualifying procedural and constitutional issues.

Alternatively, Movant requests an express explanation of why those issues fail to satisfy § 2253(c).

**Specific Objection No. 9:** Movant objects to the recommendation to deny a COA without recognizing the distinct threshold applicable to appellate review of procedural dismissals.

## XVII. THE CONSEQUENCES OF DISMISSAL REQUIRE CAREFUL APPLICATION OF THE LAW

The recommended dismissal would prevent merits review of serious constitutional allegations arising from a prosecution that resulted in prolonged incarceration, substantial financial consequences, and extensive disruption to Movant's family and medical career.

Movant maintains that the Government's broad assertions concerning fraudulent rheumatoid arthritis diagnoses were not established in the categorical manner suggested by the prosecution's overarching narrative.

He further maintains that subsequent medical evidence and financial analysis warrant careful evaluation.

The Court need not accept those assertions as proven in order to recognize the importance of resolving the procedural issues accurately.

Statutes of limitation serve legitimate purposes, including finality and orderly adjudication.

But Congress and the Supreme Court have also recognized limited mechanisms for equitable tolling, alternative statutory accrual, and the actual-innocence gateway.

Movant requests faithful application of those mechanisms.

He does not ask for special treatment based upon his profession, family circumstances, or the severity of his sentence.

He asks for the independent and legally rigorous review that the Constitution and federal procedural rules provide.

**XVIII. PRAYER FOR RELIEF**

WHEREFORE, Movant respectfully requests that the District Court:

**1.** Sustain these objections to the extent supported by the law and record;

**2.** Conduct de novo review of ECF Nos. 897 and 898 pursuant to 28 U.S.C. § 636(b)(1);

**3.** Reject the recommendation to dismiss the § 2255 motion as untimely, or alternatively defer final disposition pending any necessary factual development;

**4.** Independently evaluate equitable tolling under *Holland*, *Riggs*, and the applicable Fifth Circuit authorities;

**5.** Consider ECF No. 892 and Exhibits A–F, including the sworn explanation of the May date discrepancies;

**6.** Authorize narrowly tailored discovery concerning the Government's receipt and handling of the May 2026 pleading if good cause is established;

**6A.** Determine whether the Government's failure, if established, to promptly return or redirect the misdelivered court-addressed correspondence during the approximately thirteen days remaining before the June 8, 2026 limitations deadline materially deprived Movant of a meaningful opportunity to correct the addressing error and timely file his original § 2255 motion; and consider whether such circumstances warrant equitable tolling under *Holland v. Florida*, 560 U.S. 631 (2010).

**7.** Conduct a focused evidentiary hearing if material factual disputes warrant one;

**8.** Review ECF No. 899 under the applicable standard and reconsider the denial of discovery and an evidentiary hearing;

**9.** Independently examine the concerns regarding judicial impartiality under 28 U.S.C. § 455(a);

**10.** Evaluate any claim-specific basis for a later commencement date under § 2255(f)(4);

**11.** Evaluate the asserted actual-innocence gateway under the governing standard;

**12.** If the timeliness barrier is overcome, consider appropriate protected medical discovery concerning the patients involved in the counts of conviction;

**13.** Consider the contemporaneous severance motions, Criminal ECF Nos. 156, 158, 174, 181, and 187, to the extent relevant to properly preserved constitutional claims;

**14.** Reconsider the recommendations concerning the acceptance and amendment of the § 2255 pleadings;

**15.** If dismissal is ultimately entered, issue a Certificate of Appealability on any issue satisfying 28 U.S.C. § 2253(c); and

**16.** Grant such other and further relief as justice may require.

Respectfully submitted,

**JORGE ZAMORA-QUEZADA**
Defendant/Movant, Pro Se

2330 Red River Drive
Mission, Texas 78572

Date: in the 9th of November, 2026

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2026, a true and correct copy of the foregoing **MOVANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS (ECF NOS. 897 AND 898), REQUEST FOR DE NOVO REVIEW, OBJECTION TO DENIAL OF EVIDENTIARY DEVELOPMENT (ECF NO. 899), REQUEST FOR EXAMINATION OF JUDICIAL IMPARTIALITY, AND ALTERNATIVE REQUEST FOR CERTIFICATE OF APPEALABILITY** was served upon counsel for the United States in accordance with the applicable rules.

**United States Attorney's Office**
Southern District of Texas
McAllen Division
1701 West Business Highway 83, Suite 600
McAllen, Texas 78501

**JORGE C. ZAMORA-QUEZADA**
Movant, Pro Se